UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CATHLEEN MCDONOUGH,<br><br>    Plaintiff,<br><br>vs.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.<br><br>    Defendant. | Civil Action No. 09-cv-00571-(SRC)(PS) |
| STEVEN BECKER, M.D. and VASCULAR CLINIC P.A., Individually and on behalf of all those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC.<br><br>    Defendants. | Civil Action No. 2:09-cv-1154-(SRC)(PS)<br><br>ELECTRONIC DISCOVERY PROTOCOL |

    After conferring on these matters, Plaintiffs Cathleen McDonough, Steven I. Becker, M.D. and Vascular Clinic, P.A. individually and on behalf of all others similarly situated ("Plaintiffs") and Defendants Horizon Blue Cross Blue Shield of New Jersey ("Defendant" or "Horizon") (with Plaintiffs, the "Parties" and Plaintiffs and Defendant each separately a "Party") hereby stipulate and agree to this Electronic Discovery Protocol ("EDP" or "Protocol").

    The Parties respectfully ask the Court not to enter this Protocol as a Court order, because the Parties intend for this Protocol to be treated solely as an agreement between the Parties that may be modified by agreement of the Parties without the need for a Court order. The treatment

of this Protocol as an agreement only, and not a Court order, is a key component of this Protocol due to, among other reasons, the flexibility it affords the Parties in dealing cooperatively with any complex electronic discovery matters that arise during the course of discovery in this Action.

A. **General Terms.**

1. <u>Application</u>. The procedures set forth in this Protocol shall govern the production of "documents" and "electronically stored information" ("ESI") (as those terms are used in the Federal Rules of Civil Procedure including Rule 34(a)) that are stored in electronic format ("Data"), including paper documents that have been converted to Data, in the above-captioned consolidated proceeding (this "Litigation"). Other than initial disclosures produced pursuant to Case Management Order No. 1 and Rule 26(a)(1), no discovery shall be provided to any Party until an Electronic Discovery Protocol is agreed upon by all Parties. This Protocol shall not govern the production of Data from Horizon's claims systems. The protocol does not govern the production of back-up media. It is the intention of the parties to not search back up media, unless it becomes necessary to do so during the course of discovery. In addition to the provisions set forth in Rule 26(b)(2)(B), in the event that any Party identifies a source of responsive documents or electronically stored information for which application of this Protocol would be unduly burdensome or impractical (e.g. Data which because of media source or filetype is not generally accessible or upon which word searches would be unduly burdensome or otherwise impractical), the Party identifying the source will promptly notify the other Parties and the Parties may meet and confer concerning whether modifications of this protocol with respect to that source are appropriate.

2. <u>Objective</u>. This Protocol is designed, and shall be interpreted to ensure that reasonable steps are taken to ensure that responsive documents and Data are produced by the

Producing Party while those steps are also intended to simultaneously seek to minimize unnecessary costs associated with that production. Nothing in this document is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Requesting Party. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure or applicable State and Federal statutes, they shall be controlling.

3. <u>Production Period.</u> The "Production Period" from which Data is to be produced under this protocol shall be determined by reference to the applicable discovery requests. The Parties shall meet and confer in an attempt to resolve promptly any disputes over the appropriate Production Period and, in the event of any such disputes, the Production Period under this Protocol shall be agreed to by the Parties or as ordered by the Court. The Producing Party is subject to obligations under the Federal Rules regarding the requirement to supplement responses.

4. <u>Discovery Confidentiality Order.</u> All Data that is produced pursuant to this Protocol that would fall within the definition of "Confidential" or "Confidential—Attorneys' Eyes Only" as set forth in the Discovery Confidentiality Order agreed to by the parties and ordered by the Court in this Litigation (the "Discovery Confidentiality Order") shall be produced subject to the Discovery Confidentiality Order.

5. <u>Reservation of Rights.</u> All Parties reserve all rights under the Federal Rules of Civil Procedure and the Federal Rules of Evidence for matters relating to the production of Data that are not specifically addressed in this Protocol.

**B.     Keyword Screening Procedure.**

1. <u>Implementation.</u> In connection with providing written responses to discovery requests seeking Data, the Producing Party shall implement a Keyword Screening

Procedure, as addressed in this section B, except as provided in Paragraph A.1 above with respect to Data sources for which such a procedure would be unduly burdensome or impractical. The purpose of the Keyword Screening Procedure is to assist the Producing Party in identifying potentially responsive documents and shall in no way relieve the Producing Party of its obligation to produce responsive documents of which it is or becomes aware, including any documents from sources other than those for which the Keyword Screening Procedure is elected pursuant to this Protocol. The result of applying the Keyword Screening Procedure to Production Sources is expected by the parties to yield potentially responsive Data. From those potentially responsive Data, the Producing Party will produce all non-privileged, responsive documents consistent with this Protocol. The Producing Party's written response shall include the following information (collectively, the "Production Methodology"):

    a.    a list of the individuals that the Producing Party believes are most likely to possess documents responsive to the Requesting Party's Document Requests using all reasonably available information, including its own documents, to identify such persons. These individuals are known as the "Production Custodians."

    b.    As to each Production Custodian, the Producing Party will produce a description of that custodian's past and present job title, job description and dates of employment as to each job title;

    c.    a list of file types (*e.g.*, .xls, .doc, .ppt, .wpd, .pst, .ost, .zip, .rar, iso) including compressed files, that the Producing Party reasonably believes are likely to include responsive Data and that the Producing Party intends to search using keywords. The Producing Party shall ensure appropriate handling of compressed files that the Producing Party reasonably believes are likely to include responsive Data and that the

Producing Party intends to search using keywords, such that the Data in the compressed files will be harvested, processed and produced the same manner as other files. If there are any file types within the Production Sources that the Producing Party believes should not be searched, the Producing Party will identify them to the Requesting Party;

  d. a general list of the types and number of servers, network drives, other drives and other potential sources of responsive Data that are not associated with any Production Custodians that the Producing Party intends to search ("Non-Custodial Sources");

  e. a list of keywords that the parties agree are reasonably likely to identify documents that are responsive to the Requesting Party's Document Requests (the "Production Keywords"). The Producing Party shall notify the Requesting Party of any variable that it knows may affect the extent or integrity or scope of the search, including for example known or commonly used abbreviations, alternate spellings, alternative or previous names used to refer to those individuals or groups, processes, categories, procedures, databases, etc., identified by the keywords. The Parties will periodically assess whether the Production Keywords are functioning to flag documents as intended and will notify the other Party if either reasonably believes Production Keywords should be added or deleted;

  f. a complete list and description of all available metadata fields for each document type likely to include responsive Data and the fields that the Producing Party proposes to produce for each document type, recognizing that metadata may not be available and particular fields may not be populated for particular documents. Once the metadata fields are established, each load file shall be consistently formatted and, to the

extent there are any changes, additions or deletions to the load file, such changes must be described in the cover letter with the production.

      g.    for each Production file type listed under subpart (c) above, the Producing Party shall produce a standard fielded load file with the user visible information about a particular Data set or document that describes the metadata identified by the Requesting Party pursuant to paragraph (e) above; and

      h.    an estimated timeframe for the production of Data responsive to each request within the Requesting Party's document requests (the "Production Timeframe"). The Production Timeframe may involve an incremental production. Upon execution of this Protocol, the Parties will meet and confer to discuss prioritization of particular Production Custodians or other Data sources.

      2.    <u>Sample Production Custodian Run</u>. After the parties have agreed upon the Production Keywords, the Producing Party shall select one Production Custodian and run the keyword search through that custodian's e-mail. If a substantial number of documents identified by a particular search term are not responsive or if the keyword search does not produce the expected volumes or kinds of responsive documents, then the Parties shall meet and confer to modify the particular search term(s). If the Parties cannot reach a resolution on the disputed search term(s), a Party may submit the dispute to the Court for resolution pursuant to the Dispute Procedures addressed in paragraph E.3 *infra*.

      3.    <u>Sources Already Searched Or Gathered</u>. To the extent any Data sources already searched or gathered by Defendants in connection with other matters including Civil Action Nos. Essex-L-3685-02 ("*Sutter*") and CV-03-21296 ("*Love*," which is part of *In Re: Managed Care*, MDL #1334 (Docket No. 1:00-md-01334-FAM)) are implicated by Plaintiffs'

discovery requests in this Litigation, Defendants will identify to Plaintiffs those sources (including available information about Production Custodians' job titles). Defendants reserve their rights to argue that any request by Plaintiffs to search or gather sources that have already been searched or gathered would be unduly burdensome.[1]

    4.    <u>Modification</u>. At any point during discovery, either party may request, in writing, reasonable, specific modifications to the Production Methodology. The parties will meet and confer to discuss any requested modifications. If a dispute arises, the parties will use the dispute procedure in paragraph E.3 herein.

    5.    <u>Privilege Keywords</u>. The Producing Party shall select keywords it believes are reasonably likely to indicate potentially privileged information (for example, without limitation, the names of counsel, law firms, and standard privilege language) (the "Privilege Keywords"). Because the production of the Privilege Keywords may disclose the nature of the privileged information, the Producing Party need not divulge the Privilege Keywords to the Requesting Party. The Producing Party shall retain a list of the Privilege Keywords. Producing Party will not use Privilege Keywords to assert privilege without also reviewing each document to ensure the appropriateness of asserting privilege. Similarly, the Producing Party's assertion of privilege shall not be limited to those documents that contain Privilege Keywords. The following communications need not be logged: (i) all communications between counsel of record for Defendants and in-house attorneys representing Defendants concerning MDL 1334 (including *Love* and any tag a long cases), *Sutter*, *Becker*, *McDonough*, or

---

[1] Horizon proposes this language to avoid the potential of having to run redundant searches and gather documents it has already gathered. For example, to the extent that a custodian's electronically stored information has already been searched and responsive data has already been gathered, Horizon reserves its right to argue that any request by Plaintiffs to search or gather sources that have already been searched or gathered would be unduly burdensome. Plaintiffs believe that discovery produced in other unrelated litigations should not in any way impact plaintiffs' right to obtain discovery in this case. Hence, plaintiffs contend that Paragraph 3 should be deleted. Horizon's response is that there is no impact on plaintiff's right to obtain discovery, as Horizon would produce from the already searched and gathered sources relevant, non-privileged information responsive to plaintiff's requests.

concerning any matter in which litigation has been filed or was reasonably anticipated concerning claims and/or Ingenix; (ii) all communications between counsel of record and a non-attorney client concerning MDL 1334 (including *Love* and any tag a long cases), *Sutter*, *Becker*, *McDonough*, or concerning any matter in which litigation has been filed or was reasonably anticipated concerning claims and/or Ingenix; (iii) all communications between an in-house attorney and a non-attorney client that concern scheduling, logistical, and/or other nonsubstantive or ministerial matters. The foregoing shall not relieve any Party from logging communications as required by the Federal Rules of Civil Procedure, common law, or Local Rule 34.1, and it does not absolve a party of its obligations to preserve communications, including those related to discovery and preservation of evidence.[2]

      6.      <u>Production Search</u>. Through application of the Production Methodology, the Producing Party shall identify Data potentially responsive to the Requesting Party's document requests ("Search Results Data"). The Producing Party may then perform a search of the Search Results Data using the Privilege Keywords (the results of such search being the "Privilege Data"). The Producing Party may remove the Privileged Data from the Search Results Data and review the remaining documents for privilege and responsiveness using the Rule 26 standard for determining relevant discovery. Following such review, the Producing Party shall produce, at a time to be mutually agreed by the Parties, any Data that is responsive to the Requesting Party's discovery requests, with the exception of (a) files or documents from the Search Results Data that are not relevant to this Litigation or not responsive to the Requesting

---

[2] Plaintiffs object to the language of Paragraph 5 subsections (i), (ii) and (iii) as unnecessary and state that the privilege log should simply comply with the requirements of the federal rules. Horizon does not contest the applicability of the Federal Rules of Civil Procedure, common law, or Local Rule 34.1. Horizon should not be required to log communications directly relating to the ongoing litigation of this matter or other matters that plaintiff contends are wholly irrelevant. See, e.g., plaintiff's position discussed in fn. 1. It is in fact invasive of Horizon's counsels' relationship with their client, and of counsels' attorney-work product, to catalogue for plaintiffs on an on-going basis their communications with their client.

Party's discovery requests; and (b) files or documents that are privileged. The Producing party reserves all rights to object to the production of any file or document within the Production Data on the basis of privilege, confidentiality, or immunity. Any Data produced under this Protocol will be called "Production Data." The Producing Party in its sole discretion shall produce the Production Data in native or TIFF with text format pursuant to paragraph C.1. If a document within the privileged data is related to another document as defined in paragraph C.6 *infra*, the Producing Party will produce all related documents (in whole and part) which are not privileged (redacting the privileged documents as necessary). The purpose of this section is to minimize the removal of documents from the Production Data, in order to remove only that part of the document which as is necessary to shield the information subject to the asserted privilege.

7. <u>Review and Treatment of Production Data</u>. After collecting the Production Data, the Producing Party shall review and produce any non-privileged Data that are responsive to the Requesting Party's Document Requests, with the exception of files or documents from the Search Results Data that are not relevant to this Litigation. The Producing party reserves all rights to object to the production of any file or document within the Production Data on the basis of privilege, confidentiality, or immunity. If there are non-privileged Data that the Producing Party is withholding based on a good faith objection, then such Objected-to Data need not be produced until the objection is resolved by agreement or by Court Order. One of the goals of this process is for the Requesting Party to know which Data is being produced in response to which discovery request.

8. <u>Review and Treatment of Privileged Data</u>. Once the Producing Party has completed its review and production of the Production Data, it shall review the Privileged Data.

If a party intends to withhold responsive Data based on a claim of privilege, then that party is obligated to produce a privilege log in compliance with Local Civil Rule 34.1.

C. **General Document Production Procedures.**

    1. Format. The Producing Party shall produce Data in native or TIFF with text format. The decision as to which format to produce the Data shall be in the Producing Party's sole discretion. As explained in Section D infra, the TIFF production must be Bates numbered with accompanying Load Files containing available metadata and extracted text. Native files' file names will be constructed as Bates numbers. Available metadata fields will be identified prior to production as described in §B.1(e) and in the TIFF production those fields will be populated with the same information as if the Producing party were producing the documents in native format. The Parties' understanding is that the searchability of the metadata fields (referred to in §B.1(e) and extracted text to be produced as part of the TIFF production will be functionally equivalent to the searchability of the same metadata fields and corresponding text as if the same documents had been produced in native format.

    2. Production Media. The Producing Party shall produce Data on readily accessible computer or electronic media, including without limitation CD-ROM, DVD, external hard drive (with standard PC-compatible interface), or such other media as the parties may agree upon ("Production Media"). The Producing Party shall affix a unique identifying label to each piece of Production Media, which shall identify the date of the production and the sequence of the material in that production (for example, "Defendants' Production, Horizon-000001 – Horizon-001000"). The Producing Party shall properly package all Production Media to ensure safe shipping and handling.

3. <u>Write Protection</u>. The Producing Party shall, to the extent practicable, produce documents as "read only".

4. <u>Preservation of Original Documents</u>. The Producing Party shall retain a copy of all Search Results Data until the Litigation is complete. The Producing Party shall produce from copies of these files and shall take reasonable measures to maintain such copies in a manner so as to preserve the metadata associated with these electronic materials as it existed at the time of production; provided, however, that (a) the Parties acknowledge that producing Data may effect some changes in corresponding metadata; and (b) such metadata changes resulting from production to the Requesting Party are permissible.

5. Related Documents. If a file or document attaches another file or document (such as an icon indicating an email attachment) then the referenced document will be considered for purposes of this protocol a "Related Document." A file or document is considered a "Related Document" for purposes of this Protocol even if it may be accessed only by a password. A link to a web site, internal file, or database, etc., is not considered a "Related Document" for purposes of this Protocol. To the extent technologically feasible, the Producing Party shall produce or attached files, however referenced in the parent document, with the attachment immediately following the parent document in sequential order, while maintaining the relationship between the parent file and each of its attachments. In the event the Producing Party discovers that the production of related documents as provided in this Paragraph is not technologically feasible for a category of potentially responsive Data, the Producing Party will notify the Requesting Party and the Parties will meet and confer to discuss it. In the event the Requesting Party discovers that a document is provided without production of a "Related Document," the Requesting Party will notify the Producing Party and the Producing Party will

produce all Related Documents as soon as practicable after discovering or being notified of the issue (to the extent technologically feasible, as described above).

   6. <u>De-Duplication</u>. The Producing Party and its technical representatives shall advise the Requesting Party of the procedure it intends to use for comparing electronic records based on their characteristics and removing or marking duplicate records. If there is any handwriting or other alteration of a document, it shall not be considered a duplicate under this provision. If Producing Party becomes aware of any Data that was incorrectly filtered during the de-duplication process, Producing Party shall produce the Data to Requesting Party.

   7. <u>Appearance and Content</u>. Subject to redactions by the Producing Party, each document's electronic image shall, to the extent reasonably practicable, convey the same information and image as the original document.

   8. <u>Color</u>. If an original document contains color, the Producing Party should produce the document in color if the color substantially assists understanding of its meaning, such as by connoting changes or additions.

**D. TIFF Format Production Procedures.**

   1. <u>Creation of TIFF Files</u>. When producing in TIFF rather than native format, the Producing Party shall (a) create single page group IV TIFF files of electronic documents (absent reasonable exceptions that must be discussed between the Parties prior to production, the Producing Party may not create TIFF files of electronic documents by printing out paper copies of the electronic documents and then scanning those paper copies); and (b) create TIFF files of paper documents by, where reasonably practicable, scanning either the original paper documents or photocopies of the original paper documents that is as legible as the original. Each TIFF shall be endorsed with a unique document identifier (*i.e.,* Bates stamp).

2. OCR. For TIFF files created from paper based documents, the Producing Party shall at the request and expense of the Requesting Party supply an electronic translation of all text (typewritten or printed) contained on all images ("OCR"). Said OCR files shall be produced as single page .txt files and be named consistent with its corresponding TIFF files (Horizon 0000001.tif and Horizon 0000001.txt.

3. Extracted Text. For TIFF files generated from native format, the Producing Party shall provide extracted and word searchable text files. Said extracted text files shall be produced as single page files and be named consistently with its corresponding TIFF files (e.g., Horizon000001.tiff and Horizon0000001.txt).

4. Load Files. Subject to paragraph D.8, for Data that the Producing Party produces in TIFF format, the Producing Party shall produce (a) a corresponding file that relates to a set of scanned images that indicates where individual pages belong together as documents and/or attachments and may also contain Data relevant to the individual document (a "Load File") to accompany the TIFF image, which shall include, for each file, (i) if ascertainable, the original file name and complete file path where the file was located including the computer or server identifier, and all directories and subdirectories in order to convey the precise media the document was originally stored on, during the normal course of business; and if available, (ii) the metadata associated with the file; and (b) a corresponding file that contains a page-level cross reference between the TIFF images, their paths and/or locations, and their assigned document numbers (an "Image Load File"). Said load files shall be consistent with industry standard load files such as those associated with Concordance or CT Corporation's SUMMATION database. The Producing Party shall produce the documents in the manner and method calculated to make them usable at a reasonable cost/expense to the Producing Party. Each production will be

accompanied by a reasonable explanation, in technical and non-technical terms, of the sources of produced Data. Where practical, the explanation shall include the name of the Production Custodian and the custodian's Data source (e.g., email server, paper files, hard drive, shared drive). If in a particular instance the above steps are not reasonably possible, then the Producing Party shall disclose the nature and extent of the difficulties and the parties will seek to agree on an alternate means of production.

5. <u>Technical Specifications</u>. For Data that the Producing Party produces in TIFF format, the Producing Party shall produce all TIFF files as single-page, black and white or color, dithered (if appropriate), Group 4 TIFF at 300 x 300 dpi resolution and 8½ x 11 inch page size, except for documents requiring different resolution or page size. The Producing Party shall accompany each TIFF format file with a load file in standard format (e.g., Opticon, Summation DII) showing the unique document number of each page and the appropriate unitization of the documents.

6. <u>Document Numbering</u>. For Data that the Producing Party produces in TIFF format, the Producing Party shall electronically "burn" a legible, unique Bates number onto each page. If the Bates number conceals, interferes with or otherwise obscures any information from the source document, the Producing Party, at the request of the Requesting Party, shall produce a copy that is not obscured. Document numbers for documents produced by Plaintiffs shall identify the Plaintiff's name and shall be in the format "[Plaintiff's Name]-00000001" (e.g., "McDonough-00000001" or "Becker-00000001") and document numbers for documents produced by Defendants shall be in the format "Horizon 00000001".

7. <u>Claims of Confidentiality</u>. For Data that the Producing Party produces in TIFF format, if the Producing Party is producing Data subject to a claim that it is protected from

disclosure under the Discovery Confidentiality Order, the Producing Party shall, to the extent practicable, electronically "burn" the word "Confidential" or "Confidential – Attorneys' Eyes Only" onto each page of the document, or shall indicate in some other reasonably practical manner that the Data is Confidential. Consistent with the Discovery Confidentiality Order, any inadvertent failure to mark a document as "Confidential" or "Confidential-Attorneys' Eyes Only" shall not result in waiver of any protection or confidential treatment. In addition, any failure to comply with this procedure shall not waive any protection or confidential treatment.

8. <u>Redactions</u>. For Data that the Producing Party produces in TIFF Format, if the Producing Party is redacting information from a page, the Producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s). If the Producing Party redacts a document, it may withhold from the document's Load File only the metadata directly associated with the redaction.

9. <u>Descriptor Headings for the Metadata Fields and Other Technical Terms</u>. For all load files that include metadata, the Producing Party shall define, describe and explain all technical terms, abbreviations, acronyms, or short-hand descriptions associated with the actual technical production of data to the extent practical.

10. <u>Authenticity</u>. No Party shall object that Data produced pursuant to this Protocol is not authentic based upon the file naming convention described in this Section D or by virtue of it having been converted to TIFF. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of documents, including the inherent unreliability of metadata.

11. <u>Decryption and Passwords</u>. To the extent that decryption or access passwords are necessary to unlock any file, folder, application, media, etc., the Producing Party

shall within a reasonably practicable time after receiving notice from the Requesting Party of a file, folder, application, media, etc., that is password protected or otherwise encrypted, produce an unlocked (non-password protected) version of the entire document family relating to said file(s) (maintaining all links, formulae, etc.) along with a written statement identifying (a) which file(s) it is replacing and (b) verification as to the authenticity and completeness of said file(s). The Parties will meet and confer to address these issues and any unforeseen complications arising from encrypted or password-protected documents.

12. <u>Quality Control Measures</u> Producing Party shall fix any problems associated with the production of Data under this Protocol promptly when detected. The Producing Party shall take reasonable steps to ensure that all Data is produced without technical defects that could impair the use of such Data. If either Party becomes aware of any potential defect or delay with any of the procedures described herein, that Party shall promptly advise the other Parties so that the Parties can meet and confer in an attempt to address the problem. To the extent replacement data is required, the Producing Party shall produce it as soon as is practicably possible. Effective quality control measures will be instituted by all Parties to ensure that the Production Methodology and Sections C and D herein work as intended by the Parties.

E. **Terms and Conditions.**

1. <u>Cooperation</u>. The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any electronic production of Data.

2. <u>Variance</u>. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

3. <u>Dispute Procedures</u>. The Parties shall meet and confer to resolve any procedures or disputes that arise under this Protocol. If either Party objects to any actions taken by the other

Party, the objecting Party shall state the specific objection in a letter to counsel of the other Party. All disputes or objections not resolved by these steps shall be presented using the joint letter protocol set forth in the Court's rules.

    4. <u>Notices</u>. All notices, request and demands to or upon any of the Parties under this Protocol shall be in writing, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when (a) for delivery by mail or courier, when delivered, or three (3) business days after being deposited in the mail, postage prepaid, whichever is soonest; or (b) for delivery by facsimile or e-mail, when received, addressed as follows, or to such other address as may be hereafter indicated by any Party:

| | |
|---|---|
| For Plaintiff | Bruce H. Nagel, Esq.<br>Robert H. Solomon, Esq.<br>Diane E. Sammons, Esq.<br>Randee M. Matloff, Esq.<br>NAGEL RICE, LLP<br>103 Eisenhower Parkway<br>Roseland, New Jersey 07068<br>Tele: 973-618-0400<br>Fax: 973-618-9194 |
| For Defendant | Phillip Sellinger, Esq.<br>David Jay, Esq.<br>GREENBERG TRAURIG LLP<br>200 Park Avenue<br>P.O. Box 677<br>Florham Park, New Jersey 07932<br>Tele: 973-360-7900<br>Fax: 973-301-8410<br><br>James P. Flynn, Esq.<br>EPSTEIN BECKER & GREEN, P.C.<br>Two Gateway Center, 12th Floor<br>Newark, New Jersey 07102<br>Tele: 973-642-1900<br>Fax: 973-642-0099<br>jflynn@ebglaw.com |

Any of the Parties may change its address and transmission numbers for Notices by Notice in the manner provided in this Paragraph.

5. <u>Objections to Admissibility Preserved</u>. Nothing in this Protocol shall be construed to affect in any way the rights of any Party to object to the admissibility of any materials into evidence at the trial of this action.

6. <u>No Waiver of Privileges</u>. Nothing in this Protocol, including any production of Data under this Protocol, shall constitute a waiver by any party of any claim of privilege or other protection from discovery. In particular, as provided in the Discovery Confidentiality Order, no inadvertent production of any document or electronically stored information that the Producing Party contends is attorney-client or work product privileged or otherwise protected shall constitute a waiver of that privilege or protection, and all procedures in that Order shall be followed with respect to such document or electronically stored information.

7. <u>Non-Parties</u>. The production of any Data by any Non Party shall be subject to and governed by the terms of this Protocol unless otherwise agreed to by the Parties or as ordered by the Court.

8. <u>Future Parties</u>. In the event that any additional Party joins or is joined in this litigation or desires to have access to Discovery Material, it shall not have access to produced Data until the additional Party, by its counsel, has executed and filed with the Court its agreement to be fully bound by this Protocol.

9. <u>Continuing Jurisdiction</u>. The Court shall retain jurisdiction, even after the conclusion of this action, for purposes of enforcing the provisions of this Protocol.

**STIPULATED AND AGREED,**

Dated: July 31, 2009

*[signature: Bruce H. Nagel]*

Bruce H. Nagel, Esq.
Robert H. Solomon, Esq.
Diane E. Sammons, Esq.
Randee M. Matloff, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tele: 973-618-0400
Fax: 973-618-9194
*Attorneys for Plaintiffs*

Dated:_____, 200_

Phillip Sellinger, Esq.
David Jay, Esq.
GREENBERG TRAURIG LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
Tele: 973-360-7900
Fax: 973-301-8410

Dated:_____, 200_

James P. Flynn, Esq.
EPSTEIN BECKER & GREEN, P.C.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tele: 973-642-1900
Fax: 973-642-0099

*Attorneys for Defendants*

9. <u>Continuing Jurisdiction</u>.  The Court shall retain jurisdiction, even after the conclusion of this action, for purposes of enforcing the provisions of this Protocol.

**STIPULATED AND AGREED,**

Dated:_____, 200_

_____
Bruce H. Nagel, Esq.
Robert H. Solomon, Esq.
Diane E. Sammons, Esq.
Randee M. Matloff, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tele: 973-618-0400
Fax: 973-618-9194
***Attorneys for Plaintiffs***

Dated: July 31, 2009

_____/s/ David Jay_____
Phillip Sellinger, Esq.
David Jay, Esq.
GREENBERG TRAURIG LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
Tele: 973-360-7900
Fax: 973-301-8410

Dated: July 31, 2009

_____
James P. Flynn, Esq.
EPSTEIN BECKER & GREEN, P.C.
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Tele: 973-642-1900
Fax:  973-642-0099

***Attorneys for Defendants***