NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CATHLEEN MCDONOUGH, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **Civil Action No. 09-571 (SRC)** |
| v. | : | |
| | : | **OPINION** |
| HORIZON BLUE CROSS BLUE SHIELD | : | |
| OF NEW JERSEY, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Defendant Horizon Blue Cross Blue Shield of New Jersey ("Defendant" or "Horizon") to dismiss the Amended Complaint filed by Plaintiff Cathleen McDonough ("Plaintiff" or "McDonough") [docket entry 61]. McDonough has opposed the motion. The Court has opted to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion will be granted in part and denied in part.

I. **BACKGROUND**

The core of this putative class action involves the use of an allegedly flawed database, maintained by a company known an Ingenix, to calculate out-of-network ("ONET") benefits due to members of health benefits plans insured or administered by Horizon. On Horizon's motion, this Court had dismissed Plaintiff's original Complaint by Order of October 7, 2009, based on

the Complaint's failure to allege sufficient facts to meet Federal Rule of Civil Procedure 8(a)'s

pleading standard.  The Court also granted leave to amend, and Plaintiff filed an Amended

Complaint on November 6, 2009.  As the Court writes only for the parties, it refers them to its

October 7, 2009 Opinion for general background information about the nature of this action.

This Opinion will focus on whether the facts alleged in the Amended Complaint adequately state

Plaintiff's claims for relief.

According to the Amended Complaint, McDonough, a resident of New Jersey, has since

2005 been a member of health plans fully insured by Horizon and sponsored by a New Jersey

small employer.  In terms of coverage, McDonough's plans distinguish between services sought

from providers who participate in Horizon's preferred provider network ("Pars" or "in-network

providers") and those who do not participate in the network ("Nonpars" or "ONET providers").

The primary difference between Pars and Nonpars is that Pars have negotiated reduced rates

pursuant to agreement with Horizon, and thus under the health benefits plan a Horizon plan

member's financial responsibility to the provider is capped, whereas Nonpars are not required to

accept reduced rates and may collect their full charges directly from patients at the time of

service.  Plaintiff alleges that each of the plans in effect at the times relevant to this suit provide

that reimbursement for ONET charges will be based on a "reasonable and customary" charge

standard.  As set forth in the Amended Complaint, the plans identically define that term as

follows:

> Reasonable and Customary means an amount that is not more than the
> lesser of:
>
> •    the usual and customary charge for the service or supply as
>      determined by Horizon BCBSNJ [Blue Cross Blue Shield of New

2

> Jersey], based on a standard approved by the Board; or
> - the negotiated fee schedule.
>
> The Board will decide a standard for what is Reasonable and Customary under this Policy.  The chosen standard is an amount which is most often charged for a given service by a Provider within the same geographic area.  For charges that are not determined by a negotiated fee schedule, the Covered Person may be billed for the difference between the Reasonable and Customary charge and the charge billed by the Provider.

(Am. Compl., ¶ 21.)

McDonough complains that on four occasions, she or her husband (who is a beneficiary under her plan) sought the services of a ONET provider.  She alleges that Horizon did not reimburse the ONET claims at appropriate levels because it used "the flawed, corrupted and outdated Ingenix database" to determine the usual and customary rate ("UCR") for a service.  (Id., ¶ 26.)  According to the Amended Complaint, Ingenix uses data contributed by health insurance companies, third-party payors and self-insured companies to create "uniform pricing schedules, which provide whole dollar payment amounts for each percentile (for example, the 80th percentile) for given medical procedures in various locations."  (Id., ¶ 35.)  Plaintiff details numerous reasons why the Ingenix database is flawed and cannot, therefore, form the proper basis of an accurate UCR determination.  Among these are contribution of inaccurate data by insurance companies (including Horizon), further scrubbing of data by Ingenix to remove high-end values but not low-end outliers so as to lower the average charge for ONET services, grouping geographic areas that do not reflect comparable charging patterns, and collection of insufficient data from contributors.

The gravamen of this action is that by using the flawed Ingenix data to determine UCR, Horizon failed to comply with its health plan obligation to cover ONET claims based on "the

usual and customary charge for the service" and thus underpaid McDonough's ONET claims.

Plaintiff also alleges that, by using the outdated and flawed database, Horizon violated its

statutory fiduciary duties of loyalty and care.  The Amended Complaint asserts eight counts, most

of which seek relief for various alleged violations of the Employee Retirement Income Security

Act ("ERISA"), 15 U.S.C. § 1001, et seq.   It also asserts a claim under a New Jersey statute

governing Small Employer Health Plans and a claim for common law breach of contract.

McDonough brings these claims on behalf of a putative class of participants and/or beneficiaries

of Horizon health plans, identified in the Amended Complaint as "all persons in the United

States who are, or were, from February 9, 2003, members of any large or small employee health

plan insured or administered by Defendant Horizon and subject or not subject to ERISA who

received medical services or supplies (including, inter alia, surgery, anesthesia, and the like) from

an out-of-network provider and received reimbursement less than the provider's billed charge."

(Am. Compl., ¶ 3.)


II.     DISCUSSION

        A.     **Standard of Review**

        Defendant brings this motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to

dismiss the claims asserted in the Amended Complaint for failure to state a claim upon which

relief may be granted.  A complaint will survive a motion under Rule 12(b)(6) only if it states

"sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its

face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570 (2007)).  The Supreme Court has held that this means that the complaint

"pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S.Ct. at 1150. To meet the pleading standard of Federal Rule of Civil Procedure 8(a), the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, but factual allegations that give rise to the mere *possibility* of unlawful conduct will not do. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557. In short, an adequately-pled complaint must set forth facts that, taken as true, show that the plaintiff is plausibly entitled to relief. Iqbal, 129 S.Ct. at 1950.

**B.     Viability of Claims Based on Horizon's Use of Ingenix**

Horizon moves that all claims, regardless of other deficiencies which will be discussed further below, be dismissed insofar as they are based on Horizon's use of Ingenix to determine UCR and calculate Plaintiff's ONET reimbursement pursuant to her plan. Horizon argues that such alleged wrongdoing cannot form the basis of a plausible claim for relief because New Jersey Small Employer Health Program ("SEHP") regulations, which govern McDonough's small employer health plan, required Horizon to use the Ingenix database to determine UCR. See N.J.A.C. 11:21-7.13. In other words, Horizon argues that liability under ERISA or any other legal theory cannot attach for conduct that complied with the law.

The regulation cited by Horizon in fact provides that ONET benefit payments may be based *either* on "allowed" charges for a service (referring to what plans, such as McDonough's, typically define as the "reasonable and customary" charges) *or* the provider's actual charge. Id. The regulation also provides that this "allowed" charge, or UCR, is to be determined according to

5

fee schedules provided by Ingenix and specifies that "the maximum allowed charge shall be based on the 80th percentile" of the Ingenix curve or range of prevailing fee information.  Id. Though the regulation authorizes use of Ingenix, the Court nevertheless finds Horizon's argument unpersuasive.

McDonough's health benefits plan entitled her to ONET benefits based on the "reasonable and customary charges" for the service obtained.  The plan assured that the standard of "reasonable and customary" would reflect "an amount which is most often charged for a given service by a Provider within the same geographic area."  (Am. Compl., ¶ 21.)  McDonough alleges that she was under-reimbursed for several ONET services because Horizon used a flawed database to determine the "reasonable and customary charges" for the services – a standard that Plaintiff alleges Horizon did not meet when it used a database it knew could not generate accurate UCR information and thus could not comply with the plan definition of "reasonable and customary."  The Amended Complaint alleges, indeed, that Horizon participated in creating the flaws in the Ingenix database.  Assuming the facts of the Complaint to be true, Horizon did not fulfill its plan obligation with regard to ONET coverage as to four specifically identified ONET claims made pursuant to McDonough's Horizon plan.  The cited SEHP regulation may not be used by Horizon as a shield, particularly in light of its own alleged involvement in the corruption of the Ingenix database and the available option, under the very same regulation, of calculating the ONET benefit using the provider's actual charge.

ERISA § 502(a)(1)(B) provides a private right of action to an ERISA plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C. § 1132(a)(1)(B).   In view of the facts alleged in the Amended Complaint, the Court finds that McDonough has adequately pled a claim to recover unpaid ONET benefits pursuant to § 502(a)(1)(B).  To the extent Horizon's motion seeks dismissal of this claim, either for failure to meet the pleading requirements of Rule 8(a) or for failure to allege actionable wrongdoing, the Court will deny the motion.

**C.      Claims Under ERISA § 502(a)(3)**

Counts III, IV and V each assert claims under ERISA § 502(a)(3), the ERISA provision which entitles plan participants or beneficiaries to seek injunctive and/or equitable relief to remedy statutory violations.  29 U.S.C. § 1132(a)(3).  Horizon's motion seeks dismissal of the § 502(a)(3) claims in two respects: First, Horizon maintains that the claims are duplicative of each other and that the action need not proceed with more than one claim under § 502(a)(3) to afford Plaintiff the relief she seeks.  Second, Horizon takes issue with the alleged wrongdoing on which the claims are based, arguing that for the most part, the predicate misconduct – assuming the factual allegations are true – fails to state an ERISA violation.

Horizon's point regarding the duplicate nature of the claims may be dispensed with simply, in that the argument elevates form over substance.  The claims are not redundant, as each separately asserted § 503(a)(3) claim complains of a different alleged ERISA violation.  Our rules, moreover, permit alternative pleading.  In re K-Dur Antitrust Litig., 338 F. Supp. 2d 517, 544 (D.N.J. 2004); see also U.S. LEC Comm'ns LLC v. Qwest Comm'ns Co., LLC, No. 10-4106, 2011 WL 2474262, at *4 (D.N.J. June 20, 2011) (contrasting redundant pleading with alternative pleading and noting that "[a]lternative pleading, which is permitted, allows a party to plead different theories of a claim when the relevant factual or legal issues differ, or they afford

7

different relief."). While it is true that the Amended Complaint could have been drafted so as to state in one single count all alleged misfeasance upon which Plaintiff believes she is entitled to relief under § 503(a)(3), the drafting style of the Amended Complaint does not bear upon the question of whether Plaintiff has stated a viable cause of action. That is the question before the Court. Thus, the Court will proceed to examine whether the factual allegations, be they set forth in one count or several counts, show that Horizon committed statutory violations such that Plaintiff sets forth a plausible § 502(a)(3) claim.

In Count III, the Amended Complaint alleges that Horizon breached its fiduciary duty of loyalty and due care, as set forth in ERISA § 404(a)(1) in two ways: by making benefits determinations to Horizon's own gain and at the expense of plan members and by failing to inform members of the flaws in the Ingenix database which rendered it wholly unsuited to UCR determinations. Count IV's claim alleges that Horizon failed, as required by ERISA § 503, to provide a full and fair review of denied claims by "failing to disclose data and/or the methodology it relied on in determining UCR." (Am. Compl., ¶ 119.) Count V alleges that Horizon failed to comply with ERISA claims procedure regulations in denying ONET benefits to McDonough. Horizon is correct that the majority of the alleged wrongdoing on which the § 502(a)(3) claim is based fails to state an actionable violation of ERISA.

As to the alleged breach of fiduciary duty based on non-disclosure (Count III), neither the Amended Complaint nor Plaintiff's brief in opposition to the motion to dismiss cite to an ERISA provision which would obligate Horizon to disclose UCR data and/or ONET claims processing methodology in order to fulfill its statutory fiduciary duty. The statutory source of fiduciary obligation is ERISA Section 404, which requires, among other things, that the fiduciary

8

discharge its duties according to the "prudent man" standard.  29 U.S.C. § 1104(a)(1)(B).  The Third Circuit has held that this standard encompasses a duty to provide certain information but that such duty is limited to disclosure of "those material facts, known to the fiduciary but unknown to the beneficiary, which the beneficiary must know for its own protection."  Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., 93 F.3d 1171, 1182 (3d Cir. 1996).  The test of materiality inquires whether there is a substantial likelihood that the omission of the information "would mislead a reasonable employee in making an adequately informed decision." Jordan v. Fed. Express Corp., 116 F.3d 1005, 1015 (3d Cir. 1997).  Plaintiff has not cited, nor has the Court's independent research uncovered any binding authority holding that the fiduciary duty of disclosure under ERISA requires that a plan fiduciary disclose the data the plan uses to determine what constitutes UCR, or as Plaintiff specifically alleges, to disclose the flaws in the Ingenix database.  Even assuming the statute required disclosure to plan beneficiaries of the data upon which the fiduciary calculates an ONET benefit payment, Plaintiff does not allege that such information was not known to her.  Her plan, in fact, expressly states that the standard will be determined by the Board [of Directors of the New Jersey SEHP Program], which by regulation prescribes the use of Ingenix.  Certainly, Plaintiffs have not supported their position that ERISA or its implementing regulations require a fiduciary to inform beneficiaries regarding the quality of the data.   Indeed, the Third Circuit has expressed reluctance at giving section 404 such broad interpretation that the provision, which does not by its express terms set forth any disclosures that must be made, somehow can be turned into an unlimited disclosure obligation.  See Horvath v. Keystone Health Plan East, Inc., 333 F.3d 450, 462 n.9 (3d Cir. 2003) (citing Weiss v. CIGNA Healthcare, Inc., 972 F.Supp. 748, 754

(S.D.N.Y.1997)).

To the extent, however, that the breach of fiduciary duty claim pled in Count III is based on Horizon's calculation of ONET benefits by using Ingenix in furtherance of Horizon's own interests, it will survive this motion to dismiss.  As set forth above, Plaintiff alleges that Horizon used the flawed Ingenix database knowing it would provide artificially depressed UCR figures and thus result in the underpayment of ONET claims.  These allegations sufficiently set forth that Horizon made ONET claims decisions in its own interest and at the expense of plan participants and beneficiaries, in violation of Horizon's fiduciary duty of loyalty under ERISA § 404(a)(1)(A).  29 U.S.C. § 1104(a)(1)(A); Reich v. Compton, 57 F.3d 270, 290 (3d Cir. 1995).

Plaintiff also alleges the failure to disclose UCR data and/or methodology deprived her of her right to a "full and fair review" of Horizon's denial of her ONET claims in violation of ERISA § 503 (Count IV).  Under § 503, a plan must set forth in writing its "specific reasons" for a denial of benefits and must afford participants the opportunity for a full and fair review of a claim denial decision.  29 U.S.C. § 1133.  In the Amended Complaint, McDonough alleges that as to each ONET claim that was allegedly under-reimbursed, Horizon furnished a written Explanation of Benefits ("EOB") form that was "uninformative, false and misleading" in that the "EOBs provide[d] insufficient information as to the methodology or source of data used in calculating the values Defendant Horizon represents as UCR rates."  (Am. Compl., ¶ 29.)  In that way, according to Plaintiff, Horizon did not comply with section 503's mandate to provide a "specific reason" for benefit denials and thus rendered her "powerless to appeal any such improper determinations."  (Id., ¶ 30.)  Again, Plaintiff fails to point to any statutory or regulatory authority that requires the level of detail she complains was not provided.  Section 503

requires that a "specific reason" be given for a claim denial; it does not require, as the Amended

Complaint's theory of liability would suggest, that the plan also explain what information the

plan considered in arriving at its decision, in this case, the ONET claims processing

methodology.  No ERISA provision or implementing regulation requires an insurer to provide

every bit of data underlying a claim decision and details about the way in which that data was

used.  Yet, Plaintiffs' assertion of a § 503 violation would appear to assume that the functional

equivalent of a data report on the calculation of UCRs is a necessary component of ERISA's

disclosure requirements.  Such disclosure of detailed statistical compilations and data was

certainly not the intent of the drafters of ERISA or related regulations.  Neither the factual

allegations of the Amended Complaint nor the legal authority it invokes bear out this theory of

liability.

        As for Plaintiff's claim for relief under § 502(a)(3) for failure to comply with ERISA's

procedural regulations, it is based on conclusory allegations and fails to identify what regulations

were allegedly violated.  Defendant argues that even assuming the factual allegations indicated

that Horizon had committed some procedural violation in denying or disallowing some portion of

McDonough's ONET claims, the claim must fail for lack of statutory remedy.  Indeed, the Third

Circuit has noted that it is a "general principle that an employer's or plan's failure to comply with

ERISA's procedural requirements does not entitle a claimant to a substantive remedy."

Ashenbaugh v. Crucible 1975 Salaried Ret. Plan, 854 F.2d 1516, 1532 (3d Cir. 1988) (citing

Wolfe v. J.C. Penney Co., 710 F.2d 388, 393 (7th Cir.1983) and Gilbert v. Burlington Indus.,

Inc., 765 F.2d 320, 328-29 (2d Cir.1985)).

        In short, McDonough has failed to plead facts that plausibly demonstrate that Horizon

violated either ERISA § 404(a) or § 503 by failing to disclose the data and/or methodology used to determine UCR or ONET reimbursement. Moreover, it has failed to meet the plausibility standard of Iqbal and Twombly insofar as a remedy is sought for alleged procedural violations. Thus, as set forth above, insofar as Count III asserts a claim for breach of the fiduciary duty of loyalty based on Horizon's allegedly self-interested ONET claims decisions, the claim may proceed. To the extent, however, Plaintiff's claim in Count III for relief under ERISA § 502(a)(3) is based on a failure to disclose in breach of Horizon's fiduciary duties, it must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Counts IV and V must be dismissed in their entirety for failure to state a claim upon which relief may be granted.

### D.    Claim Under ERISA § 502(c)

In Count VI of the Amended Complaint, Plaintiff asserts she is entitled to relief under ERISA § 502(c) based on Horizon's failure to supply accurate Summary Plan Description ("SPD") materials and failure to supply information requested by plan members. Plaintiff alleges that "Horizon failed to supply any SPDs to Plaintiff McDonough in 2005, 2006, 2007, 2008 and 2009." (Am. Compl., ¶ 107.) Moreover, according to the Amended Complaint, the SPD inaccuracies and overall non-disclosure consisted of "Horizon's failure to disclose material information about its UCR and other out-of-network reimbursement determinations." (Am. Compl, ¶ 129.) As Horizon argues, neither the alleged failure to supply an SPD nor alleged inaccuracy of the SPD give rise to an actionable ERISA violation.

First, it is well established that § 502(a) is "the exclusive remedy for rights guaranteed under ERISA." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133,1 44 (1990). Section 502(a)(1) authorizes a plan participant or beneficiary to bring a civil action to obtain the relief provided in

§ 502(c).  In relevant part, § 502(c)(1) provides that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day . . . ."  29 U.S.C. § 1132(c)(1).  Plaintiff bases this claim on her allegation that Horizon failed to provide her with an SPD.  Under ERISA § 104(b)(4), which is expressly referenced in § 502(c), a plan administrator must furnish a copy of the SPD "upon written request of any participant or beneficiary."  29 U.S.C. § 1024(b)(4).  Plaintiff, however, neither alleges that she made a written request to Horizon for her plan's SPD or that Horizon failed to respond to the request within 30 days.  Both elements are essential to establish a violation of § 104(b)(4) and trigger the penalties of § 502(c).  Kollman v. Hewitt Assoc., 487 F.3d 139, 144 (3d Cir. 2007).  Thus, to the extent Plaintiff's claim under § 502(a) and § 502(c) is premised on Horizon's alleged failure to provide an SPD, it fails to state a claim upon which relief may be granted.

Second, insofar as Count VI might be construed as a § 502(a) claim premised on the SPD's failure to disclose ONET claims processing methodology, it lacks any statutory or regulatory support.  ERISA § 102 specifically deals with SPD contents.  It requires administrators to provide plan participants and beneficiaries with SPDs that include certain information listed in subsection (b) of the provision.  29 U.S.C. § 1022(a).  The list does not include information concerning the methodology for determining UCR in particular or, more generally, for calculating the amount owed to the participant or beneficiary on an ONET claim.  29 U.S.C. § 1022(b).  Plaintiff cites no implementing regulation or decisional law which would

13

require Horizon to disclose the data it uses to determine what constitutes a "reasonable and customary" rate, nor is the Court aware of any.  Cf. 29 C.F.R. § 2520.102-3(j)(3) (requiring the SPD to describe, among other things, "whether, and under what circumstances, coverage is provided for out-of-network services" but not all data underlying a ONET reimbursement calculation).

Accordingly, the claim set forth in Count VI of the Amended Complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### E.   Claim For Declaratory Relief under ERISA

Count II of the Amended Complaint pleads for declaratory relief under ERISA.  To the extent Plaintiff seeks a declaration that Horizon violated ERISA by failing to disclose information related to UCR data and/or methodology, Plaintiff is not entitled to such relief for the reasons discussed above in Sections C and D.  Insofar, however, as the Amended Complaint may seek declaratory relief for the ERISA claims that do survive this motion to dismiss, the Court will not strike Plaintiff's plea for that remedy.

### F.   Claim For Violation of New Jersey SEHP Regulation

In Count VII of the Amended Complaint, McDonough claims that, as a New Jersey member of a small employer health plan, she is also entitled to unpaid benefits on the basis that Horizon allegedly violated the New Jersey regulation which requires that "small employer carriers pay covered charges for medical services, using either the allowed charges or actual charges." N.J.A.C. § 11:21-7.13.  (This is the same regulation raised by Horizon in its unavailing argument that no claim can lie against it based on its use of Ingenix because such conduct complied with New Jersey law.)  Horizon raises a number of arguments for dismissal of this

claim, including ERISA preemption.  See 29 U.S.C. § 1144(a) (ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."). McDonough counters that the regulation is valid according to ERISA's savings clause, which in relevant part excepts from preemption all state laws relating to the regulation insurance.  See 29 U.S.C. § 1144(b)(2)(A).

The Court, however, need not address the parties' preemption argument.  Regardless of whether the regulation falls within ERISA's savings clause or not, it is clear that neither the statutory nor regulatory scheme governing Small Employer Health Plans authorize plan members to bring a private cause of action seeking redress for the violation claimed by McDonough.  The only statutory provision McDonough raises in support of her right to sue is, to put it bluntly, completely inapplicable.  The provision cited vests the Board of Directors of the New Jersey SEHP with the power to "sue and be sued, including taking any legal actions as may be necessary for recovery of any assessments due to the program or to avoid paying improper claims." N.J.S.A. 17B:27A-32(b).  Without any legal authority whatsoever, McDonough asserts that the New Jersey legislature must have intended that eligible employees be empowered to enforce their rights under the regulation and its enabling statute in the event the Board declines to take action. The Supreme Court of New Jersey itself has observed, however, that "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001).  It explained that to determine if an implied private right of action exists under a statute, courts consider whether:

> (1) plaintiff is a member of the class for whose special benefit the statute
> was enacted; (2) there is any evidence that the Legislature intended to
> create a private right of action under the statute; and (3) it is consistent
> with the underlying purposes of the legislative scheme to infer the
> existence of such a remedy.

Id. at 272.  Here, not only does Plaintiff fail to cite to an express provision in the statute which

would vest her, as an employee covered by a small employer health plan, with the right to sue,

but she also fails to point to any evidence that the state legislature intended to establish a private

right of action.  This Court declines to infer a private right of action for individuals covered

under the New Jersey statute which regulates small employer health benefits plans.

Accordingly, McDonough's claim to recover plan benefits as redress for Horizon's

alleged violation of the SEHP Regulation will be dismissed for failure to state a claim upon

which relief may be granted.

### G.      Breach of Contract Claim

Defendant moves to dismiss Plaintiff's claims insofar as they are brought on behalf of

individuals who are or were insured under non-ERISA health plans, citing Beye v. Horizon Blue

Cross Blue Shield of N.J., 568 F. Supp. 2d 556 (D.N.J. 2008).  In Beye, the court dismissed

several state statutory and common law claims as preempted by ERISA.  Id. at 570. Though

Horizon has argued for the dismissal of Plaintiff's non-ERISA claims as a matter of standing, the

Court construes the argument as also invoking the preemption doctrine.

ERISA preemption of state law causes of action is well-established.  See Aetna Health,

Inc. v. Davila, 542 U.S. 200, 209 (2004).  The Supreme Court has held that "any state-law cause

of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy

conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id.  ERISA itself provides that the statute "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

The health benefits plan under which McDonough's rights exist is an employer-sponsored plan.  Indeed, there is no dispute that her Horizon plan is governed by ERISA.  McDonough's breach of contract claim would clearly "relate to" her employee benefit plan and is accordingly preempted under ERISA. Id.; Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987) (dismissing the plaintiff's common law causes of action, including breach of contract claim, as preempted by ERISA, reasoning that they were based on the improper processing of a claim for benefits under an employee benefit plan).

McDonough might alternatively be understood to take the position that although she herself has no breach of contract claim, she has filed this suit as a putative class action and may therefore pursue the breach of contract claim on behalf of other Horizon insureds covered by non-ERISA plans.  This position is unavailing because it fails to address McDonough's own standing to recover for a breach of contract injury.

To establish Article III standing, a plaintiff must demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servcs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).  It is axiomatic that a "plaintiff must demonstrate standing separately for each form of relief

sought." Id. at 185 (2000); see also Blum v. Yaretsky, 457 U.S. 991, 999 (1982) (holding, in a class action suit, that "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar"). This requirement applies with equal force in the class action context.  Lewis v. Casey, 518 U.S. 343, 357 (1996); Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 40 n. 20 (1976). The Supreme Court has repeatedly held as follows: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  Simon, 426 U.S. at 40 n. 20 (quoting Warth v. Seldin, 422 U.S. 490, 502,(1975)). As set forth above, McDonough herself has no breach of contract injury and no breach of contract claim.  She cannot base her standing to assert a breach of contract claim on injuries allegedly suffered by absent non-ERISA members of the putative class.

        This case does not, moreover, fall under the exception recognized by the Supreme Court in Ortiz, in which the Court held that where class certification is "logically antecedent to Article III concerns," class certification should be decided before reaching the question of Article III standing.  Ortiz v. Fibreboard, 527 U.S. 815, 831 (1999).  Ortiz, unlike this case, dealt with the standing of proposed class members, that is, persons not yet parties to the case.  Id.  Ortiz does not obviate the well-established requirement that a named plaintiff must establish her own standing to sue, whether she proceeds individually or on behalf of a class. In other words, the class certification issue is not "logically antecedent" to standing concerns, as Article III standing concerns would exist regardless of whether McDonough brought this case to seek relief only for

herself or brought it as a putative class action.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612 (1997) (stating that "logically antecedent" issues are those that would not exist but for the certification); Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002) (distinguishing situations in which Ortiz exception of deferring standing issues does not apply).

### H.     McDonough's Standing To Assert Claims On Behalf of Others

Horizon also moves that McDonough's claims be dismissed insofar as they are brought on behalf of individuals covered under large employer health plans, self-funded plans or non-ERISA health plans because McDonough is insured under a small employer, fully-funded ERISA plan and therefore, according to Horizon, lacks standing to sue on behalf of those other individuals.  This argument, however, is misplaced at this stage of the litigation. While Horizon presents this argument as a matter of standing, the issue raised actually goes to class certification requirements under Federal Rule of Civil Procedure 23.  See Lewis, 518 U.S. at 395-96 (distinguishing between matters of standing and matters of class certification and noting that "[w]hether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.") (quoting 1 H. Newberg & A. Conte, Newberg on Class Actions § 2.07, pp. 2–40 to 2–41 (3d ed.1992).

Horizon does not challenge McDonough's Article III standing or her own statutory standing to seek relief under ERISA.  Rather, Horizon's "standing" argument maintains that she cannot seek relief on behalf of individuals whose Horizon health plans differ from her own.  This argument raises concerns over whether the putative class presents common questions of law or

19

fact and whether the McDonough's claims are "typical of the claims or defenses of the class," concerns governed by Federal Rule of Civil Procedure 23(a)(2) and (3), respectively.  The question before the Court on this motion to dismiss is whether Plaintiff herself has set forth a plausible entitlement to the relief sought in Amended Complaint, not whether she may obtain such relief for others in a representative capacity.  Thus, the Court will not decide on this Rule 12(b)(6) motion whether McDonough may prosecute her claims on behalf of other persons, covered under other plans.

## I.      Jury Demand

Finally, Horizon requests that the Court strike the Amended Complaint's jury demand because McDonough's ERISA claims are equitable in nature and thus do not entitle her to a trial by jury.  Horizon is correct.  The claims that survive this motion to dismiss arise under ERISA § 502(a)(1)(B), to recover unpaid benefits, and ERISA § 503(a)(3), for breach of the fiduciary duty of loyalty. The Third Circuit has held that there is no right to a jury trial in actions under ERISA § 502(a)(1)(B), reasoning that such actions are analogous to actions for breach of trust, which are equitable in nature.  See Eichorn v. AT&T Corp., 484 F.3d 644, 656 (3d Cir. 2007) (citing Cox v. Keystone Carbon Co., 894 F.2d 647, 649 (3d Cir. 1990).  It has also held that there is no right to a jury trial in an action brought under ERISA § 503(a)(3).  Cox v. Keystone Carbon Co., 861 F.2d 390, 393 (3d Cir. 1988).  Accordingly, the Court will strike the jury demand from the Amended Complaint.

20

**III.    CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Horizon's motion

to dismiss.  As set forth above, Plaintiff may proceed on her ERISA § 502(a)(1)(B) claim for

unpaid benefits and her ERISA § 502(a)(3) claim for breach of fiduciary duty based on Horizon's

alleged handling of ONET claims to the detriment of plan members.  The Amended Complaint's

other claims will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  An

appropriate form of Order will be filed herewith.


　s/Stanley R. Chesler　　　
STANLEY R. CHESLER
United States District Judge


DATED: September 23, 2011

21