# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

CATHLEEN McDONOUGH, et al.

    Plaintiffs,

vs.

HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY, INC.

    Defendant.

CIVIL ACTION NO.: 09-cv-00571
(SRC)(PS)

---

## HORIZON'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE AMENDED CLASS ACTION COMPLAINT FILED BY PLAINTIFF CATHLEEN MCDONOUGH

GREENBERG TRAURIG, LLP
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey  07932
(973) 360-7900
Attorneys for Defendant
*Horizon Healthcare Services Inc.
d/b/a Horizon Blue Cross Blue Shield of
New Jersey*

Of Counsel:
    Philip R. Sellinger
    David Jay

On the Brief:
    Lori G. Singer

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................ ii

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS .............................................................. 3

    A.    Plaintiff's Amended Complaint ............................................ 3

    B.    Plaintiff's Plans ................................................................... 3

    C.    The SEHP Regulations ...................................................... 6

    D.    Plaintiff's OON Claims ...................................................... 7

ARGUMENT ................................................................................. 7

I.     HORIZON'S MOTION FOR SUMMARY JUDGMENT MUST BE
       GRANTED AS THERE IS NO ISSUE OF MATERIAL FACT ................. 7

II.    HORIZON PAID MCDONOUGH'S CLAIMS PURSUANT TO
       HER SEHP PLAN AND THE SEHP REGULATIONS ............................. 9

CONCLUSION ............................................................................. 18

## TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................... 7

*DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442 (3d Cir. 2003) ......................... 16

*Doroshow v. Hartford Life and Accident Insurance Company*, 574 F.3d, 230 (3rd Cir. 2009) ................................................................................................. 8

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ............................ 8, 16

*Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14 (2d Cir. 2011) ......................... 16

*Loudin Ins. Agency, Inc. v. Aetna Casualty & Surety Co.*, 966 F.2d 1443, 1992 WL 145269 (4th Cir. July 21, 1992) ........................................................... 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ............... 8

*Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008) ................... 8

*Rhodes v. Principal Financial Group, Inc.,* No. 10-290, 2011 WL 6888684 (M.D. Pa. 2011) ..................................................................................................... 8

*Santasania v. Union Travel Trades Benefit Funds*, No. 3:01-CV-1442, 2003 WL 256778 (M.D. Pa. Feb. 4, 2003) ........................................................... 16

*Shrewsbery v. Nat'l Grange Mutual Ins. Co.,* 183 W.Va. 322 (1990) ............. 11, 12

Statutes

29 U.S.C.A. § 1132(a)(1)(B) ...................................................................................... 3

29 U.S.C.A. § 1132(a)(3) ............................................................................................ 3

N.J.S.A. 17B:27A-17 .................................................................................................. 4

N.J.S.A. 17B:27A-32(b) .............................................................................................. 7

N.J.S.A. 17B:27A-41 .................................................................................................. 7

N.J.S.A. 17B:27A-43 .................................................................................................. 7

Rules

Fed. R. Civ. P. 56 ............................................................................. 1

Fed. R. Civ. P. 56(c) .......................................................................... 7

Regulations

N.J.A.C. 11:21-1.4 ............................................................................. 7

N.J.A.C. 11:21-2.3(a)(4) ..................................................................... 4

N.J.A.C. 11:21-2.3(a)(8) ..................................................................... 4

N.J.A.C. 11:21-4.1 ............................................................................. 4

N.J.A.C. 11:21-7.13 ........................................................... 6, 9, 11, 14

N.J.A.C. 11:21-7.13(a) ..................................................................... 10

Miscellaneous

Bruce H. Nagel, et al., *Reimbursement Reform, Health Care Law*, 182
    N.J.L.J. 974, Dec. 12, 2005 ....................................................... 2, 11

Small Employer Health Plan Board's Comments, vol. 41, N.J.Reg., issue
    18 (Sept. 21, 2009) ........................................................... 11, 14, 15

Pursuant to Fed. R. Civ. P. 56, defendant Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon") submits this brief in support of its motion for summary judgment with respect to the Amended Class Action Complaint ("Complaint") filed by Plaintiff Cathleen McDonough ("Plaintiff").

## PRELIMINARY STATEMENT

The dust had yet to settle on the New York Attorney General's cursory critique of the Ingenix Database when Plaintiff, a New Jersey lawyer, brought suit against Horizon for using Ingenix to price her Out of Network ("OON") claims. Hoping to parlay the New York investigation into a payday, Plaintiff challenged, for the first time, OON reimbursements that Horizon had paid her years before pursuant to her New Jersey plans. With discovery now concluded, it is incontrovertible that Horizon paid Plaintiff's claims in strict compliance with the terms of her plans and the New Jersey Small Employer Heath Plan ("SEHP") regulations. Thus, her claims lack merit and should be dismissed.

Plaintiff flatly acknowledges in her Amended Complaint that New Jersey law requires insurers to use Ingenix to price OON benefits under SEHPs, like Plaintiff's. Amended Complaint, ¶12. ("[T]he New Jersey Regulation requires Defendant Horizon to use the Ingenix database…"). Plaintiff's counsel has succinctly observed that:

> [T]he State of New Jersey has established a specific regulatory standard, which must be adhered to for the calculation of benefits based on reasonable and customary amounts with respect to small employer group health benefits. This regulatory provision N.J.A.C. 11:21-7.13, entitled "Paying Benefits," requires the use of the 80th percentile of a defined, updated database [i.e., Ingenix] for medical services.

*See* Bruce H. Nagel, et al., *Reimbursement Reform, Health Care Law*, 182 N.J.L.J. 974, Dec. 12, 2005, at S-14, attached as Ex. 1 to the December 21, 2012 Certification of David Jay ("Jay Cert."). He further acknowledged that, "This regulation is unique to New Jersey. It is significant in its specific requirement for usage of a certain percentile and database... ." *Id.* at S-32.

It is undisputed that Plaintiff's health plans for the period in question were all issued under the New Jersey SEHP program in accordance with these regulations. It is likewise undisputed that Horizon used Ingenix to set Plaintiff's OON reimbursements. In short, Horizon paid Plaintiff the exact OON benefits that were due under her SEHPs and applicable law. There are simply no facts, disputed or otherwise, to suggest that Horizon abused its discretion by using Ingenix to pay Plaintiff's OON claims. Indeed, if Horizon had not used Ingenix to pay her OON claims, it would have been subject to penalties under the SEHP regulations. Accordingly, Plaintiff's claims for unpaid benefits and breach of fiduciary duty are subject to complete defenses and, as a matter of law, must be dismissed.

## STATEMENT OF FACTS

### A. Plaintiff's Amended Complaint

The gist of Plaintiff's action is that Horizon, in using Ingenix to price her OON benefits, failed to comply with the terms of her health plans and underpaid her benefits. Am. Compl. ¶ 27. The Court, pursuant to Horizon's motion, dismissed all of Plaintiff's claims but two: a claim seeking unpaid benefits under ERISA, 29 U.S.C.A. § 1132(a)(1)(B)[1]; and a claim for breach of fiduciary duty seeking equitable relief under ERISA, 29 U.S.C.A. § 1132(a)(3).[2] Am. Compl. Counts I - III.

### B. Plaintiff's Plans

At all relevant times from 2005 to present, Plaintiff's health plan has been a SEHP provided by Horizon through her employer, Newman, McDonough, Schofel & Giger. *See* Am. Compl. ¶ 18; Deposition Transcript of Cathleen McDonough, dated March 10, 2011 ("McDonough Dep.") at 57:13-58:12; and McDonough

---

[1] ERISA § 1132(a)(1)(B) states that, "a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

[2] ERISA § 1132(a)(3) provides that a plan participant or beneficiary may bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Deposition Exhibit #CM-1, Jay Cert., Ex. 2 and 3.  *See also* SEHPs issued to Newman, McDonough, Schofel & Giger, effective 3/1/05 ("McDonough 2005"), 3/1/06 ("McDonough 2006"), 3/1/07 ("McDonough 2007"), 3/1/08 ("McDonough 2008"), 3/1/09 ("McDonough 2009") and 3/1/11 ("McDonough 2011"), Jay Cert. Exs 4-9.[3]  The SEHP Board is authorized by statute to "establish benefit levels, deductibles and copayments, exclusions, and limitations," as well as policy forms, for the standard SEHP health benefits plans."  N.J.S.A. 17B-27A-17; N.J.A.C. 11:21-2.3(a)(4) and (8).  Carriers are required to use the standard policy forms, verbatim, for all SEHP health plans.  N.J.A.C. 11:21-4.1.

All of Plaintiff's Horizon SEHP plans used the standard forms and were issued in and governed by the laws of New Jersey.  *See, e.g.,* McDonough 2008, p. 1, Jay Cert., Ex. 7 ("This Policy is delivered in the jurisdiction specified above and is governed by the laws thereof.").  Except as noted below, the pertinent terms of McDonough's SEHPs remained unchanged from 2005 through 2011.[4]  *Id.*

Prior to 2010, Plaintiff's plans provided as follows:

---

[3] Prior to 2005, McDonough obtained her SEHP coverage through a different health insurer, not Horizon.  McDonough Dep. pp. 8-9, Jay Cert., Ex. 2.

[4] Pursuant to McDonough's pre-2010 and post-2010 policies, Horizon retains complete discretion to interpret the terms and make benefit determinations.  *See, e.g.,* McDonough 2008, p. 19 and McDonough 2011, p. 19.  Jay Cert., Ex.7 and 9. (defining "discretion/determination/determine" as Horizon's "sole right to make a decision").

**Reasonable and Customary** means an amount that is not more than the lesser of :

- the usual or customary charge for the service or supply as determined by Horizon BCBSNJ, based on a standard approved by the Board; or

- the negotiated fee schedule.

***The Board will decide a standard for what is Reasonable and Customary under this Policy.*** The chosen standard is an amount which is most often charged for a given service by a Provider within the same geographic area. For charges that are not determined by a negotiated fee schedule, the Covered Person may be billed for the difference between the Reasonable and Customary charge and the charge billed by the Provider.

Am. Compl. ¶ 21 (Emphasis added); *see also* McDonough 2005-2009, Jay Cert., Ex. 4-8.

After 2009, in accordance with the updated SEHP regulations, the phrase "Reasonable and Customary" appearing in Plaintiff's plan was replaced with the term "allowed charge," and the "chosen standard" of "an amount which is most often charged for a given service by a Provider within the same geographic area" was eliminated altogether from Plaintiff's plan. *See, e.g.,* McDonough 2011, at p. 15. Jay Cert., Ex. 9. The new paragraphs states:

**Allowed Charge** means an amount that is not more than the lesser of:

- the allowance for the service or supply as determined by Horizon BCBSNJ, based on a standard approved by the Board; or

- the negotiated fee schedule.

> ***The Board will decide a standard for what is an Allowed Charge under this Policy.*** For charges that are not determined by a negotiated fee schedule, the Covered Person may be billed for the difference between the Allowed Charge and the charge billed by the Provider.

*Id.* The SEHP Board issued regulations that specifically define the standard for

"Reasonable and Customary" and "Allowed Charge" as contemplated in the plans.

### C. The SEHP Regulations

At all relevant times, the SEHP regulations specifically set the limit for

OON benefit reimbursement at the 80th percentile of the Ingenix Database:

> Reasonable and customary means a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference published and available from the Ingenix, Inc. 12125 Technology Drive, Eden Prairie, Minnesota 55344. The maximum allowable charge shall be based on the 80th percentile of the profile.

N.J.A.C. 11:21-7.13 (pre-2009 version), Jay Cert., Ex. 10. Although the SEHP

Board replaced the words "Reasonable and Customary" with "Allowed Charge" in

the 2009 amendment to the regulations, the remaining language did not change,

nor did the SEHP Board's express directive to use Ingenix. N.J.A.C. 11:21-7.13

(amended 2009 version), Jay Cert., Ex. 11. In addition, the SEHP Regulations

provide that "[f]ailure of a carrier to comply with any provision of this chapter

shall result in the imposition of penalties as authorized by law, including, but not

limited to, penalties set forth at N.J.S.A. 17B:27A-41 and 17B:27A-43." N.J.A.C.

11:21-1.4.  *See also* the Court's September 23, 2011 Opinion regarding Def.'s Mot.

Dismiss at p. 15, citing, N.J.S.A. 17B:27A-32(b).

### D. Plaintiff's OON Claims

Plaintiff and her family submitted approximately 20 OON claims to Horizon

for reimbursement.  *See* Expert Report of J. Mark Abernathy, dated September 16,

2011 ("Abernathy Report"), at pp. 34-41, Jay Cert. Ex. 12.  Four of those claims

are referenced specifically in Plaintiff's Amended Complaint.  *See* Am. Compl. ¶

25(a)-(d).  Consistent with SEHP regulations and her plans, Horizon priced

Plaintiff's claims using Ingenix and capped reimbursement at the 80th percentile of

that profile.  *Id.* at ¶ 35 ("[A]t all relevant times, Defendant Horizon relied upon

and utilized the Ingenix Database…to make UCR determinations.")

## ARGUMENT

### I.   HORIZON'S MOTION FOR SUMMARY JUDGMENT MUST BE GRANTED AS THERE IS NO ISSUE OF MATERIAL FACT.

Summary judgment is appropriate where "there is no genuine issue as to any

material fact and…[the moving party] is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue

of fact is genuine only "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party" on that issue; it is material only if it "might affect

the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has established the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 249.

Moreover, the United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,115 (1989), held that where an ERISA plan specifically grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," as did McDonough's plans here, the court is to apply a highly deferential "abuse of discretion" standard to evaluate challenged benefit determinations. *Id.  See also Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 117 (2008); *Rhodes v. Principal Financial Group, Inc.*, No. 10-290, 2011 WL 6888684 (M.D. Pa. 2011); *Doroshow v. Hartford Life and Accident Insurance Company*, 574 F.3d, 230, 234 (3d. Cir. 2009) ("a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law…The scope of this review is narrow, and the court is not free to substitute its

8

own judgment for that of the defendants in determining the eligibility for plan benefits.") (internal citations omitted).

It is incontestable that Horizon paid Plaintiff the OON benefits that were due and owing to her. As discussed in more detail below, with no facts to justify Plaintiff's challenge to Horizon's benefit determinations, the Court cannot find that Horizon abused its discretion and must dismiss Plaintiff's claims as a matter of law.

## II.  HORIZON PAID MCDONOUGH'S CLAIMS PURSUANT TO HER SEHP PLAN AND THE SEHP REGULATIONS

Plaintiff has testified that all of her Horizon health plans have been SEHPs. McDonough Dep. 9:2-3, Jay Cert., Ex. 2 ("A. Yes. It's always been a small employer plan."). And there is no dispute that New Jersey regulations require that SEHP OON benefits be priced using Ingenix. Am. Compl. ¶ 12. ("[T]he New Jersey Regulation requires Defendant Horizon to use the Ingenix database..."). *See also* N.J.A.C. 11:21-7.13 ("The maximum allowable charge shall be based on the 80th percentile of the profile [i.e., Ingenix].") Plaintiff confirms that Horizon used Ingenix to pay her OON benefits. Am. Compl. ¶ 35 ("[A]t all relevant times, Defendant Horizon relied upon and utilized the Ingenix Database...to make UCR determinations.") Thus, it is undisputed that Horizon paid Plaintiff's OON benefits in compliance with the requirements of her SEHPs and the SEHP regulations.

9

The gravamen of Plaintiff's complaint is that Horizon's use of Ingenix, while in compliance with the SEHP plan terms and New Jersey law, nonetheless violated ERISA because Ingenix cannot satisfy the statutorily prescribed SEHP definition of "Reasonable and Customary" -- i.e., that the OON payment be based upon "an amount which is most often charged for a given service by a Provider within the same geographic area." But this criticism is absurd, since the draftsman of this very definition, the SEHP Board, promulgated regulations that not only expressly state that "Reasonable and Customary" equals Ingenix, but specifically mandate the use of the 80th percentile of Ingenix as the maximum amount for OON benefits.

Furthermore, although the language upon which Plaintiff relies was ultimately deleted by the SEHP Board from the form policy, the SEHP Board's requirement that carriers use Ingenix has never changed. Therefore, Plaintiff's focus on this language should not be permitted to mislead the Court. There has never been any question -- except those posed after-the-fact by creative plaintiffs' lawyers -- that "Reasonable and Customary" meant Ingenix.[5]

---

[5] Indeed, in 2009, when the SEHP Board amended N.J.A.C. 11:21-7.13(a), it made clear that the deletion of the words "reasonable and customary" or "most often charged" was of little consequence, since the operative component of the regulation was its reliance on the Ingenix Database:

   [T]he Change in terminology has no effect on payments for out of network services. Both "reasonable and customary" as it appears in

In fact, in 2005, the very year that Plaintiff became a Horizon member, Plaintiff's counsel is on record acknowledging that, "N.J.A.C. 11:21-7.13, entitled "Paying Benefits," requires the use of the 80th percentile of a defined, updated database [i.e., Ingenix] for medical services." Nagel, *Supra*, at S-14, Jay Cert., Ex. 1. Horizon's use of Ingenix was in strict adherence with these requirements.

In *Shrewsbery v. Nat'l Grange Mutual Ins. Co.*, 395 S.E. 2d 745, 750 (W. Va. 1990), the court refused to hold a carrier liable for complying with the "mandates of state law." In that case, a terminated agent for an insurance company brought suit against the insurance company alleging that the company had interfered with his customer relationships by sending a letter to his customers informing them of the termination. The Appellate Court upheld the lower court's entry of a directed verdict against the agent based, in part, on the fact that the insurance company was required by state law to send such a letter to customers subsequent to an agent's termination:

> the pre-proposal text and "allowed charge" as appears in the proposal text require carriers to use the 80th percentile of the Prevailing Healthcare Charges System or actual charges for non-network services and supplies.
>
> *       *       *
>
> The SEH Board disagrees the defined term has consequences given that both reasonable and customary and allowed charge require the use of the PHCS data to determine the amount.

*See* Small Employer Health Plan Board's Comments ("Comments"), vol. 41, N.J.Reg., issue 18 (Sept. 21, 2009), pp. 4 and 2, Jay Cert., Ex. 13.

It is undisputed that [the defendant acted] only in a way mandated by state law, that is, to give its own policy-holders notice, as required by the state insurance commissioner, that their agent had been let go and that the policy-holders had certain options. [The defendant's] actions were not wrongful . . . because the company acted pursuant to the mandates of state law. **It cannot be that one can be liable to a private party under a state's tort law for doing exactly that which the state government itself has instructed him to do and threatened him with a penalty for not doing.**

*Id.* (emphasis added). The court also noted that the parties' agreement provided that if the agreement conflicts with any statute, "the provisions of the statute shall prevail and define the rights, duties and obligations of [the parties]." *Id.* at 326. Accord., *Loudin Ins. Agency, Inc. v. Aetna Casualty & Surety Co.*, 966 F.2d 1443, 1992 WL 145269 (4th Cir. July 21, 1992). Thus, like the insurance company in *Shrewsbery,* Horizon cannot be liable for doing what the state expressly instructed it to do, under threat of penalty for non-compliance.

Plaintiff's alternative argument that she is entitled to reimbursement of full billed charges for all her OON services is equally without foundation. Transcript of Oral Argument on Class Cert. Motion dated July 19, 2012 ("Transcript"), p. 27, Jay Cert., Ex. 14. ("Mr. Nagel: I paid for a contract provision which defined what I'm going to get and I didn't get it and, therefore….I may be entitled to, as a measure of damage, the billed charge."). Leaving aside that even her experts concede that they cannot prove that Ingenix violates the defunct "most often

charged" definition, Plaintiff's demand completely mischaracterizes the terms of her plan. Under Plaintiff's plans, covered charges are defined as "Reasonable and Customary charges." McDonough 2008 at 17, Jay Cert., Ex. 7. "Reasonable and Customary" charge means an amount set pursuant to the SEHP Board's standard (Ingenix) or a negotiated fee schedule. *Id.* at 27. (OON claims do not involve negotiated fee schedules.) Plaintiff's plan states, "For charges that are not determined by a negotiated fee schedule, the Covered Person may be billed for the difference between the Reasonable and Customary charge and the charge billed by the Provider." *Id.* In other words, Plaintiff's plan terms make no provision for the payment of billed charges and expressly state that Plaintiff is responsible for the difference between what she is reimbursed by Horizon under her plan and the actual billed charges. Plaintiff concedes as much in her recent class brief:

> Horizon pays either R&C [reasonable and customary] or the provider's billed ("actual") charge, *whichever is less*. When Horizon pays R&C (because it is less than the actual charge), then members are liable for the difference.

*See* Plaintiff's Supplemental Brief Addressing Various Issues In Further Support of Subscriber Plaintiff's Motion for Class Certification, September 24, 2012 ("Pl. Suppl. Br.") at 18 (emphasis added).

Furthermore, Plaintiff's reliance on the SEHP regulations for the proposition

that "ONET services should be reimbursed using either the 'allowed charges or

actual charges'" is simply wrong.   *See* Plaintiff's Brief in Opposition to

Defendant's Motion to Exclude the Report and Testimony of Sally Reaves ("Pl.

Daubert Op.") at 17.[6] The SEHP Board categorically rejected this reading of the

regulations when it revisited these regulations in connection with the 2009

amendments.   Refusing to alter the statutory reliance on the Ingenix Database,[7] the

SEHP Board emphasized that the PHCS fee schedule represented a cap -- i.e., the

---

[6] Plaintiff is referring to N.J.A.C. 11:21-7.13, attached hereto as Ex. 11 to the Jay Cert.

[7] The SEHP Board was well aware of recent controversy pertaining to Ingenix. Citing to both the United Health Group Inc. Settlement ("it makes no finding on the issue of underpayment" of OON reimbursement) (Comments, p.5, Jay Cert., Ex. 13), and the 2009 Attorney General's Report, discussed *infra.*, pp. 4-5 ("The Report acknowledges that regional disparities across the State of New York exist.") (*Id.*), the SEHP Board rejected complaints made about the Ingenix Database by commenters on the proposed amendment, and left the mandatory Ingenix Database benchmark in place:

> COMMENT 14:  One commenter opposes the use of the PHCS profile calling it "a debunked data system."….
> RESPONSE:  The SEH Board disagrees with the commenter's characterization.
>
> * * *
>
> COMMENT 17:  One commenter challenged the use of the Ingenix database because it "estimates the customary rates low, it keeps insurance reimbursements low and shifts more of the cost to the patient."…
> RESPONSE:  As discussed is several prior responses, … the SEH Board disagrees with the commenter's assessment of the reimbursement as determined using the 80th percentile of PHCS.

Comments, pp 7 and 8, Jay Cert., Ex. 13.

14

"maximum amount the carrier is responsible to pay for a service or supply," (*Id.* at 5) -- which could be expected to be less than the actual billed charges for OON services:

> When a member chooses to use a non-network provider, even when a network provider is available,…[s]uch non-network provisions generally required greater cost sharing, and in addition, the allowed charge may be less than the billed charge resulting in the member being billed for the difference between what the carrier as well as the member paid and the billed charge.  Nowhere is there an express or implied promise that the choice to use non-network benefits will result in no financial exposure.  Quite the contrary is the case.  The plans expressly advise consumers that there is generally greater out of pocket exposure associated with the use of non-network providers.

Comments, p. 4, Jay Cert., Ex. 13.  The SEHP Board found that capping costs through the use of the Ingenix Database was necessary to control exorbitant medical costs:

> Failing to include a cap on reimbursement for the use of non-network providers would lead to unlimited reimbursement liability for carriers and result in increased premiums to seek to cover the unlimited reimbursement.  Such a result is not desirable.

*Id.* at 6.

Thus, in requiring the use of Ingenix to cap OON benefits, the Board was not allowing for an "either/or" payment scheme.  Although the regulation states that OON services must be paid using either the allowed charges (defined as the 80th percentile of the Ingenix Database) or actual charges, it is clear that the intention was that actual charges would be paid only when they were less than the

80th percentile of the Ingenix Database; and in no event was the insurer to pay more than the 80th percentile of the Ingenix Database.[8]

Federal courts strictly limit an ERISA plan beneficiary's recovery under § 1132(a)(1)(B) to "benefits be due to him under the terms of his plan." *Santasania v. Union Travel Trades Benefit Funds*, No. 3:01-CV-1442, 2003 WL 256778, at *3 (M.D. Pa. Feb. 4, 2003) (citing, *Mass. Mutual Life Ins. Co. V. Russell*, 473 U.S. 134, 144 (1985)); *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 457-58 (3d Cir. 2003) ("[ERISA § 1132(a)(1)(B)], by its plain language only allows plan participants to seek the benefits to which they are contractually entitled..."). Accordingly, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone*, at 115. To "prevail under §...[1132](a)(1)(B), a plaintiff must show that: (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." *Guerrero v. FJC Sec. Servs. Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011). Plaintiff has no disputed facts demonstrating the wrongful denial of a benefit under her SEHPs.

---

[8] Plaintiff has cited to this Court's observation, in its September 2011 opinion on Horizon's Motion to Dismiss Plaintiff's Amended Complaint, that "The cited SEHP regulation may not be used by Horizon as a shield, particularly in light of its own alleged involvement in the corruption of the Ingenix database and the available option, under the very same regulation, of calculating the ONET benefit using the provider's actual charge." MTD Opinion at 6. As the foregoing discussion makes plain, there is no permissible "option" under these regulations to pay billed charges.   In any event, there are no facts, let alone disputed facts, which suggest that Horizon engaged in any wrongdoing.

Plaintiff does not dispute that the terms of her SEHP require Horizon to use Ingenix and that Horizon did just that.  In so doing , Horizon paid Plaintiff the OON benefits that were due and owing under her pre-2010 SEHPs, and her claims for unpaid benefits and breach of fiduciary duty must be dismissed.  Further, as noted, when the standard policy form was amended in 2009, the SEHP Board scrapped the "most often charged" language which is the bedrock of Plaintiff's unpaid benefits claim.  Plaintiff does not even attempt to argue that Horizon's OON payments violated plan requirements under the terms of her post-2010 SEHPs, and any claims pertaining to these policies must likewise be dismissed.

## CONCLUSION

Accordingly, for the foregoing reasons, Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey, Inc. respectfully requests that summary judgment be granted with respect to Plaintiff's claims because Horizon complied with the terms of her plan and with state law when it paid Plaintiff's OON benefits.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:  *s/ Philip R. Sellinger*
    Philip R. Sellinger
    David Jay
200 Park Avenue, P.O. Box 677
Florham Park, New Jersey 07932
(973) 360-7900

Attorneys for Defendant Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey

Dated:  December 21, 2012