# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

CATHLEEN MCDONOUGH,

    Plaintiff,

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION and BARRY
HELFMANN, PSY.D., individually and
on behalf of all other similarly situated
individuals,

    Consolidated
    Plaintiffs,

v.

HORIZON HEALTHCARE
SERVICES, INC. d/b/a BLUE CROSS
BLUE SHIELD OF NEW JERSEY,
INC.,

    Defendant.

CIVIL ACTION NO. 09-00571(SRC)(PS)


**JOINT MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT**

   Representative Plaintiffs, Cathleen McDonough, Barry Helfmann, Psy.D. and the New Jersey Psychological Association and defendant, Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"), (collectively, the "Parties"), respectfully move this Court to enter the proposed Order Preliminarily Approving Proposed Settlement, Approving Class Notice, and Scheduling Settlement Hearing (the "Preliminary Approval Order").

In support of this motion, the Parties state as follow:

1.  The Parties have entered into a Settlement Agreement, which is attached as Exhibit 1.

2.  The Parties respectfully request that the Court grant preliminary approval to the Settlement Agreement as fair, adequate and reasonable.

3.  The Parties respectfully request that the Court approve the notice plan in the Settlement Agreement at Paragraph 4 and the notice forms, which are attached to the Settlement Agreement as Exhibits C & D.

4.  The Parties respectfully request that the Court schedule a hearing as soon as practicable to consider the Settlement Agreement for preliminary approval and to enter the proposed Preliminary Approval Order annexed to the Settlement Agreement as Exhibit A.

Respectfully submitted this 13th day of November, 2013.

NAGEL RICE, LLP


By: */s/ Bruce H. Nagel*
    Bruce H. Nagel, Esq.
    Randee Matloff, Esq.
    103 Eisenhower Parkway
    Roseland, NJ 07068
    (973) 618-0400
    Attorneys for Representative Plaintiffs

GREENBERG TRAURIG, LLP


By:/s/ David Jay_____
          Philip Sellinger, Esq.
          David Jay, Esq.
          200 Park Avenue
          Florham Park, NJ 07932
          (973) 360-7900
Attorneys for Defendant Horizon
Blue Cross Blue Shield of New Jersey


## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF.


          /s/ Bruce H. Nagel
          Bruce H. Nagel, Esq.
          Randee Matloff, Esq.
          103 Eisenhower Parkway
          Roseland, NJ 07068
          (973) 618-0400
Attorneys for Representative Plaintiffs

Dated:  November 13, 2013

# EXHIBIT
# 1

SETTLEMENT AGREEMENT AND RELEASE

HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY,

CATHLEEN MCDONOUGH, BARRY HELFMANN, PSY.D.,
and NEW JERSEY PSYCHOLOGICAL ASSOCIATION,

THE REPRESENTATIVE PLAINTIFFS,

AND NAGEL RICE, LLP, CLASS COUNSEL

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of the

___ day of October, 2013 ("Execution Date"), by and among, Cathleen McDonough, Barry

Helfmann, PSY.D., and the New Jersey Psychological Association ("collectively "the

Representative Plaintiffs"), on behalf of themselves and all other Class Members, by and through

Class Counsel, and Horizon Blue Cross Blue Shield of New Jersey and its affiliates and related

companies (collectively, "Horizon") (all collectively, the "Parties"). The Parties intend this

Agreement to resolve, discharge and settle the Released Claims, fully, finally and forever

according to the terms and conditions set forth below.

### RECITALS

WHEREAS, Cathleen McDonough filed the McDonough Action alleging claims against

Horizon;

WHEREAS, Horizon denies the allegations and any wrongdoing or liability arising out of

the claims in the McDonough Action;

WHEREAS, Barry Helfmann, Psy. D. and the New Jersey Psychological Association

filed the Helfmann Action, alleging essentially the same claims against Horizon;

WHEREAS, Horizon denies the allegations and any wrongdoing or liability arising out of

the claims in the Helfmann Action;

WHEREAS, the McDonough Action and the Helfmann Action were consolidated for

discovery;

WHEREAS, plaintiffs in the McDonough Action and the Helfmann Action filed motions

to certify, respectively, both subscriber and provider classes and these motions are still pending

as of the Execution Date;

1

WHEREAS, the plaintiffs in the McDonough Action and the Helfmann Action challenge, among other things, the way Horizon determines reimbursement amounts for Covered Services or Supplies provided by Out-of-Network Providers, and claim that Horizon provided inadequate reimbursement to Horizon Subscribers or their providers for out-of-network Covered Services or Supplies through the use of the Ingenix Databases, as well as other reimbursement methodologies and out-of-network reimbursement policies;

WHEREAS, Horizon denies the material factual allegations and legal claims asserted in the McDonough Action and the Helfmann Action and has asserted numerous defenses to the claims that Horizon believes are meritorious.  Nonetheless, Horizon has a desire to further improve its relationships with the Class Members and concludes that further litigation would be protracted and expensive, and that it is desirable that the Released Claims, including all claims asserted by the plaintiffs in the McDonough Action and the Helfmann Action, be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, the Class Members, the New Jersey Psychological Association and its members, and Class Counsel believe that the claims asserted in the Complaint have merit, but recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute these claims through trial and appeals;

WHEREAS, Horizon, the Class Members, the New Jersey Psychological Association and its members, and Class Counsel also have taken into account the uncertain outcome and the risk of any class action and believe that the settlement set forth in this Agreement has substantial value and confers substantial benefits upon the Parties;

2

WHEREAS, the Parties have agreed it is to their mutual benefit to settle and resolve their outstanding differences regarding the claims and defenses asserted in, and relating to the subject of, the McDonough Action and the Helfmann Action;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, that subject to the jurisdiction and approval of the Court and affirmation on any appeals, the McDonough Action and the Helfmann Action shall be finally and fully resolved under the following terms and conditions.

### DEFINITIONS

"Agreement" means this Settlement Agreement, inclusive of exhibits.

"Allowed Amount" means the portion of the provider's bill for Covered Services or Supplies that Horizon has determined to be eligible for reimbursement pursuant to the Horizon Subscriber's Plan before the application of co-insurance, deductibles, and co-pays or other member liability for benefits.

"Ambulatory Surgical Center" or "ASC" means a facility providing out-patient surgical services that do not require overnight admission, including facilities set forth in N.J.S.A. § 26:2H-12g(5).

"Class" means collectively (a) a sub-class comprised of all persons enrolled in a Plan during the Class Period ("Horizon Subscribers") that included an out-of-network benefit ("Subscriber Sub-class"), and (b) a sub-class comprised of all Out-of-Network Health Care Providers who are not licensed medical doctors or doctors of osteopathy and who provided Covered Services or Supplies during the Class Period to Horizon Subscribers whose Plans included an out-of-network benefit and were paid less than their billed amount for these Covered Services or Supplies ("Provider Sub-class"). The Class expressly excludes all Horizon Subscribers who are solely Medicaid members, Medicare members, Medicare Advantage

3

members, and Federal Employee Health Benefit Plan members.  The Class also excludes Ambulatory Surgical Centers.  In addition, the Class excludes all Persons who, in accordance with the terms of this Agreement, execute a timely request for exclusion ("Opt Out") from the Class.

"Class Counsel" means Bruce H. Nagel and Nagel Rice LLP.

"Class Member" means any Person who is a member of the Class and who is not excluded or does not validly and timely Opt Out.

"Class Period" means the period from February 9, 2003 to the date the Preliminary Approval Order is entered by the Court.

"Court" means the United Stated District Court for the District of New Jersey.

"Covered Services or Supplies" means those health care services and supplies for which a Horizon Subscriber is entitled to receive coverage under the terms and conditions of his or her Plan.

"CPT Code" means the Common Procedural Terminology developed by the American Medical Association to describe and organize medical, surgical and diagnostic procedures.

"Final Approval Date" means the date on which the Court issues the Final Order and Judgment.

"Final Approval Hearing" means the hearing during which the Court will determine whether to enter the Final Order and Judgment.

"Final Order and Judgment" means the order and form of judgment approving this Agreement and dismissing the McDonough Action and the Helfmann Action with prejudice, which order and judgment shall be substantially in the form attached hereto as Exhibit B.

4

"Helfmann Action" means *New Jersey Psychological Association and Barry Helfmann, Psy.D. et al. v. Horizon Healthcare Services, Inc., d/b/a Horizon Blue Cross Blue Shield of New Jersey, Inc., et al.*, Civil Action No. 10-06494 (SRC) (PS) (D.N.J.).

"Ingenix Databases" or "Ingenix" means the Prevailing Healthcare Charges System Database and/or the MDR Payment System released by Ingenix, Inc., including all releases and modules of these databases.

"McDonough Action" means *Cathleen McDonough, et al. v. Horizon Blue Cross Blue Shield of New Jersey, Inc., et al.*, Civil Action No. 09-00571 (D.N.J.).

"Out-of Network Health Care Provider" means any health care provider or Provider Group who did not have a valid written contract with Horizon to provide Covered Services or Supplies to Horizon Subscribers during the Class Period, including without limitation, any and all of the following: physician, podiatrist, chiropractor, orthodontist, psychologist, psychiatrist, physical or occupational, therapist, acupuncturist, laboratory technician, optometrist, social worker, physician assistant, nurse, midwife, nurse practitioner, nurse anesthetist, nutritionist, orthotist, prosthetist, audiologist, dentist, dental hygienist, oral surgeon, counselor, therapist, durable medical equipment provider, laboratory, pharmacist, pharmacy, respiratory therapist, surgical assistant, speech or hearing specialist, speech pathologist or other providers who are not licensed physicians.

"Person" or "Persons" means all persons and entities (including without limitation natural persons, firms, corporations, limited liability companies, joint ventures, joint stock companies, unincorporated organizations, agencies, bodies, governments, political subdivisions, governmental agencies and authorities, associations, partnerships, limited liability partnerships, trusts, and their predecessors, successors, administrators, executors, heirs and assigns).

5

"Plan" means a Horizon Subscriber's fully-insured plan issued by Horizon or self-funded plan administered by Horizon, including the State Health Benefits Program, for health care benefits as set forth in the Horizon Subscriber's summary plan description, certificate of coverage or other applicable coverage document.

"Preliminary Approval Hearing" means the hearing during which the Court determines whether to enter the Preliminary Approval Order.

"Preliminary Approval Order" means the preliminary approval order, in substantially the form attached hereto as Exhibit A.

"Provider Group" means any corporation, partnership or other distinct legal entity that provides Covered Services or Supplies to Horizon Subscribers.

"Representative Plaintiffs" means Cathleen McDonough, Barry Helfmann, Psy.D. and the New Jersey Psychological Association.

"TOR" means the proprietary medical services and supplies charge data profile compiled by Horizon also known as Top-of-Range.

## TERMS

1.  <u>Business Reforms.</u>

    1.1.    Within sixty (60) days of the Effective Date, but not before January 1, 2014, Horizon shall, on a rolling basis as each coverage contract is renewed, replaced or expires, discontinue using the Ingenix Database when calculating Allowed Amounts in connection with claims by (a) Horizon Subscribers for Covered Services or Supplies provided by Out-of-Network Providers; and (b) Out-of-Network Providers who have an assignment for Covered Services or Supplies provided to Horizon Subscribers; provided, however, that the Parties acknowledge and

6

agree that Horizon shall continue to use Ingenix in connection with any Plan (i) where state or federal statute, regulation or directive requires the use of Ingenix, unless and until the law is amended,[1] or (ii) governed by a multi-year term coverage contract entered into prior to the Execution Date that requires use of Ingenix beyond January 1, 2014, until such time as the Plan is renewed, replaced or expires.

        1.2.     Within sixty (60) days of the Effective Date, but not before January 1, 2014, Horizon shall, on a rolling basis as each Plan is renewed, replaced or expires, discontinue using TOR when calculating Allowed Amounts in connection with claims by (a) Horizon Subscribers for Covered Services or Supplies provided by Out-of-Network Providers; and (b) Out-of-Network Providers who have an assignment for Covered Services or Supplies provided to Horizon Subscribers; provided, however, that the Parties acknowledge and agree that Horizon shall continue to use TOR in connection with any Plan governed by a multi-year term coverage contract entered into prior to the Execution Date that requires use of TOR beyond January 1, 2014, until such time as the Plan is renewed, replaced or expires.

        1.3.     Within sixty (60) days of the Effective Date, but not before January 1, 2014, all Plans sold or renewed by Horizon will be revised to clearly state the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies

---

[1] The Parties acknowledge that, effective January 1, 2016, the New Jersey Department of Banking and Insurance has amended Small Employer Health Care Regulations to include health care benefit plans issued to Mid-Size (51-99) Market Subscribers. The Parties further acknowledge and agree that until the earlier of (a) a decision by the New Jersey State Department of Banking and Insurance or the New Jersey Small Employer Health Plan Board to discontinue the use of Ingenix to derive Allowed Charges under Small Employer Health Plans or (b) January 1, 2016, any Plan selected by a Mid-size (51-99) Market Subscriber that, as of the date of this Agreement, requires Horizon to use Ingenix to calculate Allowed Amounts for reimbursement of Covered Services or Supplies provided by Out-of Network Providers shall be permitted to continue its use of Ingenix. This permitted exception applies to two health care benefit plan products providing health care benefits to a total of approximately comprised of 20,000 members.

provided by Out-of-Network Providers, including, but not limited to, the applicable reimbursement profile, and general information regarding the method for adjustments when the selected profile requires modification.  Horizon will update its applicable Member Handbooks, marketing materials, and proposals in the same manner and on the same schedule.

       1.4.    Within sixty (60) days of the Effective Date, but not before January 1, 2014, Horizon will update its public website and its member portal to include general information regarding the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers, as well as links to public websites, to the extent available, providing similar information.

    2.    <u>Attorneys' Fees and Costs.</u>

       Class Counsel shall apply to the Court for an award of attorneys' fees and costs for all work performed on behalf of the Class by Class Counsel and the various counsel representing the Class in the McDonough Action and the Helfmann Action, not to exceed the sum of $2,500,000, which application Horizon agrees not to oppose.  Within twenty-one (21) calendar days of entry of the Final Approval Order by the Court, Horizon shall pay the amount awarded, not to exceed the sum of $2,500,000, into an interest bearing escrow account at a financial institution designated by Class Counsel.  The amount held in such account shall not be released to Class Counsel until after the Effective Date.  Class Counsel shall, in his sole discretion, allocate the amount paid, respectively, among the various counsel representing the Class in the McDonough Action and the Helfmann Action.

    3.    <u>Class Representative Payments.</u>

       Class Counsel shall apply to the Court for an award payable to Cathleen McDonough in the McDonough Action in the amount of $20,000, and to the New Jersey

8

Psychological Association in the Helfmann Action in the amount of $15,000, which applications Horizon agrees not to oppose.  Horizon shall pay the amounts awarded by the Court, not to exceed the amounts stated above.  These payments shall be made no later than twenty (20) days after the Effective Date.

    4.        <u>Preliminary Approval.</u>

        4.1     Pursuant to Fed. R. Civ. Pro. 23(e), the Parties shall jointly submit this Agreement to the Court at the Preliminary Approval Hearing requesting the Court's preliminary approval of the Agreement, conditional certification of a settlement class, appointment of Class Counsel, approval of the mailed Notice (as hereinafter defined) and published Notice, and entry of the Preliminary Approval Order staying any activities in the McDonough Action and the Helfmann Action, except for activities related to the approval of this Settlement.  Until the Preliminary Approval Order is entered, the Parties, respectively, covenant and agree that they will not pursue any litigation proceedings against any other Party; and the Parties, respectively, shall not in any way subsequently argue that any other Party has failed to comply with its litigation obligations in any respect by reason of the suspension of litigation following the execution of this Agreement.

        4.2     Other than to effectuate this Agreement, the Parties do not agree to the conditional certification of the Class, the provisional designation of Class Counsel, or the provisional designation of Representative Plaintiffs as representatives of the Class for any purpose.  If this Agreement is terminated pursuant to its terms, or if the Effective Date does not occur for any reason, then the conditional certification of the Class and the provisional designation of Representative Plaintiffs and Class counsel shall be automatically vacated, and the McDonough Action and the Helfmann Action shall proceed as though the Class had never been

9

conditionally certified and as though the provisional designations of Representative Plaintiffs and Class counsel had not been made, without prejudice to Representative Plaintiffs' right to file a motion to certify a class or classes and to seek appointment of class representatives and class counsel, and without prejudice to Horizon's right to assert any and all defenses to class certification, including, but not limited to, the propriety of a class or classes and/or the substantive allegations asserted by Representative Plaintiffs and the putative class or classes. This provision survives termination of this Agreement.

     5.     <u>Notice and Settlement Administration.</u>

     5.1.     The Parties will request that the notice to the Class be disseminated no later than forty-five (45) days after the Preliminary Approval Date. Mailed notice, substantially in the form attached hereto as Exhibit C, will be by U.S. mail. Published notice, substantially in the form attached hereto as Exhibit D, will be one quarter page to one half page, single publication only, in the legal notices section (if applicable) of the following publications: *The Newark Star Ledger*, *The Courier Post*, *The Asbury Park Press* and *USA Today*. Each such notice is subject to any revisions directed by the Court (collectively, the "Notice"). The Notice Date shall be the first date on which the notice is either mailed or published.

     5.2.     Horizon shall pay all costs of the notice program and all other settlement-related costs as ordered by the Court in the Preliminary Approval Order. These costs shall include the mailing costs of the mailed Notice and the publication costs of the published Notice. Horizon shall be responsible for identifying names and last known addresses of putative Class Members for the Notice. Horizon will select the Notice and settlement administrator ("Notice Administrator").

6.     Opt Outs, Objections and Final Approval.

    6.1.     Opt Outs.

The Parties will request that the deadline for requesting exclusion from the Class ("Opt Out") be forty-five (45) days after the Notice Date ("Opt-Out Deadline").  Putative Class Members have the right to exclude themselves or "Opt Out" from this Settlement and from the Class by timely submitting a request to Opt Out in accordance with the Opt Out procedure approved by the Court.  Putative Class Members who properly request to Opt Out shall be excluded from this Settlement and from the Class.  Within ten (10) days after the Opt Out Deadline, the Notice Administrator shall furnish the Parties with a complete list of all proper Opt Out requests.  Any Putative Class Member who does not properly request to Opt Out shall be deemed a Class Member and shall be bound by the terms of this Agreement and the Final Order and Judgment.  Any Putative Class Member who timely submits a request to Opt Out shall have until the Final Approval Hearing Date to deliver to Class Counsel a written revocation of such request to Opt Out.  Class Counsel shall timely apprise the Court of such revocations.

    6.2.     Objections.

Class members shall have until forty-five (45) days after the Notice Date ("Objection Deadline") to file, in the manner specified in the Notice, any written objection or other response to this Agreement.

    6.3.     Final Approval Hearing.

The Parties will request that the Final Approval Hearing Date be no later than ninety (90) days after the Notice Date.  The Parties will cooperate to prepare for the Final Approval Hearing.

11

*NJ 227819761v7*

7.    <u>Release, Covenant Not To Sue, Bar Order and Dismissal with Prejudice.</u>

 7.1. Release.

 (a) Upon the entry of the Final Order and Judgment, for good and valuable consideration received from Horizon, the receipt and sufficiency of which are hereby acknowledged, the Representative Plaintiffs and all Class Members who do not opt out of this Agreement pursuant to Section 6.1, including their respective current and former officers, directors, employees, attorneys, heirs, executors, administrators, agents, legal representatives, professional corporations, partnerships, members, assigns and successors, but only to the extent their claims are derived from the claims of the Representative Plaintiffs and/or the Class Members (collectively, the "Releasing Parties"), shall forever unconditionally, fully, and finally release, abandon and discharge all claims, including any and all claims, rights, and liabilities of any nature, including but not limited to, actions, claims, demands, causes of action, obligations, damages, debts, charges, attorneys' fees, costs, arbitrations, forfeitures, judgments, indebtedness, liens and losses of any whatever kind, source or character whether arising out of federal or state law, whether known, suspected to exist or unknown, whether asserted or unasserted, whether asserted by any Releasing Party on its own behalf or on behalf of any other person or entity, arising on or before the Effective Date, whether in contract, express or implied, tort, at law or in equity or arising under or by virtue of any statute or regulation, by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the McDonough Action or the Helfmann Action, or addressed in this Agreement ("Claim"), whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons (the "Released Claims"), against Horizon and any of its former, present,

12

and future assigns, predecessors, successors, affiliates, parent companies subsidiaries, controlled companies, employees, officers, directors, principals, agents (collectively, the "Released Parties").

(b) The Releasing Parties are aware that they may, after the date of this Agreement, discover claims or facts in addition to or different from those they now know or believe to be true with respect to the Released Claims. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all Released Claims, including those that are presently unknown or unanticipated, and each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the entry of the Final Order and Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of this Section 7, whether or not concealed or hidden, without regard to the discovery or existence of such different or additional facts. All Releasing Parties and Class Members who do not opt-out of this Agreement waive any and all provisions, rights, and benefits conferred by California Civil Code § 1542, or by any law of any state or territory of the Untied States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLMENT WITH THE DEBTOR.

(c) Ambulatory Surgical Centers are excluded from the Class, excluded from the definition of Releasing Parties, and release no claims pursuant to this Agreement. This exclusion applies to all ASC claims, whether asserted directly by the ASC or by virtue of an assignment by the patient.

NJ 227819761v7

7.2.    No Assignment and Covenant Not To Sue.

(a)   Each of the Releasing Parties either (i) represents and warrants that he or she has not

provided an assignment for any Released Claims, or (ii) to the extent permitted by

law, hereby revokes any such assignment of any Released Claim provided prior to the

execution of this Agreement; provided, however, that this provision shall not apply to

any claims that have been asserted as of the date of this Agreement in *Edwards v.*

*Horizon Blue Cross Blue Shield of New Jersey,* Civil Action No. 08-cv-6160.  The

Parties reserve their rights with respect to all such claims.

(b)   Each of the Releasing Parties agrees and covenants not to sue or cooperate in the

filing or prosecution of any suit or proceeding, in any forum based upon or related to

any Released Claims against any Released Party; and

(c)   Notwithstanding any other provision of this Agreement, nothing in this Agreement

shall limit or preclude the Releasing Parties' rights to enforce any provision of this

Agreement.

7.3.    Bar Order.

The Parties intend that this Agreement eliminate all further risk and liability of the

Released Parties relating to the Released Claims, and accordingly agree that the Court shall

include in the Final Approval Order a Bar Order Provision as follows:

> The Releasing Parties are permanently enjoined from:  (i) filing,
> commencing, prosecuting, intervening in, participating in or receiving any
> benefits from any lawsuit, arbitration, administrative or regulatory
> proceeding or order in any jurisdiction based on any or all Released
> Claims against one or more Released Parties; (ii) instituting, organizing
> class members in, joining with class members in, amending a pleading in
> or soliciting the participation of class members in, any action or
> arbitration, including but not limited to a purported class action, in any
> jurisdiction against one or more Released Parties based on, involving, or
> incorporating, directly or indirectly, any or all Released Claims; and (iii)

14

filing, commencing, prosecuting, intervening in, participating in or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that an action of the Released Parties, which is in compliance with the provisions of the Agreement, violates any right of any Class Member.

All Persons who are, have been, could be, or could have been alleged to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with any or all of the Released Parties respecting any or all of the Released Claims, are hereby, to the maximum extent permitted by law, barred and permanently enjoined from making, instituting, commencing, prosecuting, participating in or continuing any claim, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against any or all of the Released Parties with respect to any or all of the Released Claims, including without limitation equitable, partial, comparative, or complete contribution, set-off, indemnity, or otherwise, whether by contract, common law or statute, arising out of or relating in any way to the Released Claims. All such claims are hereby fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against any Released Party. Any judgment or award obtained by a Class Member against any such Person shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve any Released Party of all liability to such Person on such barred claims. Such judgment reduction, partial or complete release, settlement credit, relief, or setoff, if any, shall be in an amount or percentage sufficient under applicable law as determined by the Court to compensate such Person for the loss of any such barred claims against any Released Party. Where the claims of a Person who is, has been, could be, or could have been alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator or co-obligor with a Released Party respecting the Released Claims have been barred and permanently enjoined by this section, the claims of Released Parties against that Person respecting those Released Claims are similarly fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law.

     7.4.   Dismissals.

The Releasing Parties shall dismiss with prejudice the McDonough Action and the

Helfmann Action as to Released Parties within five (5) business days of the Effective Date. It is

the Parties' intention that such dismissal shall constitute a final judgment of the Releasing

15

Parties' claims against the Released Parties on the merits to which the principles of *res judicata* shall apply to the fullest extent of the law as to the Released Parties.

   7.5   Irreparable Harm

The Parties agree that Horizon shall suffer irreparable harm if a Releasing Party takes action inconsistent with this Section 7 and that in that event, Horizon may seek an injunction from the court as to such action without a further showing of irreparable harm and without the need to post any bond (or, if a bond is required by controlling law, without the need to post anything more than a nominal bond).

   8.   <u>Right to Terminate this Agreement.</u>

   8.1.   If the Court does not enter the Preliminary Approval Order and approve the Notice, as provided in this Agreement, Horizon may in its sole and absolute discretion terminate its participation in this Agreement by delivering a notice of termination to the other Parties within forty-five (45) days following the Preliminary Approval Hearing.

   8.2.   If the number of putative members of the Subscriber Sub-class submitting Opt-Out requests exceeds five percent (5%) of the total number of putative members of the Subscriber Sub-class or the number of putative members of the Provider Sub-class submitting Opt-Out requests exceeds five percent (5%) of the total number of putative members of the Provider Sub-class, Horizon may in its sole and absolute discretion terminate its participation in this Agreement by delivering a notice of termination to the other Parties within thirty (30) days of receipt of the complete list of Opt-Out requests from the Notice Administrator.

   8.3.   If the Court has not entered the Final Order and Judgment by one hundred eighty (180) days after the Preliminary Approval Date, Horizon, in its sole and absolute

discretion, may terminate its participation in this Agreement by delivering a notice of termination to the other Parties within two hundred (200) days after the Preliminary Approval Date.

        8.4    If the Final Order and Judgment is set aside or reversed, in whole or in part, for any reason, then at such time as the time for any appeal from the final order of set aside or reversal has elapsed with no notice of appeal having been filed, any fees paid by Horizon pursuant to Sections 2 and 3 hereof, including interest accumulated, shall be returned to Horizon.

        9.      Effective Date of Agreement.

    If the Final Order and Judgment is entered by the Court and the time for appeal has elapsed with no notice of appeal having been filed, the "Effective Date" shall be the next business day after the last date on which notice of appeal could have been timely filed.

    If the Final Order and Judgment is entered and an appeal is filed, the "Effective Date" shall be the next business day after the Final Order and Judgment is affirmed, all appeals are dismissed, and no further appeal to, or discretionary review in, any Court remains.

    Notwithstanding the foregoing, at any time after the Final Order and Judgment is entered by the Court, Horizon may in its sole and absolute discretion jointly elect to declare an Effective Date by providing written notice to the Parties, and thereafter all Parties shall be bound by this Agreement.

        10.    Termination Date of Agreement.

    The Termination Date of this Agreement shall be the earliest to occur of (i) a Party's termination of this Agreement pursuant to Section 8 above, or (ii) the Final Order and Judgment is not affirmed on any appeal or discretionary review, and no further appeal to, or discretionary review in, any Court remains. As of the Termination Date, the provisions of this Agreement

shall immediately become void and of no further force and effect, and there shall be no liability under this Agreement on the part of any of the Parties.

11. Force Majeure

The Parties shall not be liable for any delay or non-performance of their obligations under this Agreement arising from any act of God, governmental act, act of terrorism, war, fire, flood earthquake, explosion, or civil commotion. The performance of the parties' obligations under this Agreement, to the extent affected by such delay, shall be suspended for the period during which the cause, or the Parties' substantial inability to perform arising from the cause, persists.

12. Entire Agreement.

This Agreement contains an entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties; it is not subject to any condition not provided for herein. This Agreement supersedes any prior agreements or understandings, whether written or oral, between and among the Parties regarding the McDonough Action or the Helfmann Action, or this Agreement. This Agreement shall not be modified in any respect except by a writing executed by Class Counsel and Horizon.

13. No Presumption Against Drafter.

This Agreement was drafted with substantial input by all Parties and their counsel, and no reliance was placed on any representations other than those contained herein. The Parties agree that this Agreement shall be construed by its own terms, and not by referring to, or considering, the terms of any other settlement, and not by any presumption against the drafter.

14. Captions and Headings.

The use of captions and headings in this Agreement is solely for convenience and shall have no legal effect.

18

15.     Continuing Jurisdiction and Exclusive Venue.

Except as otherwise provided in this Agreement, it is expressly agreed and stipulated that the United States District Court, District of New Jersey shall have exclusive jurisdiction and authority to consider, rule upon, and issue a final order with respect to suits, whether judicial, administrative or otherwise, which may be instituted by any person, individually or derivatively, with respect to this Agreement.

Except as otherwise provided in this Agreement, each Class Member hereby irrevocably submits to the exclusive jurisdiction and venue of the United States District Court, District of New Jersey for any suit, action, proceeding, case, controversy, or dispute relating to this Agreement and agrees not to assert by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is in any way an improper venue or an inconvenient forum. Furthermore, the Parties shall jointly request the Court to include the provisions of this Section in the order finally approving this Agreement.

16.     Counterparts.

This Agreement may be executed in counterparts, each of which shall constitute an original. Facsimile signatures shall be considered valid signatures as of the date thereof, although the original signature pages shall thereafter be appended to this Agreement.

17.     Successor and Assigns.

The provisions of this Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the Representative Plaintiffs, Class Members, Class Counsel and Horizon.

18.   Governing Law.

This Agreement and all agreements, exhibits, and documents relating to this Agreement shall be construed under the laws of the State of New Jersey, except that federal law shall apply to fee applications made pursuant to this Agreement.

19.   Severable Agreement.

The provisions of this Agreement are intended to be severable.  Should any provision be found illegal, invalid or unenforceable by any court of competent jurisdiction for any reason, it shall be severable from the remainder of this Agreement, and the remainder of this Agreement shall be unchanged and shall be read as if it did not contain the illegal invalid provision, except that if the release in Section 7 is deemed invalid then Horizon shall have the option to void the remainder of this Agreement.

20.   No Admission of Liability.

The Parties agree that this Agreement, in whole or in part, whether effective, terminated, or otherwise, or any of its provisions or any negotiations, statements, or proceedings relating to it in any way, shall not be construed as an admission of liability or wrongdoing or breach of any duty on the part of Horizon.  This Agreement shall not be admissible as evidence of any kind in any proceeding except an action to enforce the terms of the Agreement.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements or proceeding shall be construed as, offered as, received as, used as or deemed to be evidence of any waiver of any applicable defense or protection by Horizon.  The Parties agree that this Section 20 shall survive the termination of this Agreement.

21.    Joint Statement.

The Parties agree to draft a joint statement for communicating with the media and general

public concerning this Agreement and the underlying litigation, and agree to limit their

communications to the substance of the joint statement.

22.    Acknowledgment.

By the signature affixed hereto, each Party acknowledges that it, he, or she has read this

Agreement, fully understands the agreements, representations, covenants, obligations,

conditions, warranties, releases, and terms contained herein, and has had the advice of counsel

pertaining thereto, prior to the time of execution.

23.    Authority.

Each Person signing this Agreement on behalf of a Party represents and warrants that he

or she has all requisite power and authority to enter into this Agreement and to implement the

transactions contemplated herein, and is duly authorized to execute this Agreement on behalf of

that Party.

24.    Notice to Parties.

All notices to the Parties required under this Agreement shall be sent by Certified Mail,

return receipt requested, or by hand delivery to the recipients designated below (or to later

designated recipients).  All notices shall be measured by the date of mailing.

| Class Counsel: | Bruce H. Nagel |
| | Nagel Rice, LLP |
| | 103 Eisenhower Parkway |
| | Roseland, NJ 07068 |
| | |
| CC: | Bruce D. Greenberg |
| | Lite DePalma Greenberg, LLC |
| | Two Gateway Center, 12th Floor |
| | Newark, NJ 07102 |

21

Horizon:                          Philip R. Sellinger/David Jay
                                  Greenberg Traurig, LLP
                                  200 Park Avenue
                                  P.O. Box 677
                                  Florham Park, NJ  07932-0677


                                  HORIZON BLUE CROSS BLUE SHIELD OF
                                  NEW JERSEY

                                  By: _____
                                       David R. Huber

                                       In his Capacity as Senior Vice President,
                                       Chief Financial Officer and Treasurer


                                  NAGEL RICE, LLP

                                  By: _____


                                  CATHLEEN MCDONOUGH,
                                  Class Representative

                                  By: _____


                                  BARRY HELFMANN, PSY.D.,
                                  Class Representative

                                  By: _____


                                  NEW JERSEY PSYCHOLOGICAL ASSOCIATION,
                                  Class Representative


                                  By: _____


                                        22

Horizon:
Philip R. Sellinger/David Jay
Greenberg Traurig, LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677

HORIZON BLUE CROSS BLUE SHIELD OF
NEW JERSEY

By: _____

NAGEL RICE, LLP

By: _____

CATHLEEN MCDONOUGH,
Class Representative

By: _Cathleen C. McDonough_ 10/7/13

BARRY HELFMANN, PSY.D.,
Class Representative

By: _____

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION,
Class Representative

By: _____

22



NEW JERSEY

By: _____

NAGEL RICE, LLP

By: _____

CATHLEEN MCDONOUGH,
Class Representative

By: _____

BARRY HELFMANN, PSY.D.,
Class Representative

By: _____

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION,
Class Representative

By: _____

22

# EXHIBIT
# A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CATHLEEN MCDONOUGH,

        Plaintiff,

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION and BARRY
HELFMANN, PSY.D., individually and
on behalf of all other similarly situated
individuals,

        Consolidated
        Plaintiffs,

v.

HORIZON HEALTHCARE
SERVICES, INC. d/b/a BLUE CROSS
BLUE SHIELD OF NEW JERSEY,
INC.,

        Defendant.

CIVIL ACTION NO. 09-
00571(SRC)(PS)

**ORDER PRELIMINARILY
CERTIFYING SETTLEMENT
CLASSES, GRANTING
PRELIMINARY APPROVAL OF
SETTLEMENT, AND APPROVING
CLASS NOTICE**

THIS MATTER having been opened to the Court by Class Counsel, on behalf of Cathleen McDonough, Barry Helfmann, Psy.D. and the New Jersey Psychological Association (the "Representative Plaintiffs") and by Counsel for Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"), by way of their joint motion for preliminary approval of the proposed settlement in the above Actions;

WHEREAS, the Court having reviewed and considered the joint motion for preliminary approval and supporting materials filed by Class Counsel and Horizon's Counsel, and having also reviewed the extensive court file in these Actions; and

WHEREAS, this Court has fully considered the record and the requirements of law; and good cause appearing;

IT IS ON THIS ___ day of_____, 201_

ORDERED that the settlement (including all terms of the Settlement Agreement and Release, dated ___, between Representative Plaintiffs and Horizon, and exhibits thereto) (the "Agreement") is hereby PRELIMINARILY APPROVED.

The Court further finds and orders as follows[1]:

1.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and venue is proper in this district.

2.      The Court has personal jurisdiction over the Representative Plaintiffs, Class Members, and Horizon.

3.      The Agreement falls well within the range of reason.  The Agreement has no obvious deficiencies.  The Agreement does not unreasonably favor the

---

[1] To the extent not otherwise defined herein, all defined terms in this Order shall have the meaning assigned in the Agreement.

Representative Plaintiffs or any segment of the Subscriber Sub-class or the Provider Sub-class.

4.     Because the Agreement meets the standards for preliminary approval, the Court preliminarily approves all terms of the Agreement and all of its exhibits.

5.     The Court finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied.  The Court certifies two sub-classes, as follows:

a)     a sub-class comprised of all persons enrolled in a health benefits plan ("Plan") issued by Horizon ("Horizon Subscribers") during the period from February 9, 2003 to the date of this Order (the "Class Period") that included an out-of-network benefit ("Subscriber Sub-class"), and

b)     a sub-class comprised of all Out-of-Network Health Care Providers who are not licensed medical doctors or doctors of osteopathy and who provided Covered Services or Supplies (as defined in the Agreement) during the Class Period to Horizon Subscribers whose Plans included an out-of-network benefit and were paid less than their billed amount for these Covered Services or Supplies ("Provider Sub-class").  (The Subscriber Sub-Class and the Provider Sub-Class are referred to collectively hereafter as the "Class").

*NJ 227831404v4*

The Class expressly excludes all Horizon Subscribers who are solely Medicaid members, Medicare members, Medicare Advantage or Federal Employee Health Benefit Plan members. The Class also excludes Ambulatory Surgical Centers. Also, excluded from the Class are Horizon and its affiliates, assignees, and successors-in-interest, and their officers, directors, and employees; any Judge who presides or has presided over this litigation and/or its constituent actions, together with his/her immediate family members and any other individual residing in the Judge's household; individuals and entities that opt out of the settlement in accordance with the procedures approved by this Court; and the United States and/or State governments and their agencies and departments.

6.  The Court conditionally certifies the proposed Class, and finds that the requirements of Rule 23(a) are satisfied, for settlement purposes only, as follows:

a)  Pursuant to Fed. R. Civ. P. 23(a)(l), the members of the Class are so numerous that joinder of all members is impracticable.

b)  Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(l)(B), the Court determines that there are common issues of law and fact for the Class as follows:

1)  Whether Horizon's use of the Ingenix database, TOR, or its other challenged reimbursement practices with respect to out-of-

4

network services and supplies resulted in artificially reduced payments to members of the Class; and

  2) Whether Horizon's use of the Ingenix database, TOR, or its other challenged reimbursement practices with respect to out-of-network services and supplies violated ERISA.

c) Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the Representative Plaintiffs are typical of the claims of the respective Sub-classes that they represent in that the Representative Plaintiffs allege that they were under-reimbursed or underpaid for out-of-network services and supplies because of Horizon's use of Ingenix, TOR, and other challenged reimbursement practices.

  1) The Court hereby appoints the following Representative Plaintiff as Class Representative for the Subscriber Sub-class: Cathleen McDonough;

  2) The Court hereby appoints the following Representative Plaintiffs as Class Representatives for the Provider Sub-class: Barry Helfmann, Psy.D. and the New Jersey Psychological Association.

d) Pursuant to Fed. R. Civ. P. 23(a)(4), the Representative Plaintiffs will fairly and adequately protect and represent the interests of all members of the Class, and the interests of the Representative Plaintiffs are

NJ 227831404v4

not antagonistic to those of the Class.   Furthermore, the Representative Plaintiffs are represented by counsel who is experienced and competent in the prosecution of complex class action litigation.

7.     The Court further finds, for settlement purposes only, that the requirements of Rule 23(b)(3) are satisfied, as follows:

a)     Questions of law and fact common to the members of the Class, as described above, predominate over questions that may affect only individual members; and

b)     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

8.     The Court finds that the content of the mailed Notice, attached as Exhibit C to the Agreement, and the published Notice, attached as Exhibit D to the Agreement, satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(1) and due process, and accordingly approves each such Notice.

9.     This Court further approves the proposed methods for giving notice of the settlement to Class Members, as reflected in the Agreement and the joint motion for preliminary approval.   The Court has reviewed the notices attached as exhibits to the Agreement, and the notice procedures, and finds that the Class Members will receive the best notice practicable under the circumstances.   The Court specifically approves the Parties' proposal to use reasonable diligence to

6

identify potential class members and an associated address in Horizon's records, and their proposal to direct the Notice Administrator to use this information to mail absent class members notice via first class mail. The Court also orders payment of notice costs as provided in the Agreement. The Court finds that these procedures, carried out with reasonable diligence, will constitute the best notice practicable under the circumstances and will satisfy the requirements of Fed. R. Civ. P. 23(c)(2), Fed. R. Civ. P. 23(e)(l), and due process.

10.     The Court hereby appoints Bruce H. Nagel of the law firm Nagel Rice as Class Counsel pursuant to Rule 23(g) and preliminarily finds that he fairly and adequately represent the interests of the Class.

11.     The Court directs that pursuant to Fed. R. Civ. P. 23(e)(2) a hearing will be held on _____, to consider final approval of the Agreement (the "Final Approval Hearing" or "Fairness Hearing") including, but not limited to, the following issues:  (a) whether the Subscriber Sub-class and Provider Sub-class should be certified, for settlement purposes only; (b) the fairness, reasonableness, and adequacy of the settlement; (c) Class Counsel's application for an award of attorneys' fees and costs; and (d) approval of an award of service payments to the Representative Plaintiffs. The Final Approval Hearing may be adjourned by the Court and the Court may address the matters set out above, including final approval of the Agreement, without further notice to the Class other than notice

7

that may be posted at the Court and on the Court's and Claims Administrator's websites.

12.    Persons wishing to object to the proposed Settlement and/or be heard at the Fairness Hearing shall follow the following procedures:

a)    To object, a member of the Class, individually or through counsel, must, by _____, serve and file with the Clerk, a notice of Intent to Object, which includes:  (i) the name, address and telephone number of the Class Member and, if applicable, the name, address and telephone number of the Class Member's attorney (who must file a Notice of Appearance); (ii) the objection, including any papers in support thereof; and (iii) the name and address of any witnesses to be presented at the Fairness Hearing, together with a statement as to the matters on which they wish to testify and a summary of the proposed testimony, and must also simultaneously serve a copy thereof upon the following,

1)    Class Counsel

Bruce H. Nagel
Nagel Rice LLP
103 Eisenhower Parkway
Suite 103
Roseland, New Jersey 07068

8

with a copy to:

> Bruce D. Greenberg
> Lite De Palma Greenberg, LLC
> Two Gateway Center, 12th Floor
> Newark, New Jersey 07102

2)   Horizon's Counsel

> Philip R. Sellinger
> David Jay
> Greenberg Traurig, LLP
> 200 Park Avenue
> P.O. Box 677
> Florham Park, New Jersey 07932

b)      Any member of the Class who files and serves a written objection by the deadline stated in subsection (a) of this Paragraph 12 may also appear at the Fairness Hearing, to the extent permitted by the Court, either in person or through an attorney hired at that Class member's expense, to object to the fairness, reasonableness or adequacy of the proposed settlement.  Any attorney representing a member of the Class for the purpose of making objections must also file a Notice of Appearance with the Clerk, and must also serve copies by mail to the counsel listed above.

c)      Any member of the Class who does not timely file and serve a Notice of Intent to Object, and any witness not identified in the Notice of Intent to Object, shall not be permitted to appear at the Fairness hearing, except for good cause shown.

9

13.     The Court hereby directs the Parties to petition this Court for appointment of a Notice Administrator within 14 days of the entry of this Order.

14.     Members of the Class who elect not to participate in the settlement ("Opt-Outs") must submit a written request for exclusion that is postmarked no later than _____, 201_. The Notice Administrator shall compile a list of all Opt-Outs to be filed with the Court no later than the Fairness Hearing.

15.     Any member of the Class failing to properly and timely mail such a written notice of exclusion shall be automatically included in one of the Sub-Classes and shall be bound by all the terms and provisions of the Agreement and the settlement, including the release, and Order of Final Judgment. The Court shall resolve any disputes concerning the Opt-Out provisions of Agreement.

16.     The following are the deadlines for the following events:

| EVENT | DATE |
| --- | --- |
| Notice of Class Action Settlement Mailed and Posted on Internet | |
| Notice of Class Action Settlement Published in National and Local Media | |
| Postmark/Filing Deadline for Requests for Exclusions, and Objections | |
| Service/Filing Notice of Appearance at Fairness Hearing | |
| Affidavit of Compliance with Notice Requirements and Report of Exclusions | |

10

and Objections

Filing Motion for Final Approval,
Attorney Fees, Reimbursement of
Expenses, and Service Awards To be
Filed by Class Counsel

Fairness Hearing

17.     In the event that the settlement does not become effective for any

reason, this Preliminary Approval Order and Judgment shall be rendered null and

shall be vacated, and all orders entered in connection herewith shall be null and

void to the extent provided by and in accordance with the Agreement.   If the

settlement does not become effective, Horizon and any other Released Persons (as

defined in the Agreement) shall have retained any and all of their current defenses

and arguments thereto (including but not limited to arguments that the

requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of

continued litigation).   These Actions shall thereupon revert immediately to their

respective procedural and substantive status prior to the date of execution of the

Agreement and shall proceed as if the Agreement and all other related orders and

papers had not been executed.

18.     Nothing in this Preliminary Approval Order and Judgment, the

Agreement, or any documents or statements related thereto, is or shall be deemed

or construed to be an admission or evidence of any violation of any statute or law

or of any liability or wrongdoing by Horizon, or an admission of the propriety of

11

class certification for any purposes other than for purposes of the current proposed settlement and Agreement.

19.    All other proceedings in the Actions are hereby stayed until such time as the Court renders a final decision regarding approval of the proposed settlement. No discovery with regard to any of these Actions, or with respect to this settlement, shall be permitted other than as may be directed by the Court upon a proper showing by the party seeking such discovery by motion properly noticed and served in accordance with this Court's Local Rules.  In addition, pending a determination on final approval of the settlement, all Class Members are hereby barred and enjoined from commencing or prosecuting any action involving any Released Claims (as defined in the Agreement).

20.    The Court shall retain continuing jurisdiction over the Actions, the Parties and the Class, and the administration, enforcement, and interpretation of the Agreement.  Any disputes or controversies arising with respect to the Agreement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall interfere with the Parties' rights under Paragraphs 17 and 19 of this Order.

 

 

STANLEY R. CHESLER, U.S.D.J.

# EXHIBIT
# B

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CATHLEEN MCDONOUGH,

            Plaintiff,

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION and BARRY
HELFMANN, PSY.D., individually and
on behalf of all other similarly situated
individuals,

            Consolidated
            Plaintiffs,

v.

HORIZON HEALTHCARE
SERVICES, INC. d/b/a BLUE CROSS
BLUE SHIELD OF NEW JERSEY,
INC.,

            Defendant.

CIVIL ACTION NO. 09-00571(SRC)(PS)

**FINAL APPROVAL ORDER**

THIS MATTER having been opened to the Court by Bruce Nagel, Nagel Rice, LLP, Class Counsel on behalf of Cathleen McDonough, Barry Helfmann, Psy.D., and the New Jersey Psychological Association (the "Representative Plaintiffs") and by Philip R. Sellinger and David Jay, Greenberg Traurig, LLP, counsel for Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), by way of their joint motion for final approval of the proposed settlement in the above Actions;

WHEREAS, this Court having previously entered an order preliminarily certifying the proposed Class and approving the proposed settlement, and ordering that notices be sent to the Class in accordance with the terms of the settlement and this Court's preliminary approval order dated _____;

WHEREAS, the Court having reviewed and considered all submissions relating to the settlement, including the joint motion for final approval and supporting materials filed by Class Counsel and Horizon's Counsel, as well as all filings by other persons regarding the proposed settlement, and having also reviewed the extensive Court file in the Actions; and

WHEREAS, this Court has fully considered the record and the requirements of law; and good cause appearing;

IT IS ON THIS ___ day of _____ 201_, ORDERED that the settlement (including all terms of the Agreement and exhibits thereto) is hereby APPROVED as fair, reasonable, and adequate.  The Court further finds and orders as follows. [1]

1.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331, and venue is proper in this district.

2.     The Court has personal jurisdiction over the Representative Plaintiffs, Class Members, and Horizon.

---

[1] All capitalized terms not defined herein will have the meanings ascribed to them in the Settlement Agreement among the Parties (the "Agreement").

2

3.      This Court previously reviewed and approved the proposed methods for giving notice of the settlement to Class Members.   The Court has again reviewed the notice procedures and finds that Class Members received the best notice practicable under the circumstances.   The Court specifically finds that the mailed Notice attached as Exhibit C to the Agreement and the published Notice attached as Exhibit D to the Agreement, satisfied the requirements of Rule 23(c)(2), Rule 23(e)(l), and due process.

4.      The Court finds, for settlement purposes only, that all requirements of Fed. R. Civ. P. 23(a) and (b)(3) have been satisfied.   The Court certifies two sub-classes, as follows:

(a)      a sub-class comprised of all persons enrolled in a health benefits plan ("Plan") issued by Horizon  ("Horizon Subscribers") during the period from February 9, 2003 to the date of the Preliminary Order (the "Class Period") that included an out-of-network benefit ("Subscriber Sub-class"), and

(b)      a sub-class comprised of all Out-of-Network Health Care Providers who are not licensed medical doctors or doctors of osteopathy and who provided Covered Services or Supplies during the Class Period to Horizon Subscribers whose Plans included an out-of-network benefit and were paid less than their billed amount for these Covered Services or

3

Supplies ("Provider Sub-class"). (The Subscriber Sub-class and the Provider Sub-class are referred to collectively hereafter as the "Class").

The Class expressly excludes all Horizon Subscribers who are solely Medicaid members, Medicare members, Medicare Advantage and Federal Employee Health Benefit Plan members. The Class also excludes Ambulatory Surgical Centers. Also, excluded from the Settlement Classes are Horizon and its affiliates, assignees, and successors-in-interest, and their officers, directors, and employees; any Judge who presides or has presided over this litigation and/or its constituent actions, together with his/her immediate family members and any other individual residing in the Judge's household; individuals and entities that opted-out of the settlement in accordance with the procedures approved by this Court; and the United States and/or State governments and their agencies and departments.

5.      The Court finds that the requirements of Rule 23(a) are satisfied for settlement purposes only, as follows:

(a)      Pursuant to Fed. R. Civ. P. 23(a)(1), the members of the Classes are so numerous that joinder of all members is impracticable.

(b)      Pursuant to Fed. R. Civ. P. 23(a)(2) and 23(c)(1)(B), the Court determines that there are common issues of law and fact for the Class as follows:

1)      Whether Horizon's use of the Ingenix databases, TOR, or its other challenged reimbursement practices with respect to out-of-network services and supplies resulted in artificially reduced payments to Class Members; and

2)      Whether Horizon's use of the Ingenix databases, TOR, or its other challenged reimbursement practices with respect to out-of-network services and supplies violated ERISA.

(c)     Pursuant to Fed. R. Civ. P. 23(a)(3), the claims of the Representative Plaintiffs are typical of the claims of the respective Sub-classes that they represent in that the Representative Plaintiffs allege that they were under-reimbursed or underpaid for out-of-network services and supplies because of Horizon's use of Ingenix, TOR, and other challenged reimbursement practices.

(d)     Pursuant to Fed. R. Civ. P. 23(a)(4), the Representative Plaintiffs will fairly and adequately protect and represent the interests of all Class Members, and the interests of the Representative Plaintiffs are not antagonistic to those of the Class.   The Representative Plaintiffs are represented by counsel who are experienced and competent in the prosecution of complex class action litigation.

6.     The Court further finds that the requirements of Rule 23(b)(3) are satisfied for settlement purposes only, as follows:

(a)     Questions of law and fact common to the Class Members, as described above predominate over questions that may affect only individual members; and

(b)     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

7.     The Court appoints Catherine McDonough as class representative of the Subscriber Sub-class.

8.     The Court appoints Barry Helfmann, Psy.D and the New Jersey Psychological Association as class representatives of the Provider Sub-class.

9.     The Court hereby appoints Bruce Nagel, Nagel Rice, LLP as Class Counsel for both Sub-classes pursuant to Rule 23(g).  In making this appointment, the Court finds that Mr. Nagel can, has and will fairly and adequately represent the interests of the putative Class Members.

10.     A list of those Class Members who have timely opted out of the Settlement and who therefore are not bound by the Agreement has been submitted to the Court as Exhibit _____ to _____.  That list is incorporated by reference herein.  All other Class Members and Class Representatives are subject to all

6

provisions of the settlement and this Court's orders approving and entering the settlement.

11.    The Court has assessed the settlement under the nine factors identified in Third Circuit precedent. *See Girsh v. Jepson*, 521 F.2d 1 53, 157 (3d Cir. 1975); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257-58 (3d Cir. 2009). It has also examined the additional factors identified in *In re Prudential Insurance Co. of America Sales Practices Litigation*, 148 F.3d 283, 323 (3d Cir. 1998). The Court finds that each *Girsh* factor, and each applicable *Prudential* factor, supports approval of the Settlement.

(a)    The complexity, expense, and likely duration of the litigation. This case presents complex factual and legal questions - including complex economic theories and damages calculations - that, absent settlement, would have to be resolved through extensive proceedings for which the outcome is uncertain, including contested class certification proceedings involving experts and an extensive factual record, *Daubert* challenges, summary judgment briefing, and a complicated, lengthy trial of any claims that survive summary judgment. An appeal would almost certainly follow any ruling on class certification, summary judgment, and/or trial, whatever its outcome, thereby further delaying this case's final resolution for a period of months or even years.

(b)      The reaction of the class to the settlement. [i.e., percentage of opt outs]

(c)      The stage of the proceedings and the amount of discovery completed.  In the several years that these Actions have been pending, there has been extensive discovery.  Discovery has included numerous depositions of fact witnesses, reports from multiple experts, and production of numerous documents and large amounts of data.  These proceedings represent years of sustained advocacy by counsel, which gave them a proper understanding of the case's merits before they negotiated the settlement.

(d)      The risks of establishing liability and the risks of establishing damages.  Although Plaintiffs have sought damages, Horizon vigorously disputed both their methods for determining and their calculations of their alleged damages.  Plaintiffs' ability to establish both liability and damages hinges in large part on expert testimony, which is admissible only if it meets the requirements of the Federal Rules of Evidence and *Daubert*.  Horizon's experts have submitted reports disputing the opinions and methods of Plaintiffs' experts.  Accordingly, without a settlement, the Court must resolve a "battle of the experts" that could result in exclusion of the principal evidence supporting the Plaintiffs' claims.  Plaintiffs also face other challenges in establishing liability or proving damages, such as Horizon's

8

argument that it did not under-reimburse anyone for any reason, each Plaintiff needs to prove payment of a Balance Bill, issues regarding Assignments to providers, the exhaustion requirement, and other disputes about individualized injury and application of particular plan terms. These factors make Plaintiffs' likelihood of success far from certain and favor settlement.

(e) <u>The risks of maintaining class action status through trial</u>. If this Court certified a class or classes under Rules 23(a) and (b) and the case proceeded to trial, the Court would still retain the authority to decertify or modify the class (or classes) during trial if they became unmanageable or class certification was otherwise found to be inappropriate. Here, Defendants have indicated that they would preserve their objections to class certification and would contest certification if the case proceeded to trial, raising the possibility that the complex facts here could lead the Court to modify or decertify the class (or classes). This factor therefore weighs in favor of approving the settlement.

(f) <u>The ability of the Defendant to withstand a greater judgment</u>. The Third Circuit has explained that the mere fact that a Defendant "could afford to pay more" in a judgment than it agrees to pay in a settlement "does not mean that [Defendant is] obligated to pay any more than what [the] class

members are entitled to under the theory of liability that existed at the time the settlement was reached." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). This settlement represents a fair, reasonable, and adequate payment under the Class Members' theories of liability.

(g)     The reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks of litigation. Reference points for this analysis include estimates of the recoverable damages submitted by the parties' experts, *see id.*, and the relief sought in the complaint. *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Utig.*, 55 F.3d 768, 810 (3d Cir. 1995), *cert. denied sub nom., Gen. Motors Corp. v. French*, 516 U.S. 824 (1995). Here, Plaintiffs' experts estimated millions of dollars in potential damages and Horizon's experts have numerous challenges to the appropriateness of any class damages calculation in this case. There is a significant risk that no class would be certified, as this Court has denied class certification in a similar proceeding, *Franco v. Connecticut General Life Insurance Co.*, 289 F.R.D. 121 (D.N.J. 2013). The business reforms contemplated by this settlement represent a substantial recovery, in light of Horizon's challenges to Plaintiffs' calculations and methodologies, upon which Plaintiffs' theory of liability is predicated.

10

(h)    Applicable Prudential factors.   The Third Circuit has also instructed district courts to consider, "when appropriate," other factors. *See* 148 F.3d at 323.  The *Prudential* factors applicable here also support finally approving the Agreement.  The matters at issue here have been adjudicated in other actions and establish that the settlement represents an appropriate "assessment of the probable outcome of a trial on the merits of liability and individual damages." *Id.*  The Agreement also gave members of the Class "the right to opt out of the settlement." *Id.*  The Settlement Agreement's "provisions for attorneys' fees are reasonable." *Id.*

12.    In light of its analysis of the *Girsh* and *Prudential* factors, the Court finds that the settlement is fair, reasonable, and adequate, and in the best interests of the Class.  The Court fully approves all terms of the settlement, including the Agreement and all of its exhibits.

13.    The terms of the Agreement and this Final Approval Order and Judgment are binding on the Plaintiffs and all Class Members, as well as their heirs, executors and administrators, successors, assigns, and all other persons to the fullest extent provided for in the Agreement.

14.    The release, no assignment, and covenant not to sue provisions set forth in Sections 7.1 and 7.2 of the Agreement (and all related definitions and other provisions of the Agreement) are incorporated herein by reference, and all

Representative Plaintiffs, Class Members, and other Releasing Parties shall be fully subject to all of these provisions.

15.    The Releasing Parties (including Representative Plaintiffs and all Class Members) are hereby permanently enjoined from:  (i) filing, commencing, prosecuting, intervening in, participating in or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on any or all Released Claims against one or more Released Parties; (ii) instituting, organizing class members in, joining with class members in, amending a pleading in or soliciting the participation of class members in, any action or arbitration, including but not limited to a purported class action, in any jurisdiction against one or more Released Parties based on, involving, or incorporating, directly or indirectly, any or all Released Claims; and (iii) filing, commencing, prosecuting, intervening in, participating in or receiving any benefits from any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction based on an allegation that an action of the Released Parties, which is in compliance with the provisions of the Agreement, violates any right of any Class Member.  All Persons who are, have been, could be, or could have been alleged to be joint tortfeasors, co-tortfeasors, co-conspirators, or co-obligors with any or all of the Released Parties respecting any or all of the Released Claims, are hereby, to the maximum extent permitted by law, barred and permanently enjoined

from making, instituting, commencing, prosecuting, participating in or continuing any claim, cross-claim, action, or proceeding, however denominated, regardless of the allegations, facts, law, theories or principles on which they are based, in this Court or in any other court or tribunal, against any or all of the Released Parties with respect to any or all of the Released Claims, including without limitation equitable, partial, comparative, or complete contribution, set-off, indemnity, or otherwise, whether by contract, common law or statute, arising out of or relating in any way to the Released Claims.  All such claims are hereby fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law, and no such claim may be commenced, maintained, or prosecuted against any Released Party.  Any judgment or award obtained by a Class Member against any such Person shall be reduced by the amount or percentage, if any, necessary under applicable law to relieve any Released Party of all liability to such Person on such barred claims.  Such judgment reduction, partial or complete release, settlement credit, relief, or setoff, if any, shall be in an amount or percentage sufficient under applicable law as determined by the Court to compensate such Person for the loss of any such barred claims against any Released Party. Where the claims of a Person who is, has been, could be, or could have been alleged to be a joint tortfeasor, co-tortfeasor, co-conspirator or co-obligor with a Released Party respecting the Released Claims

have been barred and permanently enjoined by this section, the claims of Released Parties against that Person respecting those Released Claims are similarly fully and finally barred, released, extinguished, discharged, satisfied and made unenforceable to the maximum extent permitted by law.

16.    The terms of the Agreement and this Final Approval Order and Judgment shall have *res judicata*, collateral estoppel and all other preclusive effect in any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interests, or expenses which are based on or in any way related to any and all claims for relief, causes of action, suits, petitions, demands in law or equity, or any allegations of liability, damages, debts, contracts, agreements, obligations, promises, attorneys' fees, costs, interest, or expenses which were asserted in the Actions.

17.    All claims against Horizon in the Actions are hereby dismissed on the merits and with prejudice, without fees or costs to any party except as provided below.

18.    The Parties and their counsel are ordered to implement and to consummate the Agreement according to its terms and provisions.

19.    The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications and expansions of the

14

Agreement and all exhibits attached hereto as (i) are consistent with the Final Approval Order and Judgment, and (ii) which do not limit the rights of the Class Members under the Agreement.

20.     The Court hereby grants Settlement Class Counsel's request for an award of reasonable attorneys' fees and expenses in the total amount of $2,500,000. Within twenty-one (21) calendar days of entry of this Order, Horizon shall pay this amount into an interest bearing escrow account at a financial institution designated by Class Counsel. The amount held in such account shall not be released to Class Counsel until after the Effective Date. Class Counsel shall, in his sole discretion, allocate the amount paid, respectively, among the various counsel representing the Class in the McDonough Action and the Helfmann Action.

21.     The Court orders incentive awards to the New Jersey Psychological Association in the amount of $15,000 and to Catherine McDonough in the amount of $20,000. Horizon shall pay these amounts no later than twenty (20) days after the Effective Date.

22.     Nothing in this Final Approval Order and Judgment, the Agreement, or any documents or statements related thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Horizon.

23.   In the event that the settlement does not become effective according to the terms of the Agreement, this Final Approval Order and Judgment shall be rendered null and void as provided by the Agreement, shall be vacated and, all orders entered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

24.   Without affecting the finality of the Final Approval Order and Judgment, the Court shall retain continuing jurisdiction over the Actions, the Parties and the Class, and the administration, enforcement, and interpretation of the settlement.   Any disputes or controversies arising with respect to the settlement shall be presented by motion to the Court, provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under Paragraphs 15 and 23 above.

25.   There being no just reason to delay, the Clerk is directed to enter this Final Approval Order and Judgment forthwith, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

_____
STANLEY R. CHESLER, U.S.D.J.

# EXHIBIT C

**Exhibit**

—

UNITED STATES
DISTRICT COURT
DISTRICT OF NEW
JERSEY

| | |
|---|---|
| CATHLEEN MCDONOUGH, | CIVIL ACTION NO. 09-00571(SRC)(PS) |
| Plaintiff, | |
| NEW JERSEY PSYCHOLOGICAL ASSOCIATION and BARRY HELFMANN, PSY.D., individually and on behalf of all other similarly situated individuals, | |
| Consolidated Plaintiffs, | **NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND FINAL SETTLEMENT HEARING** |
| v. | |
| HORIZON HEALTHCARE SERVICES, INC. d/b/a BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., | |
| Defendant. | |

A CLASS ACTION SETTLEMENT INVOLVING HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY ("HORIZON") PROVIDING FOR BUSINESS REFORMS FOR CALCULATING ALLOWED AMOUNTS FOR REIMBURSEMENT OF COVERED SERVICES OR SUPPLIES PROVIDED BY OUT-OF-NETWORK PROVIDERS

YOUR LEGAL RIGHTS ARE AFFECTED WHETHER OR NOT YOU ACT.  PLEASE READ THIS NOTICE CAREFULLY.

*A court authorized this Notice.  It
is not a solicitation from a lawyer.*

- If you were or are in either of the following groups, then you are a member of the Class:

  a) a "Subscriber," meaning all persons who, at any time from February 9, 2003 through the Preliminary Approval Date, (i) were enrolled in a health benefits plan issued by Horizon that included an out-of-network benefit, and (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Provider Group;[1] OR

  b) A "Provider," meaning Persons or entities who, at any time from February 9, 2003 through the Preliminary Approval Date (i) were Out-of-Network Health Care Providers or Provider Groups who are not, or are not comprised of, licensed medical doctors or doctors of osteopathy; (ii) provided Covered Services or Supplies to Horizon Subscribers; and (iii) were paid less than their billed amount for these Covered Services or Supplies

The Class expressly excludes all Horizon Subscribers who are Medicaid members, Medicare members, Medicare Advantage members and Federal Employee Health Benefit Plan members. The Class also expressly excludes Ambulatory Surgical Centers. If you fall into any of these categories, you are not a member of the Class.

### YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT

| | |
|---|---|
| ASK TO BE EXCLUDED | The only option that allows you to individually sue Horizon over the claims resolved by this settlement. |
| OBJECT | Write to the Court about why you do not agree with the settlement. |
| GO TO A HEARING | The Final Settlement Hearing will be held on _____ at __a.m./p.m. at which time the federal court judge will make a final decision as to whether the settlement is fair to all members of the Class. If you wish, you may attend the hearing and ask to speak in Court about the Settlement. |
| DO NOTHING | Accept the settlement and give up your rights to sue Horizon over the claims resolved by the settlement. |

- These rights and optionsand the deadlines to exercise them are explained in this Notice.

---

[1] One mailed *Notice*, communicating the information contained herein, will be provided to the Subscriber and all dependents who are enrolled in the Subscriber's health benefit plan. Covered dependents will not receive independent notice, but each covered dependent is considered a separate member of the Class.

- The settlement will resolve all claims against Horizon as explained in the Settlement Agreement. The Court in charge of this case still has to decide whether to approve the settlement.

## BASIC INFORMATION

### I.   WHY DID I RECEIVE THIS NOTICE?

Your rights may be affected by a proposed settlement in the class action lawsuits consolidated under the case caption *Cathleen McDonough, Plaintiff, Barry Helfmann, Psy.D. and the New Jersey Psychological Association, individually and behalf of all other similarly situated individuals, Consolidated Plaintiffs, v. Horizon Healthcare Services, Inc., d/b/a Blue Cross Blue Shield of New Jersey*, pending in the United States District Court for the District of New Jersey, Master Docket No. 09-00571 (the "Actions").

The United States District Court for the District of New Jersey authorized this Notice because you have a right to know about a proposed settlement of the Actions, including all of your options, before the Court decides to give "final approval" to the settlement. This Notice explains the Actions, the settlement, and your legal rights.

The Representative Plaintiffs allege that Defendants violated Plan language, as well as the Employee Retirement Income Security Act ("ERISA"), in calculating the Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans. Horizon denies all of Plaintiffs' allegations. The Representative Plaintiffs have agreed to settle all claims against Horizon in the Actions in exchange for Horizon's undertaking of business reforms, as well as payment by Horizon of certain fees and class representative payments. The business reforms include a commitment by Horizon to discontinue, as of January 1, 2014, on a rolling basis as each coverage contract is renewed, replaced or expires, and to the extent permitted by law or contract, using the Ingenix database and the Top of Range ("TOR") database for calculating Allowed Amounts for reimbursements of Covered Services or Supplies provided by Out-of Network Providers in connection with claims by Horizon Subscribers, or Out-of-Network Providers who have Assignments from Horizon Subscribers. Horizon has also committed to updating Plan language, Member Handbooks, and marketing materials to reflect the sources Horizon uses to derive Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans. Horizon will likewise update its public website and member portal to provide general information regarding the sources Horizon uses to derive the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers. The Court did not rule for either side in approving this settlement. Rather, both sides agreed to settle all claims that were or could have been asserted against Horizon in the Actions in exchange for these business concessions. That way, the parties avoid the uncertainties and cost of a trial and possible appeal.

The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, to be held on _____ at __:00 a.m./p.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey (the "Final Settlement Hearing").

3

You may elect to opt-out of the Settlement Class and the settlement, as explained below. You also have a right to object to the settlement or to the application for attorneys' fees that counsel for the Class intends to make to the Court, but only if you comply with the procedures described in this notice.   If you do not opt out of the Class and the Court approves the Settlement, you will be bound by the settlement's provisions, including the release of claims against Horizon.   Because your right to pursue certain types of claims against Horizon may be affected by the settlement, you should read this notice carefully.

II.      WHAT IS THIS LITIGATION ABOUT?

The Actions were brought against Horizon by the individual Subscriber and Provider Class Representative Plaintiffs, as well as the New Jersey Psychological Association. Representative Plaintiffs allege that Horizon provided insufficient reimbursement for Out-of-Network Covered Services or Supplies by:

- using the Ingenix database in determining reimbursement amounts for Out-of-Network covered health benefits;

- using the Top-of-Range database ("TOR") in determining reimbursement amounts for Out-of-Network covered health benefits; and

- inadequately disclosing the use of the Ingenix Database and their Out-of-Network reimbursement policies in determining reimbursement amounts for Out-of-Network covered health benefits.

Representative Plaintiffs allege that Horizon violated the Employee Retirement Income Security Act ("ERISA") and Plan terms.

To obtain further information about the claims asserted in the Actions, you may review copies of the complaints filed in the Actions on the Administrator's website.   Certain other filings and orders from the Court are also available to you on this website.

III.     WHAT IS A CLASS ACTION, AND WHY IS THIS CASE A CLASS ACTION?

In a class action, under the federal rules, one or more people, called Class Representatives, sue on behalf of others with similar legal claims.   All of these people together are called a Class or Class Members.   One court resolves the issues for all Class Members, except for those who specifically ask to be excluded from the Class, since the claims that are alleged by the Class Representatives apply similarly to all Class Members.

These Actions were filed as class actions because the Representative Plaintiffs believed that Horizon's use of the Ingenix database, and other sources, to derive Allowed Amounts for reimbursement of Out-of-Network Covered Services and Supplies resulted in a number of Subscribers and Providers receiving less than they were entitled to, in violation of ERISA and individual Plan terms.

The Court has preliminarily, for settlement purposes only, ordered that whether all members of the Class have been under-reimbursed by Horizon's use of the Ingenix database and other sources represents a claim that can be treated on a class basis.

## IV.   WHY IS THERE A SETTLEMENT?

The Court did not decide in favor of either side. Rather, both sides agreed to settle all claims that were or could have been asserted against Horizon in the Actions in exchange for monetary consideration. That way, the parties avoid the uncertainties and cost of a trial and possible appeal.

## V.   WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

### a.   Business Reforms

In the Settlement Agreement, the individual Representative Plaintiffs agreed to settle all claims that were or could have been asserted against Horizon in exchange for Horizon's commitment to make the following business reforms:

- discontinue, as of January 1, 2014, on a rolling basis as each coverage contract is renewed, replaced or expires, and to the extent permitted by law or contract, the use of the Ingenix Database and TOR database to calculate Allowed Amounts for Covered Services or Supplies provided by Out-of Network Providers in connection with claims by Horizon Subscribers, or Out-of-Network Providers who have Assignments from Horizon Subscribers;

- update Plan language, Member Handbooks, and marketing materials to reflect the sources Horizon uses to calculate Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans;

- update its public website and member portal to provide general information regarding the sources Horizon uses to derive the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers.

### b.   Legal Fees and Class Representative Incentive Awards

The Settlement Agreement also provides that Horizon will be responsible for various expenses, such as the costs of notice, attorneys' fees and expenses for Class Counsel, and incentive payments to the individual Representative Plaintiffs, including (i) an award of attorneys' fees and costs for Class Counsel not to exceed the sum of $2,500,000; and (ii) incentive payments to class representative Cathleen McDonough in the amount of $20,000 and class representative New Jersey Psychological Association in the amount of $15,000.

### c.   The Release and Dismissal with Prejudice

If the Settlement Agreement is finally approved, the Actions will be dismissed with prejudice as to Horizon. In addition, Horizon will be released and discharged of any and all claims, up through the Effective Date in this case, that are, were, or could have been asserted against Horizon based on or arising from the factual allegations made by Representative Plaintiffs. Members of the Class will be barred from suing Horizon and the other released persons for claims that are covered by the release. The complete Settlement Agreement, including the Release contained therein, can be reviewed on the Administrator's website, and the terms of the Release are summarized here:

- Upon the entry of the Final Order and Judgment, the Representative Plaintiffs and all Class Members who do not opt out of this Agreement, including their respective current and former officers, directors, employees, attorneys, heirs, executors, administrators, agents, legal representatives, professional corporations, partnerships, members, assigns and successors, but only to the extent their claims are derived from the claims of the Representative Plaintiffs and/or the Class Members (collectively, the "Releasing Parties"), shall forever unconditionally, fully, and finally release, abandon and discharge all claims, including any and all claims, rights, and liabilities of any nature, including but not limited to, actions, claims, demands, causes of action, obligations, damages, debts, charges, attorneys' fees, costs, arbitrations, forfeitures, judgments, indebtedness, liens and losses of any whatever kind, source or character whether arising out of federal or state law, whether known, suspected to exist or unknown, whether asserted or unasserted, whether asserted by any Releasing Party on its own behalf or on behalf of any other person or entity, arising on or before the Effective Date, whether in contract, express or implied, tort, at law or in equity or arising under or by virtue of any statute or regulation, by reason of, arising out of, or in any way related to any of the facts, acts, events, transactions, occurrences, courses of conduct, business practices, representations, omissions, circumstances or other matters related to the McDonough Action or the Helfmann Action, or addressed in this Agreement ("Claim"), whether any such Claim was or could have been asserted by any Releasing Party on its own behalf or on behalf of other Persons (the "Released Claims"), against Horizon and any of its former, present, and future assigns, predecessors, successors, affiliates, parent companies subsidiaries, controlled companies, employees, officers, directors, principals, agents (collectively, the "Released Parties").

- The Releasing Parties are aware that they may, after the date of this Agreement, discover claims or facts in addition to or different from those they now know or believe to be true with respect to the Released Claims. Nevertheless, it is the intention of the Parties to fully, finally, and forever settle and release all Released Claims, including those that are presently unknown or unanticipated, and each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the entry of the Final Order and Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of this Agreement, whether or not concealed or hidden, without regard to the discovery or existence of such different or additional facts.

- Each of the Releasing Parties either (i) represents and warrants that he or she has not provided an assignment for any Released Claims, or (ii) to the extent permitted by law,

6

hereby revokes any such assignment of any Released Claim provided prior to the execution of this Agreement; provided, however, that this provision shall not apply to any claims that have been asserted as of the date of this Agreement in *Edwards v. Horizon Blue Cross Blue Shield of New Jersey,* Civil Action No. 08-cv-6160. The Parties reserve their rights with respect to all such claims.

- Each of the Releasing Parties agrees and covenants not to sue or cooperate in the filing or prosecution of any suit or proceeding, in any forum based upon or related to any Released Claims against any Released Party

## VI.     WHAT WILL HAPPEN AT THE FINAL SETTLEMENT HEARING

The Final Settlement Hearing will be held on _____ at _____ _.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey. The hearing, however, may be adjourned by the Court without additional notice to the Class, other than an announcement in open court. Members of the Class who support the Settlement do not need to be present at the hearing or take any action to indicate their approval, as Class Counsel for the Class will be present to address any questions or concerns raised by the Court.

At the Final Settlement Hearing, the Court will consider:

a.     whether the settlement of the Actions that is reflected in the Settlement Agreement is fair, reasonable, and adequate to the members of the Class:

b.     whether to unconditionally certify the Class in accordance with Federal Rules of Civil Procedure

c.     whether to approve payment of incentive awards to the Representative Plaintiffs; and

d.     whether to approve the payment of attorneys' fees and expenses to Class Counsel.

## VII.    MAY I PARTICIPATE IN THE FINAL SETTLEMENT HEARING?

Any Class Member who objects to the settlement, the Settlement Agreement, the application for attorneys' fees and expenses, or the other matters to be considered at the Final Settlement Hearing may appear and present such objections. You may also appear by counsel, if you wish. In order to be permitted to do so, however, you must, on or before _____:

- File with the Court a notice of your intention to appear, together with a statement setting forth your objections, if any, to the matters to be considered and the basis

for those objections, along with any documentation that you intend to rely upon at the Final Settlement Hearing; and

- Serve copies of all such materials, either by hand delivery or by first-class mail, postage prepaid, upon the following counsel:

| Counsel for the Settlement Class | Defense Counsel |
|---|---|
| Bruce H. Nagel<br>Nagel Rice, LLP<br>103 Eisenhower Parkway<br>Suite 103<br>Roseland, New Jersey 07068<br><br>With a copy to,<br><br>Bruce D. Greenberg<br>Lite DePalma Greenberg, LLC<br>Two Gateway Center – 12th Floor<br>Newark, New Jersey 07102 | Philip R. Sellinger<br>David Jay<br>Greenberg Traurig, LLP<br>200 Park Avenue<br>Florham Park, New Jersey |

If you do not comply with the foregoing procedures and deadlines for submitting written objections and/or appearing at the Final Settlement Hearing, you may lose substantial legal rights, including, but not limited to:  (i) the right to appear and be heard at the Final Settlement Hearing; (ii) the right to contest approval of the proposed settlement or the application for an award of attorneys' fees and expenses; and (iii) the right to contest any other orders or judgments of the Court entered in connection with the settlement.

You cannot both request exclusion from the Class and object to the settlement.  Only members of the Settlement Class may object to the settlement.  You should consult the Court's Preliminary Approval Order for additional information on the requirements for objecting to the proposed settlement or participating in the Final Hearing.  A copy of the Order may be reviewed on the Notice Administrator's website.

VIII.    WHAT IF I DO NOT WANT TO BE PART OF THE SETTLEMENT?

If you do not want to be a Class Member and participate in the settlement, then you must send a signed Request for Exclusion by mail stating: (1) your name, address, and federal Social Security Number or Tax Identification Number, and (2) a statement that you wish to be excluded from the Class.  Requests for Exclusion must be mailed to the following: _____

YOUR REQUEST FOR EXCLUSION MUST BE POSTMARKED NO LATER THAN_____

8

By requesting to be excluded from the Class, you may maintain any claim you believe you have against Horizon by filing your own lawsuit at your own expense.

IX.    DO I HAVE A LAWYER IN THIS CASE?

The Court has appointed Bruce H. Nagel, Nagel Rice LLP, as Class Counsel for settlement purposes to represent you and other members of the Class.

You do not have to pay Class Counsel.  If you want to have your own lawyer, and have that lawyer appear in court for you in this case, you must hire one at your own expense.

X.    WHAT IF I DO NOTHING AT ALL?

If you do nothing, you will be bound by the release and covenant not to sue provisions of the Settlement Agreement described above.

XI.    HOW DO I GET MORE INFORMATION?

This Notice is a summary and does not describe all details of the settlement.  Complete copies of the Settlement Agreement, the complaints filed in the Actions, the Preliminary Approval Order, and certain other court orders in this case, except for those filed under seal, may be examined and copied during regular office hours, and subject to customary copying fees, at the Clerk of the Court's Office, United States District Court, District of New Jersey.  Certain of these documents may also be obtained on the Notice Administrator's website.

DO NOT CALL OR WRITE THE COURT OR THE CLERK OF THE COURT FOR INFORMATION OR LEGAL ADVICE.  CONTACT CLASS COUNSEL LISTED ABOVE OR GO TO THE NOTICE ADMINISTRATOR'S WEBSITE AT _____.

Dated: _____

BY ORDER OF
THE UNITED STATES
DISTRICT COURT
DISTRICT OF NEW
JERSEY

# EXHIBIT
# D

EXHIBIT __

**Members of Healthcare Plans Insured or Administered by Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon"); and Out-of-Network Non-Medical Health Care Providers and Provider Groups Who Furnished Covered Services or Supplies to Such Members:**

*A Proposed Class Action Settlement May Affect Your Rights.*

A Settlement has been preliminarily approved in a class action lawsuit that alleges that Horizon provided insufficient reimbursement for Covered Out-of-Network healthcare benefits by using the Ingenix Databases and certain other reimbursement methods.

If you were or are in either of the following groups, then you are a member of the class:

a)     a "Subscriber," meaning all persons who, at any time from February 9, 2003 through the Preliminary Approval Date, (i) were enrolled in a health benefits plan issued by Horizon that included an out-of-network benefit, and (ii) received a Covered Service or Supply from an Out-of-Network Health Care Provider or Provider Group; OR

b)     A "Provider," meaning Persons or entities who, at any time from February 9, 2003 through the Preliminary Approval Date (i) were Out-of-Network Health Care Providers or Provider Groups who are not, or are not comprised of, licensed medical doctors or doctors of osteopathy; (ii) provided Covered Services or Supplies to Horizon Subscribers; and (iii) were paid less than their billed amount for these Covered Services or Supplies

The Class expressly excludes all Horizon Subscribers who are Medicaid members, Medicare members, Medicare Advantage members and Federal Employee Health Benefit Plan members. The Class also expressly excludes Ambulatory Surgical Centers.  If you fall into any of these categories, you are not a member of the Class.

If you are a Class member, your rights may be affected by a proposed Settlement in the class action lawsuits consolidated under the case caption, *Cathleen McDonough, Plaintiff, Barry Helfmann, Psy.D. and the New Jersey Psychological Association, individually and behalf of all other similarly situated individuals, Consolidated Plaintiffs, v. Horizon Healthcare Services, Inc., d/b/a Blue Cross Blue Shield of New Jersey*, pending in the United States District Court for the District of New Jersey, Master Docket No. 09-00571 (the "Actions").  Plaintiffs allege that Defendants violated Plan language, as well as the Employee Retirement Income Security Act ("ERISA"), in calculating the Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans.   Horizon denies all of Plaintiffs' allegations.

The Representative Plaintiffs have agreed to settle all claims against Horizon in the Actions in exchange for Horizon's undertaking of business reforms, as well as payment by Horizon of certain fees and class representative payments.

- The business reforms include a commitment by Horizon to discontinue using, beginning January 1, 2014, on a rolling basis as each coverage contract is renewed, replaced or expires, and to the extent permitted by law or contract, the Ingenix database and the Top of Range ("TOR") database to calculate Allowed Amounts for Covered Services or Supplies provided by Out-of-Network Providers in connection with claims by Horizon Subscribers, or Out-of-Network Providers who have Assignments from Horizon Subscribers. Horizon has also committed to updating Plan language, Member Handbooks, and marketing materials to reflect the sources Horizon uses to derive Allowed Amounts for reimbursement of Covered Services and Supplies provided by Out-of-Network Providers under the Plans. Horizon will likewise update its public website and member portal to provide general information regarding the sources Horizon uses to derive the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers.

- The fees and class representative payments include: (i) an award of attorneys' fees and costs for Class Counsel not to exceed the sum of $2,500,000; and (ii) incentive payments to class representative Cathleen McDonough in the amount of $20,000 and class representative New Jersey Psychological Association in the amount of $15,000.

The Court did not rule for either side in approving this settlement. Rather, both sides agreed to settle all claims that were or could have been asserted against Horizon in the Actions in exchange for these business concessions. That way, the parties avoid the uncertainties and cost of a trial and possible appeal.

The Court has scheduled a hearing to consider the fairness, reasonableness, and adequacy of the Settlement, to be held on _____ at __:00 a.m./p.m. at the United States Courthouse, United States District for the District of New Jersey, Martin Luther King, Jr. Federal Building and U.S. Courthouse, 50 Walnut Street, Newark, New Jersey (the "Final Settlement Hearing").

This notice is a summary of your rights under the Settlement. To obtain copies of the complaints filed in the Actions, the Settlement Agreement and the full Notice, contact the Notice Administrator at _____ or visit the Notice Administrator's website at _____.

<u>What Are My Rights</u>?

- If you wish to remain a member of the Class, you do not have to do anything. You will be bound by all the Court's orders with regard to the Settlement. This means you cannot sue Horizon or other Released Persons for any of the Released Claims described in the Settlement Agreement.

- If you do not wish to be a member of the Class and be bound by the Court's orders with regard to the Settlement, you must affirmatively opt out of the Class by sending a letter asking to be excluded from the Class, as explained in the full Notice. The letter must be postmarked no later than _____.

2

- If you do not exclude yourself from the Class, you or your lawyer still may tell the Court if you do not like the Settlement or some part of it as explained in the full Notice.  You must file your written objection with the Court no later than _____.

**Who is Counsel for the Class?**

Bruce Nagel
Nagel Rice, LLP
103 Eisenhower Parkway
Suite 103
Roseland, New Jersey 07068

DO NOT CALL OR WRITE THE COURT, THE CLERK OF THE COURT OR HORIZON FOR INFORMATION OR LEGAL ADVICE.  CONTACT CLASS COUNSEL LISTED ABOVE OR GO TO THE ADMINISTRATOR'S WEBSITE AT _____.

Dated: _____            BY ORDER OF THE UNITED STATES
                                           DISTRICT COURT DISTRICT OF NEW
                                           JERSEY