UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CATHLEEN MCDONOUGH,

                Plaintiff,

NEW JERSEY PSYCHOLOGICAL
ASSOCIATION and BARRY
HELFMANN, PSY.D., individually
and on behalf of all other similarly
situated individuals,

                Consolidated
                Plaintiffs,

v.

HORIZON HEALTHCARE
SERVICES, INC. d/b/a BLUE
CROSS BLUE SHIELD OF NEW
JERSEY, INC.,

                Defendant.

CIVIL ACTION NO. 09-00571(SRC)

---

**BRIEF OF PLAINTIFFS IN SUPPORT OF JOINT APPLICATION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, NJ  07068
(973) 618-0400
Attorneys for Plaintiffs

# TABLE OF CONTENTS

Prefatory Statement ........................................................................1

Summary of Settlement Terms........................................................1

Statement of Facts..........................................................................3

    A.  Procedural History..............................................................3
    B. Settlement Negotiations.......................................................6
    C. Experience of Class Counsel................................................7
    D. Key Settlement Terms.........................................................9
    E. Key Notice Provisions.......................................................10

Legal Argument.............................................................................11

    Point I.  This Court Should Grant Preliminary
              Approval of the Class Settlement........................................11

    Point II.  The Proposed Settlement Class Should
              Be Certified.................................................................13

    Point III.  The Court Should Appoint Nagel Rice
              As Class Counsel..........................................................20

    Point IV.  The Request for Incentive Payments
              To The Representative Plaintiffs Should
              Be Preliminarily Approved...........................................21

    Point V.  The Attorneys Fees Provision Of The Settlement
              Should Be Preliminarily Approved.................................22

    Point VI.  The Form and Manner of Notice Should Be
              Approved By the Court..................................................23

Conclusion....................................................................................25

# TABLE OF AUTHORITIES

Cases

Anchem Products, Inc. v. Windsor,
    521 U.S. 591 (1997) ............................................................................ 14, 16, 17

Baby Neal v. Casey,
    43 F.3d. 48 (1994) ............................................................................ 15, 16

Bell Atlantic v. Bolger,
    2 F.3d 1304 (3d Cir. 1993) ............................................................. 11

Bourlas v. Davis Law Assocs.,
    237 F.R.D. 345 (E.D.N.Y. 2006) .................................................... 24

Bradburn Parent Teacher Store, Inc. v. 3M,
    513 F.Supp. 2d 322 (E.D.Pa. 2007) ............................................... 24

Brytus v Spang & Co.,
    203 F.3d 238 (3d Cir. 2000) ........................................................... 22

Carnegie v. Household International, Inc.,
    376 F.3d 656 (7th Cir. 2004) ......................................................... 19

Chiang v. Veneman,
    385 F.3d 256 (3d. Cir. 2004) .......................................................... 15

Cullen v. Whitman Med. Corp.,
    197 F.R.D. 136 (E.D. Pa 2000) ...................................................... 21

Franco v. Connecticut General Life Ins. Co.,
    289 F.R.D. 121 (D.N.J. 2013) ......................................................... 3, 4, 6, 7

Georgine v. Amchem Product, Inc.,
    83 F.3d 610 (3d Cir. 1996) ............................................................. 15

In re Am. Med. Sys., Inc.,
    75 F.3d 1069 (6th Cir. 1996) ......................................................... 17

In re Baldwin-United Corp.,
    105 F.R.D. 475 (D.C.N.Y. 1984) ................................................................ 14

In re Cendant PRIDES Litigation,
    243 F.3d 722(3d Cir. 2001), ...................................................................... 22

In re Community Bank of N. Va.,
    418 F.3d 277 (3d Cir. 2005) ...................................................................... 18

In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,
    55 F.3d 768 (3d Cir. 1995) ................................................................. 11, 16

In re Lorazepam & Clorazepate Antitrust Litig.,
    205 F.R.D. 369 (D.D.C. 2002) .................................................................. 21

In re Mercedes-Benz Antitrust Litig.,
    213 F.R.D. 180 (D.N.J. 2003) ............................................................. 18, 19

In re Prudential Ins. Co. v. America Sales Litigation,
    148 F.3d 283 (3d. Cir. 1998) ..................................................................... 14

In re Prudential Sec. Inc. Limited Partnerships Litigation,
    163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................ 11

In re Remeron Direct Purchase Antitrust Litigation,
    2005 WL 3008808 (D.N.J. 2005) ............................................................... 22

In re Remeron End-Payor Antitrust Litigation,
    2005 WL 2230314 (D.N.J. 2005) ............................................................... 21

In re School Asbestos Litig.,
    921 F.2d 1330 (3d Cir. 1990) .................................................................... 24

In re Sugar Industry Antitrust Litig.,
    73 F.R.D., 322 (E.D. Pa. 1976) ................................................................. 18

In re Warfarin Sodium Antitrust Litig.,
    391 F.3d 516 (3d Cir. 2004) ............................................................... 11, 18

-iii-

Liebman v. J.W. Petersen Coal & Oil Co.,
  73 F.R.D. 531 (N.D. Ill. 1973) ................................................................. 11

McDonough v Horizon Blue Cross Blue Shield of New Jersey,
  2011 WL 4455994 (D.N.J. 2011) ............................................................. 4

Phillips Petroleum Co. v. Shutts,
  472 U.S. 797 (1985) ......................................................................... 19, 23

Stewart v. Abraham,
  275 F.3d 220 (3d Cir. 2001) ............................................................ 14, 15

Sullivan v. DB Invs., Inc.,
  667 F.3d 273 (3d Cir. 2011) ................................................................. 17

Wal-Mart Stores, Inc. v. Visa USA, Inc.,
  396 F.3d 96 (2d. Cir. 2005) ................................................................. 11

Weiss v. York Hosp.,
  745 F.2d 786 (3d Cir. 1984) ................................................................. 14

Zinberg v. Washington Bancorp, Inc.,
  138 F.R.D. 397 (D.N.J. 1990) .............................................................. 14

Court Rules
Fed. R. Civ. P. 23 .......................................................................... 14, 23
Fed. R. Civ. P. 23(e) ........................................................................... 23
Fed. R. Civ. P. 23(g)(1)(A) ................................................................. 20
Fed. R. Civ. Pro. 12(b)(6) ..................................................................... 4
Rule 23(a)(1) .............................................................................. 14, 20
Rule 23(a)(2) .......................................................................... 14, 15, 17
Rule 23(a)(3) ...................................................................................... 15
Rule 23(b)(3) .......................................................................... 14, 17, 18
Rule 23(c) ........................................................................................... 24
Rule 23(c)(2)(B) ................................................................................. 24

Other Authority

Manual for Complex Litigation, 4[h] Ed. §21.632 ..................................... 11

-iv-

## PREFATORY STATEMENT

The joint application seeks preliminary approval of a class action settlement which grants the class significant declaratory and injunctive relief in the form of business reforms as well as the payment of fees and class representative payments. The business reforms include a commitment by Horizon to discontinue using the Ingenix database and the Top of Range ("TOR") database to calculate Allowed Amounts for Covered Services or Supplies provided by Out-of-Network Providers in connection with claims by Horizon Subscribers, or Out-of-Network Providers who have Assignments from Horizon Subscribers. Horizon has also committed to updating Plan language, Member Handbooks, and marketing materials to clearly state the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers. Horizon will likewise update its public website and member portal to reflect the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers.

## SUMMARY OF SETTLEMENT TERMS

The Settlement will affect the millions of Horizon Plan Members and their ONET Providers who have been receiving reimbursements for ONET services using the Ingenix and TOR databases.

The material settlement terms are as follows:

1

Pursuant to the settlement Horizon will (a) discontinue the use of the Ingenix Database for the calculation of out-of-network ("ONET") allowed amounts for the bulk of Horizon Plans; (b) discontinue the use of Horizon's TOR database for the calculation of ONET allowed amount; (c) revise Plan language for all Plans sold or renewed by Horizon to reflect the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers, including, but not limited to, the applicable reimbursement profile, and general information regarding the method for adjustments when the selected profile requires modification. Horizon will update its applicable Member Handbooks, marketing materials, and proposals in the same manner and on the same schedule, and (d) Horizon will update its public website and its member portal to include general information regarding the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of Network Providers, as well as links to public websites, to the extent available, providing similar information. In addition, (e) Horizon shall not object to the payment, subject to court approval, of up to $2.5 million for attorneys' fees and costs of Class Counsel who shall, in his sole discretion, allocate the amount paid among the various counsel representing the Class in the McDonough and Helfmann Actions and (f) Horizon shall not object to the payment, subject to court approval, of $20,000 to Cathleen McDonough in the

McDonough Action and $15,000 to the New Jersey Psychological Association in the Helfmann Action. Finally, (g) Horizon shall pay all costs associated with notice and administration of this settlement.

## STATEMENT OF FACTS

A.   UNDERLINE PROCEDURAL HISTORY

This action, which was filed on or about October February 9, 2009, by Plaintiff Cathleen McDonough, a Horizon Member, sets forth six counts seeking relief on behalf of a class of Horizon subscribers predicated upon the alleged uniform under-reimbursement by Horizon for out of network services.[1] As alleged in the Complaint, the systematic under-reimbursement occurred because Horizon used a flawed database (Ingenix) or its own flawed reimbursement schedule (TOR) to determine benefits under the plans. The action was predicated upon various alleged violations of ERISA, including the failure to pay benefits and breach of fiduciary duty, as well as the common law. Horizon moved to dismiss on April 24, 2009. That motion was opposed by McDonough on June 1, 2009.[2] On October 7, 2009, the Court granted Horizon's motion to dismiss with leave to replead.

---

[1]   This action is similar to litigation that was pending against various other insurers' including Aetna (In re Aetna UCR Litigation ,MDL 2020) and CIGNA (See  Franco v. Connecticut General Life Ins. Co., 289 F.R.D. 121, 131 (D.N.J. 2013)).

[2]   The McDonough case was consolidated with a Provider case brought by Nagel Rice on behalf of Steven Becker, M.D. That matter was also subject to a motion to

3

An Amended Class Action Complaint ("ACAC") was filed on or about November 6, 2009. Thereafter, Horizon filed a new motion to dismiss the ACAC pursuant to Fed. R. Civ. Pro. 12(b)(6) on or about December 4, 2009. McDonough opposed this motion as well.[3] On September 23, 2011, this Court rendered its decision with respect to Horizon's motion to dismiss, dismissing certain claims and leaving intact the ERISA claims under Section 502(a)(1)(B). McDonough v Horizon Blue Cross Blue Shield of New Jersey, 2011 WL 4455994 (D.N.J. 2011). Horizon filed an Answer to the Amended Complaint on October 21, 2011. On October 28, 2011, Horizon moved for summary judgment with respect to the claims raised in the Helfmann Complaint based upon certain rulings rendered by the Court in the companion Franco litigation against CIGNA. That motion was opposed but adjudication was held in abeyance.

In the meantime, the parties had exchanged Rule 26 disclosures, and engaged in discovery, which included responding to interrogatories and requests for production of documents. Approximately one million pages of electronic discovery were exchanged. Horizon produced claims data, two experts were

---

dismiss, repleading and a second motion to dismiss. However, on September 27, 2010, that matter was voluntarily dismissed due to the Court's ruling that a bar order issued in a Florida MDL applied.

[3] On December 13, 2010 Barry Helfmann and the New Jersey Psychologocial Association filed their Complaint on behalf of non-MD providers (excluded from

retained by Plaintiffs, and two experts by Horizon.   The parties conducted approximately 20 non-expert depositions. Expert reports and rebuttal reports were exchanged and all experts were deposed over the course of several days. Numerous discovery disputes and privilege issues arose over the course of proceedings, which were addressed by then-Magistrate Judge Patty Shwartz.

On February 17, 2012, McDonough filed a motion to certify the class and appoint Nagel Rice as class counsel. Helfmann filed a similar motion relying primarily upon the McDonough submission. The motion was opposed by Horizon. In addition, Horizon filed two separate motions to exclude the reports and testimony of Plaintiffs' experts, Bernard R. Siskin and Sally Reaves. These motions were also opposed. The Court held oral argument on the class certification motion on July 19, 2012, and during argument called for additional briefing on several issues. These briefs were filed on September 24, 2012, and November 21, 2012. The court also ordered briefing as to the motion to strike the Reaves report.[4]

On December 21, 2012, Horizon moved for summary judgment as to McDonough.  Plaintiff opposed and cross-moved for partial summary judgment on February 27, 2013. These motions were still awaiting adjudication but, upon

---

the bar order that had resulted in the dismissal of the Becker case). The Helfmann matter was consolidated with the McDonough case on January 11, 2011.

[4] An appeal of certain rulings by Magistrate Judge Shwartz was also filed by Plaintiff to the trial Judge and denied on January 22, 2013.

reaching the settlement in principle, the parties voluntarily withdrew the motions without prejudice.

### B.    SETTLEMENT NEGOTIATIONS

In May 2010, the Court suggested that the parties enter into mediation and by July 2010, the parties had selected Judge Mark B. Epstein (ret.) to serve as the mediator.   In August 2010, the parties submitted mediation statements and the mediator met with the parties without success. However, the parties continued to explore the issue of settlement as the litigation continued.

Following this Court's denial of class certification in Franco v. CIGNA[5], the parties' settlement negotiations shifted focus and intensified. The parties conducted extensive arms-length settlement negotiations in good faith.   Over a period of nearly a year, the parties negotiated all of the core issues, including the nature of the business changes Horizon was willing to make, the methodology of notifying class members, definition of the Class, amount of Class Representative Incentive Payments, and related issues. The negotiations were conducted over an extended period and evolved through the joint efforts of experienced counsel. When all of the other terms of the Settlement were negotiated, the parties negotiated the issue of attorneys' fees.

---

[5] Class counsel in this case is also interim class counsel in the Franco case. Plaintiffs have recently moved for summary judgment and to certify a redefined class in the Franco matter. That motion is currently pending.

## C.   EXPERIENCE OF CLASS COUNSEL

The Settlement Agreement was negotiated by Class Counsel, who is highly experienced in class action, health care and other complex litigation.  Nagel Rice served as Class Counsel in negotiating the Drazin v. Horizon, DeVito v. Aetna and Pontani v. AmeriHealth eating disorder class action settlements, which were all granted final approval in this District. Class Counsel has over 25 years of experience in handling class action and complex litigation and has been lead counsel in numerous state and federal class actions. Bruce Nagel, a named partner in the firm, has the unique distinction of having argued 3 class action cases before the New Jersey Supreme Court, and as mentioned above, is currently co-lead counsel (subscriber) in this District in the UCR reimbursement class action entitled Franco v. Cigna, Civil Action No. 08-4580.  (See Certification of Bruce H. Nagel submitted herewith).

Class Counsel has handled many cutting edge cases in recent years, which have defined health care and insurance reimbursement law: Health Net of New Jersey, Inc. v. Wayne Surgical Center, Inc., et al., Superior Court of New Jersey, Docket Number BER-C-37-06, (Trial court holds that self-referrals from doctor/owners of ambulatory surgery centers does not constitute insurance fraud); Gregory Surgical v. Horizon Blue Cross-Blue Shield of New Jersey, Civil Action No. 06-0462, WL 4570323 (D.N.J. 2007) (Neither ERISA nor anti-assignment

7

clause bars actions to recover out of network UCR reimbursements) (Honorable Joseph A. Greenaway, Jr.); <u>Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc.</u>, Civil Action No. 06-928, WL 2416428 (D.N.J. 2007)(Class action involving the repricing of UCR reimbursements; on motion to dismiss District Court holds that plaintiff has standing as assignee to bring claims under 502(a)(1)(B) of ERISA, despite anti-assignment clause; District Court also recently held that repricing company may be fiduciary under §502 of ERISA).

Recently, the firm has served as a lead, co-counsel or in Executive Committee positions in court-approved multi-million dollar class actions against credit card companies for alleged improper marketing and sale practices: <u>In re: Discover Card Payment Protection Plan Marketing and Sales Practices Litigation</u>, MDL No. 2217, (N.D. Ill. 2010) (Court-appointed co-lead class counsel in $10.5 million nationwide class action settlement alleging improper marketing and administration of its Payment Protection Plan, Identity Theft Protection, Wallet Protection and Credit Score Tracker products); <u>In re: Bank of America Credit Protection Marketing & Sales Practices Litigation</u>, MDL No. 2269, (N.D. Ca. 2011)(Member of the Plaintiffs' Executive Committee in $20 million nationwide class action settlement involving Bank of America's marketing and sales practices relating to its debt suspension/debt cancellation product, Credit Protection; <u>Esslinger, et al. v. HSBC Bank Nevada, N.A. et als.</u>, 2:10-cv-03213, (E.D. Pa.

2010) (Court-appointed co-lead class counsel in $23.5 million nationwide class action settlement alleging improper marking and practices related to HSBC's debt suspension and cancellation products); Mc-Kay Sales, Inc., Cantina 134, LLC v. DFS Inc., et als., 1:10-cv-02964, (N.D. Ill. 2010) (Selected Plaintiff's Steering Committee in multi-million dollar national class settlement alleging involuntary enrollment in discount programs offered to Discover merchants). Hence, class counsel has the necessary expertise and experience to resolve this action.

D.   KEY SETTLEMENT TERMS

The settlement accomplishes the primary goals of the litigation: Pursuant to the settlement, Horizon will (a) discontinue the use of the Ingenix Database for the calculation of out-of-network ("ONET") allowed amounts for the bulk of Horizon Plans; (b) discontinue the use of Horizon's TOR database for the calculation of ONET allowed amount; and (c) revise Plan language for all Plans sold or renewed by Horizon to clearly state the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by Out-of-Network Providers. Horizon will also update its applicable Member Handbooks, marketing materials, and proposals in the same manner and on the same schedule, and (d) Horizon will update its public website and its member portal to include general information regarding (1) the manner in which Horizon derives the Allowed Amount for reimbursement of Covered Services or Supplies provided by

Out-of Network Providers, and (2) links to public websites, to the extent available, providing similar information. The entire cost to administer the Settlement, as well as the cost of notice, payment of class counsel fees and costs, and payment of class representative incentive payments will be borne by Horizon.

E.    KEY NOTICE PROVISIONS

In connection with the settlement, the parties have submitted a proposed notice plan that includes individual notice to each Class Member by first class mail, posting the notice on the internet, and publishing the notice in the following local and national media outlets: *The Newark Star Ledger, The Courier Post, The Asbury Park Press* and *USA Today*. The notices contain information adequate to inform Class Members of the essential terms of the settlement, description of the litigation, consequences of accepting or opting out of the settlement and other relevant information.  The Notice Administrator will maintain a web-site with relevant information regarding the litigation and terms of the settlement.

## LEGAL ARGUMENT

## POINT I

## THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

A.   THE STANDARD FOR PRELIMINARY APPROVAL HAS BEEN MET

In this Circuit, the settlement of class actions and other complex litigation is strongly favored.  In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  See also, In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).  Where the parties can resolve the litigation through good faith and arms-length negotiations, judicial resources can be preserved and the public interest is furthered.  Bell Atlantic v. Bolger, 2 F.3d 1304 (3d Cir. 1993).

In the preliminary approval stage, the court must first determine whether the proposed settlement "appears to fall within the range of possible approval." In re Prudential Sec. Inc. Limited Partnerships Litigation, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); Liebman v. J.W. Petersen Coal & Oil Co., 73 F.R.D. 531, 534 (N.D. Ill. 1973); Newberg on Class Actions, 4th Ed. §13:64.  Preliminary approval is not binding and should be granted unless the proposed settlement is obviously deficient. cf.  Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116 (2d. Cir. 2005). As set forth in the Manual for Complex Litigation, 4th Ed. §21.632:

11

> Review of a proposed class action settlement generally involves two hearings. First, counsel submits the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

In making a preliminary determination of the fairness, reasonableness and adequacy of the settlement, the Court should consider whether the proposed settlement resulted from arms-length negotiations between experienced counsel. Prudential, 163 F.R.D. at 209; Jones v. Commerce Bankcorp Inc., 2007 LEXIS 52144 (D.N.J.). This criterion has clearly been satisfied as the settlement was negotiated over a period of many months by savvy counsel with extensive class action experience. See Nagel Cert. at ¶¶ 2-7. The settlement achieves the main goals of the litigation in the form of business reforms: 1) moving away from using the flawed Ingenix database and TOR methodology for reimbursing ONET services, and 2) notifying class members of the approach and applicable reimbursement profile that Horizon will use to determine the Allowed Amounts to

be reimbursed so that both subscribers and providers will know in advance the basis of what they will receive when the subscriber elects to use an ONET provider.

The proposed settlement meets the requirements for preliminary approval and this Court should grant the joint application for preliminary approval.

## POINT II

## THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

The parties seek preliminary certification of two sub-classes for settlement purposes.

(a)     a sub-class comprised of all persons enrolled in a health benefits plan ("Plan") issued by Horizon ("Horizon Subscribers") during the period from February 9, 2003 to the date of the Preliminary Order (the "Class Period") that includes an out-of-network benefit ("Subscriber Sub-class"), and

(b)     a sub-class comprised of all Out-of-Network Health Care Providers who are not licensed medical doctors or doctors of osteopathy and who provided Covered Services or Supplies during the Class Period to Horizon Subscribers whose Plans included an out-of-network benefit and were paid less than their billed amount for these Covered Services or Supplies ("Provider Sub-class"). (The Subscriber Sub-class and the Provider Sub-class are referred to collectively hereafter as the "Class").

A class may be preliminarily certified for settlement purposes if it conforms to the requirements of Fed. R. Civ. P. 23. In re Baldwin-United Corp., 105 F.R.D. 475, 478 (D.C.N.Y. 1984); Newberg at 13:64.   See Anchem Products, Inc. v. Windsor, 521 U.S. 591 (1997); In re Prudential Ins. Co. v. America Sales Litigation, 148 F.3d 283, 307-308 (3d. Cir. 1998).  For purposes of this settlement only, the parties agree that the class satisfies each of the four requirements for class certification under Rule 23(a) and the requirements of both Rule 23(b)(3).

### A.   NUMEROSITY

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. In re Prudential Ins. Co., 148 F.3d at 309; Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J. 1990). There is no magic number needed to satisfy numerosity. See, Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001); See also, Weiss v. York Hosp., 745 F.2d 786, 809 (3d Cir. 1984) (Ninety-two class members sufficient to satisfy numerosity.)  Here, the subscriber sub-class alone has been estimated by Horizon to total approximately 3,000,000.  The number of class members certainly satisfies this requirement for preliminary class certification.

### B.   COMMONALITY

To satisfy the commonality requirement under Rule 23(a)(2), plaintiffs must demonstrate that "'at least one question of fact or law' is common to each member

of [the] prospective class." <u>Stewart v. Abraham</u>, 275 F.3d at 227. Class members do not have to share identical claims or claims arising from the same operative facts. See <u>In re Prudential Ins.</u>, 148 F.3d at 310; <u>Baby Neal v. Casey</u>, 43 F.3d. 48, 57 (1994) (Factual differences in the claims of class members do not defeat certification). The commonality standard of Rule 23(a)(2) is not a high bar; it will be satisfied if the named plaintiff shares at least one question of law or fact with the class. <u>Chiang v. Veneman</u>, 385 F.3d 256, 265 (3d. Cir. 2004).

Here, there are numerous common questions of law and fact. By way of example and not limitation:

    1)    Whether Horizon's use of the Ingenix databases, TOR, or its other challenged reimbursement practices with respect to out-of-network services and supplies resulted in artificially reduced payments to Class Members; and

    2)    Whether Horizon's use of the Ingenix databases, TOR, or its other challenged reimbursement practices with respect to out-of-network services and supplies violated ERISA.

## C.    <u>TYPICALITY</u>

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. See, <u>Georgine v. Amchem Product, Inc.</u>, 83 F.3d 610, 631 (3d Cir.

1996). Typicality seeks to insure that there are no conflicts between the class representative claims and the claims of the class members that the "named plaintiffs have incentives that align with those of absent class members." Baby Neal v. Casey, 43 F.3d at 57. The alleged claim of the representative plaintiffs, Cathleen McDonough and Barry Helfmann, is that they were under-reimbursed or underpaid for out-of-network services and supplies because of Horizon's use of Ingenix, TOR, and other challenged reimbursement practices. This is typical of all class members. There is no conflict between the plaintiffs' claims and those of the class, and the typicality requirement is clearly met.

### D.   ADEQUACY OF REPRESENTATION

Adequacy of representation is a two-part inquiry that applies to both plaintiffs' counsel and plaintiffs. First, adequacy of representation asks whether plaintiff's attorney is qualified, experienced, and able to conduct the litigation. In re Prudential, 148 F.3d at 312 (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995)). Second, "it serves to uncover conflicts of interest between named parties and the class they seek to represent." In re Prudential, 148 F.3d at 312 (citing Anchem Products v. Windsor, 521 U.S. 591, 594 (1997)). In this case, Class Counsel is highly qualified, experienced, and able to conduct this litigation. The representative plaintiffs share

the proposed class' interest in challenging the improper ONET reimbursements and are proper plaintiffs.

E.     THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISIFIED

The proposed class also meets the requirements of Rule 23(b)(3). Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability of trial is not required. Amchem, 521 U.S. at 618-620; Prudential, 148 F.3d at 313-316. "The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in 'that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues.'" In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig., 2009 U.S. Dist. LEXIS 119870, at 25 (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1084 (6th Cir. 1996)). In discussing predominance, the Third Circuit recently reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Invs., Inc., 667 F.3d 273, 298 (3d Cir. 2011) (en banc). "Common issues predominate when the focus is on the defendants'

17

conduct and not on the conduct of the individual class members." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 187 (D.N.J. 2003); In re Community Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005). Moreover, the predominance prong does not require that there be an absence of any individual issues. In re Sugar Industry Antitrust Litig., 73 F.R.D., 322, 344 (E.D. Pa. 1976).

Here, several common questions of law and fact predominate over any questions that may affect individual class members. For example, whether Ingenix or TOR is a valid method to determine the Allowed Amounts for ONET claims is one such issue subject to "generalized proof" and is a question that is "common to all class members." Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) - that a class action be superior to other available methods for the fair and efficient adjudication of the controversy - is also readily satisfied. See FED. R. CIV. P. 23(b)(3). Here, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 533 (3d Cir. 2004). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." Id. at 534.

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy. See In re Mercedes-Benz, 213 F.R.D at 186 ("The Rule sets forth a non-exhaustive list of factors to be weighed."). The factors include:

> (A)   the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985) ("Without question, class adjudication of this matter will achieve an appreciable savings of effort, time and expense, and will promote uniformity of decision on the issues resolved and to which the parties will be bound."); see also Carnegie v. Household International, Inc., 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.").

The two settlement sub-classes satisfy the superiority requirements because of the large number of class members (approximately 3 million members) and the low value of claims in relation to the expenses of prosecuting a lawsuit. The alternative to this class action is individual lawsuits and/or multiple lawsuits for relatively small amounts of damages. These claims would prove uneconomical for potential Plaintiffs because litigation costs will most certainly dwarf potential

recovery. By contrast, the class action vehicle "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." Prudential, 148 F.3d at 315-316.

In sum, certification of the proposed settlement class is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3). This Court should certify the proposed class for settlement purposes.

## POINT III

## THE COURT SHOULD APPOINT NAGEL RICE AS CLASS COUNSEL

In the event this Court preliminarily certifies the Class, Class Counsel should also be appointed. Fed. R. Civ. P. 23(g)(1)(A). The key test is whether Class Counsel is qualified, experienced, and able to conduct the litigation. In re Prudential, 148 F.3d at 312. Nagel Rice was appointed Class Counsel in numerous health care and insurance coverage litigations, including three previously approved eating disorder class action settlements and several approved UCR re-pricing cases.

Nagel Rice has a more than 25-year track record of handling cutting edge, unique class action and complex litigation. The firm has served as lead or co-counsel in numerous state and federal multi-district actions, and has extensive class action experience. Lead attorney, Bruce H. Nagel, is one of the state's leading trial attorneys and is one of the few New Jersey attorneys with extensive class action

experience. He has argued three class action cases before the New Jersey Supreme

Court, has been lead counsel or co-counsel in numerous state and federal multi-

district actions, has tried over 100 jury and non-jury cases to conclusion, and has

litigated many of the cutting edge health law and ERISA cases over the past

decade.

### POINT IV

### THE REQUEST FOR INCENTIVE PAYMENTS TO THE REPRESENTATIVE PLAINTIFFS SHOULD BE PRELIMINARILY APPROVED

Pursuant to Paragraph 3 of the Settlement Agreement, Horizon has agreed to

pay Cathleen McDonough an incentive payment in the amount of $20,000 in the

McDonough Action, and to the New Jersey Psychological Association an incentive

payment in the amount of $15,000 in the Helfmann Action, subject to Court

approval. In view of the time devoted to this action, the risks involved, and the

significant benefits obtained on behalf of the Class, the incentive awards should be

preliminarily approved by this Court.

It has been long recognized by numerous courts that the time, risk, and

benefits to the class should not go unrecognized. See, In re Remeron End-Payor

Antitrust Litigation, 2005 WL 2230314 (D.N.J. 2005) at 32, citing In re Lorazepam

& Clorazepate Antitrust Litig., 205 F.R.D. 369, 400 (D.D.C. 2002); Cullen v.

Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa 2000).  The amount sought is well within amounts approved in a variety of class actions.  See, In re Remeron Direct Purchase Antitrust Litigation, 2005 WL 3008808 (D.N.J. 2005) and cases cited therein.  The incentive award is both justified and reasonable and this Court should grant preliminary approval of the payment.

## POINT V

### THE ATTORNEYS FEES PROVISION OF THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The two primary methods for calculating attorneys' fees is the percentage of recovery method and the lodestar method. In re Cendant PRIDES Litigation, 243 F.3d 722, 732 (3d Cir. 2001), cert. den. sub nom. 534 U.S. 889 (2001). In this Circuit, the lodestar approach is usually applied to an ERISA class action due to the fact that ERISA is a fee-shifting statute. See e.g. Brytus v Spang & Co., 203 F.3d 238 (3d Cir. 2000); In re Cendant PRIDES Litigation, supra 243 F.3d at 732 ("the lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation.")

Class Counsel anticipates that the amount of attorneys' fees sought will fall within the lodestar multiplier commonly approved in this Circuit.   Accordingly, this Court should grant preliminary approval to the settlement.

## POINT VI

## THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED BY THE COURT

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Manual Fourth § 21.633. Paragraph 5 of the Settlement Agreement provides for reasonable notice to prospective class members because it requires notice to be provided directly to all the class members by first class mail. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-out of the class. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,   148 F.3d at 326-27.   However, neither Rule 23 or due process considerations requires actual notice to every class member in every case. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Rather, "notice reasonably certain to reach most of those interested in objecting" is required "to safeguard the interests of all." Id.   Here, Plaintiffs' notice plan will most likely provide actual notice to all class members because Horizon will provide the Notice Administrator

with the name and last-known address of each Settlement Class Member, thereby allowing notice to be provided to the Class by first-class direct mailing of the Class Notice. *See* In re School Asbestos Litig., 921 F.2d 1330, 1331-32 (3d Cir. 1990) (approving notice sent via first class mail); Bourlas v. Davis Law Assocs., 237 F.R.D. 345, 354 (E.D.N.Y. 2006) (approving first-class mail notice as sufficient under Rule 23(c)(2)(B) where "[t]here is no indication that any of the class members cannot be identified through reasonable efforts."). Through these efforts, absent class members will receive adequate notice of the Settlement. In addition, the Notice will appear on the internet and be published in popular local and national publications as detailed above. Finally, this Notice will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple, non-legalistic terms. The notices contain information adequate to inform Class Members of the essential terms of the settlement, description of the litigation, consequences of accepting or opting out of the settlement and other relevant information. Under Rule 23(c), the Court should consider the contents of class notice as well as the method of dissemination. Bradburn Parent Teacher Store, Inc. v. 3M, 513 F.Supp. 2d 322, 328 (E.D.Pa. 2007); In re Prudential, 148 F.3d at 327. Hence, the requirements for the content and dissemination of the Notice have been satisfied and the Notice should be approved.

## CONCLUSION

For all of the foregoing reasons, we respectfully request that this Court preliminarily certify the settlement class, approve the class action settlement, appoint Nagel Rice as Class Counsel, direct dissemination of the notice to class members regarding and schedule a final fairness hearing.

NAGEL RICE, LLP
Attorneys for Plaintiffs

By: s/*Bruce H. Nagel*
   BRUCE NAGEL

Dated: November 13, 2013