<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CATHLEEN MCDONOUGH, | : | |
| | : | |
| Plaintiff, | : | **Civil Action No. 09-571 (SRC)** |
| | : | |
| NEW JERSEY PSYCHOLOGICAL | : | **OPINION** |
| ASSOCIATION and BARRY | : | |
| HELFMANN, PSY.D., individually and on | : | |
| behalf of all other similarly situated | : | |
| individuals, | : | |
| | : | |
| Consolidated Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| HORIZON HEALTHCARE SERVICES, | : | |
| INC. d/b/a BLUE CROSS BLUE SHIELD | : | |
| OF NEW JERSEY, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court upon the parties' joint motion for final approval of

class action settlement [docket entry 365]. Also before the Court is the motion filed by Plaintiffs

for an order awarding attorneys' fees and reimbursement of expenses [docket entry 366]. The

Court has received written submissions filed by several objectors opposing these motions.

Certain objectors have moved to disqualify Nagel Rice as Class Counsel [docket entry 345]. The

Court has also received a motion to intervene in this action or, in the alternative, to appear as

<u>amici</u> <u>curiae</u> filed by various non-class members [docket entry 356]. A Fairness Hearing was

held on April 1, 2014 and June 23, 2014. The Court has considered all written submissions in

connection with these motions, the arguments presented by counsel for the parties and by

counsel for certain objectors and non-parties seeking to intervene, and the written and oral

statements made by various objectors appearing on their own behalf.   For the reasons that

follow, the Court certifies the Settlement Class, grants final approval to the class action

settlement and awards Plaintiffs attorneys' fees and costs.  The motion to intervene or appear as

amici curiae and the motion to disqualify Class Counsel will be denied.


I.    INTRODUCTION

        This action arises under the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1129, et seq.  It concerns employer-sponsored healthcare benefits plans insured or

administered by Defendant Horizon Healthcare Services, Inc. ("Horizon") which provided

benefits for services obtained outside of its provider network ("out of network" or "ONET")

based on a standard of reimbursement generally known as the "usual and customary rate" or

"UCR."  The gravamen of this lawsuit is that Horizon systematically underpaid ONET benefits

as a result of using either a flawed third-party database maintained by Ingenix, Inc. or Horizon's

own reimbursement schedule, known as "Top of Range" ("TOR") to determine UCR.

According to the allegations made by Plaintiffs, the data used by Horizon was artificially

depressed and consistently resulted in "False UCRs" and thus the underpayment of benefits

according to plan terms.

        In that regard, the Court must note that this action is in many ways similar to class action

lawsuits which have been filed against other carriers alleging under-reimbursement of ONET

benefits based on the use of Ingenix data to determine UCR.  One of these, against Aetna, is

currently pending in this jurisdiction. Another, against Cigna, had been assigned to the

2

undersigned but was recently disposed of on summary judgment.  The Court highlights the latter

action, entitled <u>Franco v. Connecticut General Life Insurance Co.</u>, Civil Action No. 07-6039,

because it is frequently cited by both the parties and the objectors and, indeed, is strongly

persuasive with regard to the Court's analysis of the instant class action settlement.


II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Cathleen McDonough ("McDonough"), a Horizon plan subscriber, initiated this

action on February 9, 2009.  McDonough's Complaint alleged claims on behalf of a putative

class of Horizon plan subscribers to recover unpaid benefits but failed to plead sufficient facts to

satisfy Federal Rule of Civil Procedure 8(a), as interpreted by <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,

678 (2009).  A subsequent Amended Class Action Complaint was filed.  Unlike the previously

deficient pleading, it alleged that McDonough had received treatment and services from ONET

providers and that her claims for benefits under the plan had been underpaid because Horizon

used "the flawed, corrupted and outdated Ingenix database" to determine UCR.  According to the

Amended Complaint, the Ingenix database, which was based on provider charge data contributed

by payors such as insurance companies, was flawed for a number of reasons.  Some of these

were the contribution of inaccurate data by insurance companies (including Horizon), further

scrubbing of data by Ingenix to remove high-end values but not low-end outliers so as to lower

the average charge for ONET services, grouping geographic areas that do not reflect comparable

charging patterns, and collection of insufficient data from contributors. Horizon filed another

Rule 12(b)(6) motion.  The Court dismissed a number of claims but permitted McDonough to

proceed with her claim to recover benefits pursuant to ERISA § 502(a)(1)(B) and her claim of

breach of fiduciary duties pursuant to ERISA § 503(a)(3).

Consolidated Plaintiffs Barry Helfmann ("Helfmann") and the New Jersey Psychological Association ("NJPA") separately filed their own class action complaint in 2010, docketed as Civil Action No. 10-6494, seeking relief from Horizon for the same allegedly unlawful ONET reimbursement practice. Helfmann is a clinical psychologist who does not participate in Horizon's network of preferred providers.  In other words he is an ONET provider or "Nonpar." In his practice, Helfmann rendered psychological treatment to, among others, patients who were members of Horizon health plans.  The other named Plaintiff, NJPA, is non-profit professional association, which represents approximately 2000 active and retired psychologists throughout New Jersey.  Helfmann is a member of the NJPA.  Helfmann and NJPA filed their putative class action complaint on behalf of non-physician healthcare providers and associations.  Their case was consolidated with the action initiated by McDonough on behalf of Horizon plan subscribers by Order dated January 11, 2011.

Like McDonough, Helfmann and NJPA also claim losses arising out of Horizon's alleged underpayment of benefits and seek relief pursuant to ERISA § 502(a), the statute's civil enforcement provision which authorizes suits by participants or beneficiaries of ERISA plans. 29 U.S.C. § 1129(a).  Neither of the Consolidated Plaintiffs, however, is or was at any time a participant or beneficiary of an ERISA-governed Horizon plan, but their Complaint asserted that they had standing to bring their ERISA claims on the grounds that Horizon plan participants or beneficiaries had assigned their benefits to their providers.  A summary judgment motion filed by Horizon challenged Helfmann's and NJPA's claims for lack of standing, among other reasons, but this motion was held in abeyance pending the parties' settlement discussions.

Indeed, several motions were pending when the parties reported in June 2013 that they had reached a settlement in principle.  Horizon had also filed a summary judgment motion as to

the McDonough Amended Complaint.  Plaintiffs had moved for class certification pursuant to

Federal Rule of Civil Procedure 23(b)(3).  The parties withdrew their motions without prejudice

following this Court's preliminary approval of the class action settlement on December 4, 2013.

The Court scheduled a Final Approval Hearing pursuant to Federal Rule of Civil

Procedure 23(e)(2) to take place on April 1, 2014.  The Court convened on that date to hear

argument in support of the settlement as well as statements presented by objectors, some of

whom appeared on their own behalf and several others who appeared through counsel.  The

Court also addressed an issue that was brought to its attention shortly before the hearing,

specifically, that a number of provider sub-class members had not received direct mail notice of

the proposed class action settlement due to an administrative error by Horizon in compiling the

notice list.  The parties requested an opportunity to correct this error by sending supplemental

notice by direct mail to those class members who inadvertently were not provided with direct

mail notice and could be identified in Horizon's records.  The Court granted this request, and

accordingly entered an Order providing such class members with an appropriate extended time

period in which to object to the settlement or opt out.  The Order set a continued, supplemental

hearing date pursuant to Rule 23(e)(2) to provide any additional objectors an opportunity to be

heard.  The supplemental hearing was held on June 23, 2014.

## III.    THE SETTLEMENT

### A.  Terms of the Proposed Settlement

The settlement negotiated by the parties provides that Horizon will discontinue use of the

Ingenix database to determine the allowed amount on an ONET claim for the bulk of Horizon

plans and will completely discontinue the use of Horizon's TOR database in calculating ONET

benefits.  Horizon will also revise plan language for plans sold or renewed to clarify the manner in which Horizon determines the allowed amount on ONET claims.  It will revise marketing literature, member handbooks, websites and other sources of information to provide a similarly clarified explanation of how ONET benefits are calculated.

The settlement would cover a total of over 2.8 million class members.  Of the 2,675,557 Horizon plan subscribers who were notified of the settlement by direct mail, only 471 opted out, and of the 181,084 providers notified, in the initial and supplemental notice combined, only 245 submitted a request for exclusion.  The proposed settlement Class is defined as follows:

> "Class" means collectively (a) a sub-class comprised of all persons enrolled in a Plan during the Class Period ("Horizon Subscribers") that included an out-of-network benefit ("Subscriber Sub-class"), and (b) a sub-class comprised of all Out-of-Network Health Care Providers who are not licensed medical doctors or doctors of osteopathy and who provided Covered Services or Supplies during the Class Period to Horizon Subscribers whose Plans included an out-of-network benefit and were paid less than their billed amount for these Covered Services or Supplies ("Provider Sub-class").  The Class expressly excludes all Horizon Subscribers who are solely Medicaid members, Medicare members, Medicare Advantage members, and Federal Employee Health Benefit Plan members.  The Class also excludes Ambulatory Surgical Centers.  In addition, the Class excludes all Persons who, in accordance with the terms of this Agreement, execute a timely request for exclusion ("Opt Out") from the Class.

(Settlement Agreement and Release at 3-4.)

**B.  Objections to the Settlement**

A total of 29 objectors have made submissions to the Court.  Half of these were filed by non-class members who sought to intervene in the action.  These 15 non-class members, together with six class member objectors, are represented by the law firm of Mazie Slater Katz & Freeman.  The six class member objectors represented by counsel will be hereinafter be referred to as the "Katz objectors," named after the attorney who signed the pleadings filed with the

Court.  Objections were also filed by eight individuals on their own behalf.  Many of these

individuals appeared at the April 1, 2014 hearing and made statements on the record.  The Court

has carefully considered the objections filed by class members and will discuss them below in

connection with its evaluation of the fairness and reasonableness of the settlement.

**IV.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

    **A.  Fairness of the Class Action Settlement**

Federal Rule of Civil Procedure 23, which governs class actions, requires court approval

of any class action settlement. Fed. R. Civ. P. 23(e).  The decision whether to approve a

proposed settlement of a class action is left to the sound discretion of the district court. In re

Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, ("Prudential"), 148 F.3d 283, 299

(3d Cir. 1998) (citing Girsh v. Jepson, 531 F.2d 153, 156 (3d Cir. 1975)).  The Court must,

however, approach the parties' request for approval in light of the general principle that the law

favors settlement, particularly in class actions where substantial judicial resources may be

conserved by avoiding litigation. In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab.

Litig., ("GM Trucks"), 55 F.3d 768, 784 (3d Cir.1995). "The strong judicial policy of favoring

class action settlement contemplates a circumscribed role for the district courts in settlement

review and approval proceedings." Ehrheart v. Verizon Wireless, 609 F.3d 590, 594–95 (3d Cir.

2010).

The key question the Court must address in considering an application for approval of a

class action settlement is whether the proposed settlement is "fair, reasonable and adequate."

Prudential, 149 F.23d at 316.  The Third Circuit has set forth a number of factors relevant in

making this determination.  Known as the "Girsh factors," they are:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsh, 521 F.2d at 157.  In Prudential, the Third Circuit further instructed that, where appropriate and relevant, a district court should also consider the following factors: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

Prudential, 148 F.3d at 323.

An analysis of the settlement according to these principles demonstrates that the settlement reached by the parties is fair, reasonable and adequate and should be approved pursuant to Rule 23(e).  The Court will address each <u>Girsh</u> factor in turn, incorporating, where relevant, the considerations highlighted in <u>Prudential</u>.

        1.   <u>Complexity of the Action</u>

The complexity of this action militates strongly in favor of approving the settlement. This factor is concerned with assessing the "probable costs, in both time and money, of continued litigation." <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 234 (3d Cir. 2001).   The Third Circuit has expressed the view that "extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated lengthy trial" weigh in favor of approving a class action settlement.  <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 536 (3d Cir. 2004). This action has been litigated for over five years, during which time numerous substantive motions have been filed by the parties.  The opinions issued by this Court in the similar <u>Franco</u> matter illustrates the complexity of class certification and ERISA claims merits issues.  <u>See</u> <u>Franco v. Conn. Gen. Life Ins. Co.</u>, No. 07-6039, 2014 WL 2861428 (D.N.J. June 24, 2014); <u>Franco v. Conn. Gen. Life Ins. Co.</u>, --- F.R.D --- , 2014 WL 1415949 (D.N.J. Apr. 14, 2014); <u>Franco v. Conn. Gen. Life Ins. Co.</u>, 289 F.R.D. 121 (D.N.J. 2013).  Continued litigation of this action would entail dedicating substantial judicial resources to decide pending motions for class certification, to preclude expert testimony and for summary judgment.  Assuming the action proceeded to trial, the parties, too, would be forced to spend a great deal of time and money, as they project that the trial would last for months and involve dozens of witnesses and thousands of documents.

2.  <u>Reaction of the Class</u>

The reaction of the class to the settlement has been overwhelmingly favorable.  The extensive notice program of direct mail and publication in four newspapers, including one national publication, reached millions of class members.  In all, approximately 2.8 million notices were sent by mail, and thousands of inquiries were made to a toll-free telephone number and website providing information about the settlement.  Yet, the number of opt outs were minimal, representing .017% of the Subscriber Sub-class and .135% of the Provider Subclass.

The eight individual objectors not represented by counsel primarily complained of matters unrelated to this action, such as mental health claims, Horizon customer service or the managed care industry in general, and also protested what they believe are excessive attorneys' fees, a topic the Court will address in more detail below.  These objections reflect a fundamental misunderstanding of the nature of this lawsuit, the goals of the ERISA claims and the type of relief Plaintiffs could feasibly obtain even assuming they prevailed.

The Katz objectors concentrated on two matters: (1) notice and (2) the failure, in their view, of the settlement to achieve any valuable remedy for the class.  Neither criticism detracts from the fairness and reasonableness of the settlement.  First, though the objectors had complained that certain class members had not received notice, this concern has been obviated by the supplemental notice sent to 75,000 non-physician providers.  Second, contrary to the Katz objectors' view of the business reforms to which the settlement commits Horizon, the settlement gives real benefits to the class.  It not only requires Horizon to cease using Ingenix and its own TOR database, which was also allegedly flawed, but importantly it also achieves greater transparency and clarity for Horizon members regarding the manner in which their Horizon plans will calculate allowed amounts on ONET claims.  By requiring Horizon to update and revise

plan language, member handbooks and marketing materials, the settlement tangibly addresses a significant problem about which the class complained in this action.  As for the Katz objectors' insistence that the settlement is unfair because it involves no monetary recovery for the class, this position is completely irreconcilable with their equally adamant assertion that this action would under no circumstances be certifiable under Rule 23(b)(3).  The Katz objectors have stated that the settlement relinquishes a $10 billion claim, a class damages figure they base on the report of Plaintiffs' expert Sally Reaves, in which she arrived at that figure on the premise that Horizon would, if liable, owe class members the amount of billed charges for their ONET services.  However, no damages may be recovered by a putative class which fails to obtain certification, which is precisely the result that the Katz objectors argue this case faces.  The Court additionally notes that a Daubert motion to preclude the Reaves report was pending at the time this settlement was reported to the Court, and in it, Horizon had emphasized that there was no basis for the report's billed charge model.  Indeed, in Franco, this Court rejected the billed charge model of damages because it was not supported by the governing ERISA plan language.

In short, the extremely low number of objectors and opt outs strongly favors approval of the settlement.  The silence of the vast majority of the properly notified Class "constitutes tacit consent to the agreement."  GM Trucks, 55 F.3d at 812.

### 3.  Stage of Proceeding and Amount of Discovery

This factor calls upon the Court to consider whether sufficient discovery has been completed to permit "[t]he parties [to] have an 'adequate appreciation of the merits of the case before negotiating.'"  Prudential, 148 F.3d at 319 (quoting GM Trucks, 55 F.3d at 813).  This action was filed almost five years before the parties moved for preliminary approval of the settlement.  During that time, they undertook extensive discovery, exchanging more than one

million documents and taking 25 depositions.  Before the parties entered into the Settlement

Agreement, they had completed both fact and expert discovery, and they and their counsel had

abundant information to make well-informed decisions concerning the merits and risks of the

case as they proceeded with their negotiations.

4.   Risks of Establishing Liability and Damages

To evaluate the risk of establishing liability and damages at trial, the Court must consider

"what the potential rewards (or downside) of litigation might have been had class counsel elected

to litigate the claims rather than settle them."  GM Trucks, 55 F.3d at 814.   As reflected in the

recent summary judgment Opinion issued by this Court in Franco, the similar UCR action

against Cigna, an action seeking to recover ONET benefits based on the allegedly flawed nature

of the Ingenix database presents complicated factual and legal questions.  To establish liability

under ERISA, Plaintiffs would have to demonstrate that Horizon deprived them of benefits to

which the plan entitled them in an abuse of its discretion under the applicable plan.  Both the

Subscriber Sub-class and the Provider Sub-class faced a substantial hurdle with regard to

proffering sufficient evidence to demonstrate that the Ingenix and TOR databases produced

depressed UCRs resulting in the underpayment of benefits.  Moreover, many Subscriber

Plaintiffs, and in particular named Plaintiff McDonough, faced the particular challenge of

establishing that Horizon acted unlawfully and violated ERISA in using Ingenix in spite of an

express state regulation and/or plan language requiring that the Ingenix database be used to

determine UCR.  Provider Plaintiffs would have to demonstrate a legal entitlement to obtain

relief pursuant to ERISA § 502(a)(1), a cause of action limited to plan participants and

beneficiaries.  In a pending motion for summary judgment as to the Helfmann and NJPA claims,

Horizon argued that the record lacked proof of a valid assignment of benefits to Helfmann by an

allegedly harmed Horizon plan participant or beneficiary, thus negating his claim to ERISA standing by assignment.

The risk of establishing damages at trial was also high.  As the Court noted above, Plaintiffs' expert Sally Reaves prepared a damages report which was, in part, based upon a billed charge model.  As the Court's analysis in <u>Franco</u> illustrates, such a model could not be viable without a demonstration that it is rooted in plan language, the source of Plaintiffs' rights to benefits under ERISA.  The entire Reaves report had been challenged in Horizon's <u>Daubert</u> motion as lacking fit with Plaintiffs' claims as well as being unreliable and unhelpful to the trier of fact.  To have even a chance of establishing damages, Plaintiffs would first have to clear the <u>Daubert</u> motion, which was pending at the time of settlement.  The low likelihood of obtaining relief for the Class had Plaintiffs and Class Counsel elected to litigate the claims militates in favor of approving the settlement.

### 5.   Risk of Maintaining Class Action Through Trial

The Third Circuit has held that "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action."  <u>GM Trucks</u>, 55 F.3d at 817. In light of this, the Court must evaluate the value and appropriateness of the proposed settlement by comparison to the likely outcome for the Class had it attempted to litigate pursuant to Rule 23.  The intractable management problems of determining liability and damages on a classwide basis were this action to go to trial may very well have defeated Plaintiffs' effort to obtain certification, given the difficulties of examining thousands of ONET claims subject to varying plan language, assessing the "correct" UCR for the underlying service (which would vary by service and geographic location), and considering the factual circumstances of each claim, such as whether the plan member or provider (assuming a valid assignment) had

exhausted administrative remedies as required to maintain an ERISA claim.  Additionally, "[a]

district court retains the authority to decertify or modify a class at any time during the litigation

if it proves to be unmanageable." Prudential, 148 F.3d at 321.  Even assuming that Plaintiffs

could have been successful in obtaining class action certification, or at the very least, issue

certification, it appears unlikely that they would have been able to maintain certification through

trial, as the action would have splintered into a claim-by-claim evaluation of whether benefits

had been underpaid and what relief, if any, was due to each class member.  "[T]he concern for

manageability is a central tenet in the certification of a litigation class."  Sullivan v. DB

Investments, Inc., 667 F.3d 273, 302-03 (3d Cir. 2011) (en banc).  The settlement allows the

Class to obtain relief without the manageability issues hindering recovery at trial.  Id. at 303

(noting that the Supreme Court has stated that "a district court 'confronted with a request for

settlement-only class certification' need not inquire whether the case 'would present intractable

management problems") (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997)).

    6. Ability of Horizon to Withstand a Greater Judgment

  This factor is not relevant to the Court's evaluation.

    7. Range of Reasonableness of the Settlement Fund in Light of Best Recovery
     and All Attendant Risks of Litigation

  These last two Girsh factors "evaluate whether the settlement represents a good value for

a weak case or a poor value for a strong case."  Warfarin, 391 F.3d at 538.  Here, the settlement

requires Horizon to make its methodology for calculating the ONET allowed amount clear and

transparent so that plan members can make an informed choice about utilizing ONET services

and availing themselves of the benefits available under the plan.  The Third Circuit has held that

while nonpecuniary benefits may not be easy to measure, they may nevertheless support a class

14

action settlement.  Bell Atlantic Corp. v. Bolger, 2 F.3d 1304, 1311 (3d Cir. 1993).  In approving

a class action settlement, which, like the one proposed to this Court, involved disclosures and

business reforms by the defendant corporation but no monetary relief, the Third Circuit

emphasized that "even if plaintiffs hoped to secure a large damage award, this would have to be

drastically discounted by the improbability of their success on the merits."  Id. at 1313.  Class

Counsel acknowledges that the settlement represents a compromise and does not achieve the

hoped-for result for the Class.  As they correctly point out, they had an obligation to the Class to

evaluate the risks of obtaining recovery through trial, particularly in light of this Court's January

2013 decision denying class certification in Franco.  The settlement, the Court finds, provides the

Class with valuable relief and is reasonable in light of the weaknesses of the case with regard to

both litigating the claims on a classwide basis and the merits of the claims themselves.

### B.  Certification of the Settlement Class

A class seeking certification for settlement purposes must, like a litigation class, satisfy

the requirements of Rule 23.  Franco, 289 F.R.D. at 133; see also GM Trucks, 55 F.3d at 799

("actions certified as settlement classes must meet the same requirements under Rule 23 as

litigation classes.").  Here, the class moves to be certified pursuant to Rule 23(b)(2) and Rule

23(b)(3).  Rule 23(b)(2) applies when a class seeks declaratory or injunctive relief.  Beck v.

Maximus, Inc., 457 F.3d 291, 301 (3d Cir. 2006). Rule 23(b)(3) governs certification of a class

seeking monetary relief.   Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2558 (2011).  Under

either subsection, the class must first meet the threshold requirements of Rule 23(a) and then

establish that the suit fits within the indicated category of Rule 23(b).  Id. at 2548-49 (2011);

Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012).

15

Under 23(a) the court must find that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a); <u>Marcus</u>, 687 F.3d at 590-91.  These four requirements are generally referred to as numerosity, commonality, typicality and adequacy of representation.  <u>Prudential</u>, 148 F.3d at 308-09.  Rule 23(b)(2) authorizes class certification when "the party opposing class certification has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(3) sets forth two requirements: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The twin requirements of Rule 23(b) are known as predominance and superiority." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 310 (3d Cir. 2008).

The Court finds that the Class meets the threshold requirements of Rule 23(a). This Class consists of almost 3 million Subscribers and Providers, easily satisfying the numerosity requirement, as joinder of so many individual plaintiffs would be impracticable.  <u>Prudential</u>, 148 F.3d at 309; <u>Stewart v. Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).  Plaintiffs have also demonstrated that there are questions of law and fact common to the class.  To satisfy commonality, Plaintiffs need not establish that the class shares factually identical claims. <u>Prudential</u>, 148 F.3d at 310.  Rather, this requirement is satisfied if the named plaintiff shares at least one question of law or fact with the class.  <u>Chiang v. Veneman</u>, 385 F.3d 256, 265 (3d Cir.

16

2004).  Here, both the Subscriber Sub-class and the Provider Sub-class share the common question of whether Horizon's use of the Ingenix and/or TOR data to process ONET claims failed to comply with plan terms, in violation of ERISA.  In other words, the question at the root of all Class members' § 502(a)(1)(B) claims is whether Horizon determined UCR using databases that were so flawed as to be completely incapable of generating any reliable data concerning the amount most providers in a relevant geographical area would charge for a health care service.  The claims of named plaintiffs Cathleen McDonough, Barry Helfmann and NJPA are, moreover, typical of the sub-classes they represent.  Their claims, like those of all class members, are based on the payment of ONET benefits under an applicable ERISA health benefits plan due to Horizon's use of Ingenix and/or TOR to determine UCR.  Baby Neal v. Casey, 43 F.3d 48, 58 (3d Cir. 1994) (holding that typicality is satisfied when the representative plaintiff's claims are based on the same practice or course of conduct and on the same legal theory as those of the class).  In seeking to rectify this practice, the named Plaintiffs' incentives and interests are aligned with those of the absent class members, demonstrating that the main concern of the typicality analysis is satisfied.  Stewart, 275 F.3d at 227.  Finally, regarding the threshold certification requirements, adequacy under Rule 23(a)(4) encompasses two concerns: "(a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975); see also Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012) (holding same). For the reasons set forth above, the latter issue poses no obstacle to certification, as the representative plaintiffs share the Class's interest in challenging Horizon's practice of using Ingenix and/or TOR and the resulting ONET reimbursements.  Their interests are not in conflict with those of

the Class.  Class Counsel clearly meets the adequacy requirement of Rule 23(a)(4).  They are highly qualified attorneys with extensive experience litigating complex class actions and have ably served the interests of the Class.

Indeed, Plaintiffs' counsel fairly and adequately represents the interests of the Class, in accordance with Rule 23(g).  The Court has considered the factors set forth in Federal Rule of Civil Procedure 23(g) and appoints Bruce Nagel and the law firm of Nagel Rice as Class Counsel for both Sub-classes.

The Class also satisfies the criteria for certification under both subsections (2) and (3) of Rule 23(b).  The Court of Appeals has stated that (b)(2) certification is almost always appropriate in actions seeking primarily injunctive relief.  Baby Neal, 43 F.3d at 58–59.  In this case, the claims arise out of a practice by Horizon that applies to the entire class, and Horizon's discontinuation of its use of the allegedly flawed databases as well as its commitment to greater transparency in how ONET claims are processed and paid constitutes appropriate injunctive relief for the class as a whole.  As for the Rule 23(b)(3) requirements, the common issue identified above – whether the Ingenix and/or TOR databases were so flawed as to be unreliable – predominates over individual issues in this settlement class, particularly in light of the remedy provided for the alleged harm.  The predominance inquiry focuses on "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  Sullivan, 667 F.3d at 298.  Horizon's conduct of using Ingenix and/or TOR data to determine ONET claims allegedly violated the plan-based ERISA rights of all members of the Class. The harm they allegedly suffered as a result forms the basis of their common claim to a remedy in the form of Horizon's ceasing to use the databases and implementing other business reforms.  Moreover, this controversy involves millions of ERISA

plan members, non-physician ONET providers and associations, which claim to have been

harmed by Horizon's allegedly wrongful ONET claims payment practices.  The magnitude of the

dispute renders the class action a superior method for fairly and efficiently resolving the claims

as compared to numerous individual suits in which litigation costs would dwarf any potential

recovery.  Fed. R. Civ. P. 23(b)(3); <u>Warfarin</u>, 391 F.3d at 533-34.

Unlike the putative class of Cigna subscribers in <u>Franco</u>, in which the Court denied

certification because the plaintiffs had not demonstrated that they could try those similar ERISA

issues without the splintering of the action into multitudes of individual mini-trials, Plaintiffs

here seek to certify a *settlement* class, not a litigation class.  As such, the manageability concerns

which thwarted certification of the <u>Franco</u> class are "removed from the equation" in this case.

<u>Sullivan</u>, 667 F.3d at 302.  For example, while in <u>Franco</u> the Court found that the core liability

issue of Horizon's abuse of discretion under the applicable plan could not be established without

individualized inquiries into the underlying ONET claim, the governing plan, and other factors,

the settlement of the ERISA claims in this case relieves the Court of the obligation to satisfy

itself that the legal and factual issues common to the claims could be effectively tried.  <u>Id.</u> at 306.

To echo the Third Circuit's analysis in <u>Sullivan</u> of the Rule 23(b)(3) certification of a settlement

class, "[t]he proposed settlement here obviates the difficulties inherent in proving the elements of

varied claims at trial . . . , and 'the difference is key.'"  <u>Id.</u> at 304 (quoting <u>Warfarin</u>, 391 F.3d at

529).

## V.   MOTION TO DISQUALIFY NAGEL RICE

The Katz objectors have also brought a motion to disqualify Bruce Nagel and the law

firm of Nagel Rice, LLP (hereinafter, collectively "Nagel") from representing the Class. They

argue that Nagel's representation of a putative class of ambulatory surgical centers in a parallel lawsuit against Horizon for the alleged under-reimbursement of ONET benefits creates a conflict of interest, as evidenced, the objectors contend, by Nagel's no-damages settlement of this class action while proceeding with the other lawsuit, captioned <u>Edwards v. Horizon Blue Cross Blue Shield of New Jersey</u>, Civil Action No. 08-6160 (KM).  The Katz objectors accuse Nagel of divided loyalty and, in fact, of "selling out" the Class in this case to pursue the interests of the class of ambulatory surgical centers in the <u>Edwards</u> action.  The motion, quite frankly, borders on the frivolous.  It is based on nothing but speculative and unfounded assertions.  The Katz objectors provide no authority stating that a conflict of interest is created by counsel's representation of various plaintiff classes against the same defendant in different cases.  Nor do they support their assertion that there is tension between the classes with respect to obtaining monetary recovery from Horizon, due to some limited pool of resources.  Moreover, the accusation that class counsel structured this settlement, which expressly carves out the <u>Edwards</u> class, so that it may "cash-in on two significant multi-million fee awards" is nothing but inflammatory.

For these reasons, the motion to disqualify will be denied.

## VI.    MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

The Court also has before it a motion for attorneys' fees, costs, and Plaintiff incentive awards. Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The matter of fees is left to the discretion of the District Court.  <u>Cendant</u>, 243 F.3d at 736.

The Court finds that the requested fee award is warranted.  Plaintiffs have demonstrated a lodestar of $3.4 million based on billing rates consistent with the market rate for complex class actions.  They have requested a fee award of $2.5 million, significantly below the lodestar. Nevertheless, the Katz objectors have opposed the fee award, arguing that the proposed settlement provides no benefits to the Class.  Their argument is at odds with the nature of the settlement and the law in this jurisdiction.  Counsel has secured a valuable settlement for the class which provides for substantial changes to the manner in which Horizon will calculate ONET claims reimbursements and in which it will explain to subscribers and providers how it derives the allowed amount on claims for ONET benefits.  The fact that the settlement does not provide members of the Class with monetary compensation does not render it worthless or negate the value obtained for the Class by the efforts of Class Counsel.  Courts have approved attorneys' fee awards in class action settlements where the settlement has included business reforms but no monetary relief.  See, e.g., Kirsch v. Delta Dental of New Jersey, 534 F. App'x 113, 114 (3d Cir. 2013) (affirming district court's attorneys' fee award to class counsel, the law firm representing objectors in this case, in a class action settlement involving only business reforms); Sutter v. Horizon Blue Cross Blue Shield of New Jersey, 2012 WL 2813813, at *10 (N.J. App. Div. July 11, 2012) (affirming a multi-million dollar  attorneys' fee award in a case in which business reforms but no monetary relief obtained for the settlement class).

The Court also approves awarding an incentive premium to the class representatives, in recognition of the time they dedicated and risk they undertook, which have benefitted the Class they represent.

**VII.    MOTION TO INTERVENE OR APPEAR AS AMICI CURIAE**

The non-class members' motion to intervene, or in the alternative appear as <u>amici</u> <u>curiae</u>, is denied.  The non-class member movants consist of physician providers and two medical professional associations.  They maintain that they should be permitted to intervene because the settlement requires subscribers to revoke any assignment of benefits given to providers, which leaves providers with no recourse against Horizon for the alleged underpayment of ONET benefits and forces providers to pursue their patients for excessive amounts.  Non-class member providers also maintain that the settlement negatively impacts their rights because it releases claims by non-physician professionals their medical practices employ, such as nurse practitioners and physicians' assistants, and may prejudice the providers' ability to challenge Horizon's payments.  Neither of these arguments is availing.

To intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2), a movant must establish the following: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." <u>In re Cmty. Bank of N. Va.</u>, 418 F.3d 277, 314 (3d Cir. 2005) (quoting <u>Harris v. Pernsley</u>, 820 F.2d 592, 596 (3d Cir. 1987)).  The movants do not meet this standard.  As Plaintiffs point out, the settlement agreement was amended to remove the provision regarding revocation of patient assignments to providers, thus eliminating the concern that such revocation would jeopardize providers' interests in amounts allegedly underpaid by Horizon under the ONET benefits provision of the patients' ERISA plans.  As for the release of claims by non-physician providers, there is no risk of impairing any legal interest of providers. The non-

physicians can only release claims that belong to them pursuant to a valid assignment, as distinguished from any rights to plan benefits assigned to the providers and/or their medical office.

For these same reasons, the Court further holds, in its discretion, that permissive joinder is not appropriate.  Permissive intervention may be granted pursuant to Rule 24(b) upon a timely motion to anyone having "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b). Any claims that may belong to the movants pursuant to a valid assignment are distinct from those of subscribers and non-physician providers.

The non-class member objectors' alternative request to appear as amici curiae is also denied.  The purpose of an amicus curiae, which translates to "friend of the court," is to assist the court in a proceeding. Yip v. Pagano, 606 F. Supp. 1566, 1568 (D.N.J. 1985).  A court may, in its discretion, grant a third party leave to appear as amicus curiae if "it deems the proffered information timely and useful."  Id.; see also Harris, 820 F.2d at 603 (stating that "permitting persons to appear in court, either as friends of the court or as interveners for a limited purpose, may be advisable where third parties can contribute to the court's understanding.").  The non-class member providers and associations who move to appear as amici curiae raise concerns that have little to nothing to do with the litigation resolved by the proposed settlement and certainly do not contribute to the Court's understanding of the consequences of the settlement.  Far from assisting the Court, the objections filed by the Mazie firm, on behalf of both class member and non-class member objectors, have hampered the Court in fulfilling its obligation to determine whether the class action settlement is fair and reasonable by consuming judicial resources and time with issues that fail to illuminate this assessment.

**VIII.    CONCLUSION**

For years, Plaintiffs and Horizon have vigorously litigated this action.  It has given rise to many complex legal and factual issues, and counsel for the parties have met those challenges in a skilled and able manner.  Advocating for the Class, but also recognizing the weaknesses of the claims, Class Counsel engaged in earnest, arms-length negotiations with Horizon in an effort to obtain a remedy for the Class.  They have successfully done so, and for the reasons set forth above, this Court finds the settlement fair, reasonable and adequate.

A form of Order embodying the rulings discussed in this Opinion will be filed.

___ s/ Stanley R. Chesler ___
STANLEY R. CHESLER
United States District Judge

Dated: July 9, 2014